1  COOLEY LLP
   MICHAEL A. ATTANASIO (151529)
2  (mattanasio@cooley.com)
   MICHELLE C. DOOLIN (179445)
3  (mdoolin@cooley.com)
   LEO P. NORTON (216282)
4  (lnorton@cooley.com)
   4401 Eastgate Mall
5  San Diego, CA 92121
   Telephone:    (858) 550-6000
6  Facsimile:    (858) 550-6420

7  Attorneys for Defendants
   SONY CORPORATION OF AMERICA,
8  SONY ELECTRONICS INC., and
   SONY CORPORATION

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  LAURA MARCHANTE, PHRANK          Case No.  10 CV 0795 JLS RBB
    OCHOA, DRAGAN SEFO, on behalf of
14  themselves and all others similarly situated,   **MEMORANDUM OF POINTS AND
                                     AUTHORITIES IN SUPPORT OF
15               Plaintiffs,         SONY CORPORATION OF
                                     AMERICA, SONY ELECTRONICS
16        v.                         INC., AND SONY CORPORATION'S
                                     MOTION TO DISMISS FIRST
17  SONY CORPORATION OF AMERICA,     AMENDED COMPLAINT
    SONY ELECTRONICS INC., and SONY  PURSUANT TO FEDERAL RULES
18  CORPORATION,                     OF CIVIL PROCEDURE 12(b)(1),
                                     12(b)(6), AND 9(b)**
19               Defendants.

20
                                     Date:      August 26, 2010
21                                   Time:      1:30 p.m.
                                     Judge:     Hon. Janis L. Sammartino
22                                   Courtroom: 6

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

     A.   Advertising and Marketing Claims. ........................................... 4

     B.   Products Liability Claim. .......................................................... 4

     C.   Warranty Claims. .................................................................... 4

          1.   SEL's Limited Warranty. ................................................. 5

          2.   SEL's Limited Extended Warranty .................................. 5

     D.   Discontinuance of the Televisions. ........................................... 6

     E.   Plaintiffs' Experiences with the Televisions. ............................ 6

III. PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED
     PURSUANT TO RULE 12(B)(1) BECAUSE PLAINTIFFS LACK STANDING ........... 8

     A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(1). ................. 8

     B.   Plaintiffs Lack Standing to Seek Injunctive Relief Against Sony Because
          They Cannot Show a Threat of Future Harm. ............................ 9

IV.  THE FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) AND
     RULE 9(B) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UPON
     WHICH RELIEF CAN BE GRANTED .................................................. 9

     A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6) and Rule 9(b). ......... 9

     B.   Plaintiffs' UCL, FAL, and CLRA Claims Should Be Dismissed. ....................... 11

          1.   Plaintiffs cannot hold Sony liable under the UCL, FAL, and CLRA
               for alleged failure to disclose a "defect" in the Televisions that
               manifests itself after the expiration of the warranty period. .................... 11

          2.   Plaintiffs' UCL, FAL, and CLRA claims should be dismissed
               because the alleged statements are non-actionable puffery, were
               true during the warranty period, and do not relate to the alleged
               defect. ........................................................................ 15

          3.   The FAL claim should be dismissed for failure to identify the
               advertisements at issue. ................................................. 16

          4.   The CLRA claim should be dismissed because plaintiffs' failed to
               file the required affidavits. ............................................. 16

          5.   Plaintiffs' consumer statute claims fail to satisfy Rule 9(b)'s
               heightened pleading requirements. ..................................... 16

     C.   Plaintiffs' Strict Liability Claim Should Be Dismissed Under the Economic
          Loss Doctrine. ...................................................................... 18

     D.   Plaintiffs' Warranty Claims Should Each Be Dismissed Because Sony Has
          Not Breached Any Warranty Obligations. ................................... 18

          1.   Plaintiffs cannot plead that Sony breached the Limited Warranty or
               Limited Extended Warranty. .............................................. 18

               a.   Limited Warranty ................................................... 19

| | | b. | Limited Extended Warranty. | 20 |
|---|---|---|---|---|
| | 2. | | Plaintiffs' breach of implied warranty claim should also be dismissed for lack of privity and failure to seek warranty coverage during the one-year warranty period. | 21 |
| | 3. | | Plaintiffs' Song-Beverly Act claim should be dismissed | 23 |
| | 4. | | The Magnuson-Moss Act claim should be dismissed. | 24 |
| E. | | | The Claims Against SCA And Sony Corporation Should Be Dismissed Because Plaintiffs Lack Any Basis To Sue Them. | 24 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraham v. Volkswagen of Am., Inc.,*
795 F.2d 238 (2d Cir. 1986) ................................................................................. 19, 24

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................ 15, 19, 21, 22

*Apple & AT & TM Antitrust Litig.,* 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) ............... 14, 15

*Arabian v. Sony Elecs., Inc.,*
No. 05-CV-1741 WQH (NLS), 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ...................... 21

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................................................... 9, 10

*Atkinson v. Elk Corp. of Tex.,*
142 Cal. App. 4th 212 (2006) ................................................................................... 22

*Ball v. Sony Elecs., Inc.,*
No. 05-C-307-S, 2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) ................................... 19, 20

*Bardin v. DaimlerChrysler Corp.,*
136 Cal. App. 4th 1255 (2006) ................................................................................. 18

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................ 9, 10, 13

*Berenblat v. Apple, Inc.,* Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297,
at *3 n.2 (N.D. Cal. Apr. 9, 2010) ............................................................................. 23

*Butler v. Sears, Roebuck & Co.,* Nos. 06 C 7023, 07 C 412, 08 C 1832, 2009 WL
3713687, at *3 n.4 ................................................................................................ 23

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................................................................... 8

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ................................................................................... 24

*Clemens v. DaimlerChrysler Corp.,*
534 F.3d 1017 (9th Cir. 2008) ................................................................ 12, 19, 20, 21

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) ............................................................................ passim

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) ................................................................................... 25

*Epstein v. Wash. Energy Co.,*
83 F.3d 1136 (9th Cir. 1996) ................................................................................... 10

*Hensley v. U.S. Drug Enforcement Agency,*
2007 WL 2177023 (S.D. Cal. 2007) ......................................................................... 13

*Hoey v. Sony Elecs., Inc.,*
515 F. Supp. 2d 1099 (N.D. Cal. 2007) (appeal filed August 1, 2008, Ninth Circuit
Docket No. 08-16780) ........................................................................................ 5, 20

*Hovsepian v. Apple, Inc.*, Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 WL 2591445
   *8, n.6, n.7 (N.D. Cal. Aug. 21, 2009) .................................................................................. 22

*In re Actimmune Mktg.*,
   No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ............................ 10, 11

*In re Currency Conversion Fee Antitrust Litig.*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003) ................................................................................ 25

*In re Ditropan XL Antitrust Litig.*,
   No. M:06-CV-01761-JSW, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007) ............................ 8

*In re Jamster Marketing Litigation*,
   2009 WL 1456632 (S.D. Cal. 2009) .................................................................................... 13

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
   No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) .................................... 16

*Janda v. T-Mobile, USA, Inc.*,
   No. C 05-03729 JSW, 2008 WL 4847116 (N.D. Cal. Nov. 7, 2008) ............................... 9, 11

*Jensen v. BMW of N. Am., Inc.*,
   35 Cal. App. 4th 112 (1995) .............................................................................................. 23

*Jiagbogu v. Mercedes-Benz USA*,
   118 Cal. App. 4th 1235 (2004) .......................................................................................... 23

*Jimenez v. Superior Court*,
   29 Cal. 4th 473 (2002) ...................................................................................................... 18

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................ 10, 11, 16, 17

*Krieger v. Nick Alexander Imports, Inc.*,
   234 Cal. App. 3d 205 (1991) .............................................................................................. 23

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) .............................................................................................. 11

*Long v. Hewlett-Packard Co.*,
   No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) ........................... 12, 13, 20

*Maniscalco v. Brother Int'l Corp.*, Civil Action No.: 06-CV-4907(FLW), 2008 U.S. Dist.
   LEXIS 50122, *35 (D.N.J. Jun. 26, 2008) ......................................................................... 17

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions*,
   No. 07-CV-912 IEG (BLM), 2007 WL 3047093 (S.D. Cal. Oct. 16, 2007) ................... 10, 25

*Meinhold v. Sprint Spectrum, L.P.*,
   No. Civ. S-07-00456 FCD EFB, 2007 WL 1456141 (E.D. Cal. May 16, 2007) .................... 9

*Meserole v. Sony Corp. of Am., Inc.*,
   No. 08 CV 8987, 2009 WL 1403933 (S.D.N.Y. May 19, 2009) .................................... 17, 18

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ...................................................................................... 22, 23

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .............................................................................................. 10

*Mullis v. United States Bankr. Ct.*,
   828 F.2d 1385 (9th Cir. 1987) ............................................................................................ 10

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................................... 25

iv.

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, No. 08-16290, 2009 U.S. App. LEXIS
    7259 (9th Cir. Apr. 2, 2009) ...................................................................................... 12, 15

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
    144 Cal. App. 4th 785 (2006) .................................................................................... 23

*Robinson Helicopter Co., v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ............................................................................................... 18

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*,
    343 F.3d 1036 (9th Cir. 2003) ..................................................................................... 8

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................................................ 9

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F.2d 1221 (9th Cir. 1989) ..................................................................................... 8

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................. 11, 25

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-CV-00288 JF (HRL), 2010 WL 1268093 (N.D. Cal. Mar. 31, 2010) ... 14, 15, 19, 23

*Tietsworth v. Sears, Roebuck & Co.*,
    No. C 09-00288 JF (HRL), 2009 U.S. Dist. LEXIS 40872 (N.D. Cal. May 14, 2009) .... 19, 22

*Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*,
    617 F.2d 936 (2d Cir. 1980) ....................................................................................... 19

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ................................................................................... 5, 10

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ........................................................................................ 5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................... 10, 11

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..................................................................................... 8, 9

**STATUTES**

15 U.S.C. § 2310(d)(3)(C) ............................................................................................. 24

Cal. Civ. Code § 1780(d) ............................................................................................... 16

Cal. Civ. Code § 1791.1(c) ............................................................................................ 22

Cal. Civ. Code §§ 1793.2(a)(3) and (b) ........................................................................ 23

Cal. Civ. Code, § 1793.02(c) ......................................................................................... 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ................................................................................................... 10, 11

Fed. R. Civ. P. 9(b) ................................................................................................. passim

Fed. R. Civ. P. 12(B)(1) .................................................................................................. 8

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 9, 25

v.
                                  **SONY'S MEMO OF PS AND AS I/S/O**
                                           **MOTION TO DISMISS FAC**
                                               **CASE NO. 10 CV 0795 JLS RBB**

## I. INTRODUCTION

Plaintiffs purport to represent a nationwide class of consumers supposedly victimized by an alleged "defect" that may result in the warping of the plastic lamp access door of certain discontinued models of Sony Grand Wega rear projection televisions. Plaintiffs admit, however, that the "defect" did not manifest until long after the one-year written limited warranty expired. This admission and plaintiffs' refusal to accept a replacement television under an extended warranty for the potential issue bar plaintiffs' claims under settled California and federal authority. Plaintiffs nevertheless instituted this action against Sony Corporation of America ("SCA"), Sony Electronics Inc. ("SEL"), and Sony Corporation (collectively "Sony"). In a misguided effort to distinguish the well-settled authority that bars their claims, plaintiffs speculate that the defect poses a "fire hazard" and then attempt to characterize the defect as a "safety defect." Plaintiffs do not set forth any factual support for this characterization. Nor can they. The alleged defect is not a "safety defect." Indeed, none of the plaintiffs allege that the defect caused them personal injury or damage to other property. Moreover, plaintiffs admit that Sony advised them that it extensively evaluated the lamp access door issue and found that it ***did not*** give rise to safety concerns. Plaintiffs' so-called "safety" concern lacks any factual support and appears to have been concocted to avoid dismissal under controlling California law.

Based on their trumped-up defect allegations, plaintiffs assert eight claims for relief: (1) violation of the Unfair Competition Law ("UCL"); (2) violation of the False Advertising Law ("FAL"); (3) violations of the Consumers Legal Remedies Act ("CLRA"); (4) strict liability; (5) violation of the Song-Bervely Consumer Warranty Act; (6) violation of the Magnuson-Moss Warranty Act; (7) breach of express warranty; and (8) breach of the implied warranty. Each of these baseless claims should be dismissed without leave to amend.

As an initial matter, plaintiffs demand injunctive relief throughout the First Amended Complaint ("FAC"), but they expressly admit in their "Preliminary Statement" that Sony discontinued manufacturing, marketing, and selling the television models at issue. FAC, ¶ 5. Accordingly, plaintiffs lack standing to obtain injunctive relief under the UCL, FAL, and CLRA. Every claim for injunctive relief should therefore be dismissed as a matter of law.

Plaintiffs' UCL, FAL, and CLRA claims should be dismissed on several independent grounds. Because plaintiffs concede that the alleged defect did not cause their televisions to malfunction, if at all, until long after the written one-year limited warranty had expired, *see* FAC, ¶¶ 6-8, it is well settled that they cannot maintain their UCL, FAL, and CLRA claims based on Sony's purported failure to disclose the alleged defect. Further, plaintiffs have not and cannot allege ***any*** risk to physical safety, much less an unreasonable one sufficient to classify the defect as a "safety defect," as plaintiffs concede that their televisions did not injure any person or other property. Next, their UCL, FAL, and CLRA claims fail because what little plaintiffs have pled about the alleged misrepresentations shows that they are at best non-actionable puffery and unrelated to the alleged defect. The FAL claim also fails because plaintiffs do not identify the advertisements at issue. Their CLRA claim should also be dismissed because plaintiffs failed to file the statutorily required affidavits. Additionally, plaintiffs fail to plead their UCL, FAL, CLRA, and consumer protection claims with particularity as required under Rule 9(b). The crux of plaintiffs' amended complaint is that they purchased their televisions in 2005 to 2006, it allegedly exhibited a lamp access door issue over *four years later* in 2010, and Sony generally marketed the television as having superior picture quality. Such allegations are insufficient to state claims sounding in fraud. Plaintiffs utterly fails to plead with particularity: (1) Sony's knowledge of the alleged defect prior to or contemporaneous with distributing their televisions; (2) any of the specific misrepresentations, omissions, or advertisements allegedly made by Sony; (3) any facts establishing a duty to disclose the alleged defect; (4) any specifics about when or where they supposedly saw or heard such misrepresentations or statements suffering from omissions; and (5) reliance on such misrepresentations or omissions.

Plaintiffs' strict liability claim fails because under California's well-established economic loss doctrine, to state a claim under a strict liability theory, as opposed to a warranty theory, the defect must have caused personal injury to plaintiffs or other property. Here, plaintiffs admit that their televisions did not cause either.

Plaintiffs' four warranty claims fare no better. The express and implied warranty claims and Song-Beverly Act warranty claim are without merit because plaintiffs' alleged defect arose

after the one-year express limited warranty expired. Moreover, plaintiffs admit that Sony opted to replace their televisions, rather than repair them, as is its right under the limited extended warranty, but plaintiffs refused such warranty service. The implied warranty claim also fails on the additional independent ground that plaintiffs lack vertical privity – plaintiffs did not buy their televisions directly from Sony. Because plaintiffs cannot plead a state law warranty claim and they have fewer than 100 named plaintiffs, their Magnuson-Moss Act claim also necessarily falls.

Last, plaintiffs' claims against SCA and Sony Corporation should be dismissed not only for each of the reasons set forth above, but also because plaintiffs fail to allege any specific conduct by either entity. SEL is admittedly plaintiffs' target. And it is undisputed that the three Sony entities are distinct corporations. Yet plaintiffs improperly lump together all three Sony entities here in clear violation of Rule 9(b)'s requirement that each defendant be apprised of its specific role in the alleged misrepresentations. SCA and Sony Corporation should be dismissed.

For the Court's ease of reference, Sony attaches as Appendix I to this brief a table summarizing each claim asserted by plaintiffs and the grounds for its dismissal. Because each claim suffers from a defect that cannot be cured by amendment, plaintiffs' claims should be dismissed with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs purport to represent a nationwide class of people who purchased Sony Grand WEGA LCD Rear Projection Televisions with model numbers KF-42WE610, KF-50WE610, KF-60WE610, KDF-60XBR950, KDF-70XBR950, KF-42WE620, KF-50WE620, KDF-42WE655, and KF-50WE655 (the "Televisions"). FAC, ¶ 3. Plaintiffs contend that the Televisions have a "defect" that results in warping of the lamp access door, which is an internal part that can only be accessed by removing the front of the Televisions. *Id.*, at ¶¶ 3, 4. Plaintiffs allege that the purported defect manifests more than one year after normal use, and when it manifests, it "causes the Televisions to overheat, causing melting and/or combustion of the internal components and chassis." *Id.*, at ¶ 3. Although lacking any good faith basis to do so and despite admissions to the contrary, plaintiffs baldly characterize the "defect" as a "safety defect" and conclude that it "poses a fire hazard." *Id.*, at ¶ 5. Plaintiffs' characterization could not be further from the truth,

and plaintiffs' own allegations expose their falsehood.  Plaintiffs admit, as they must, that Sony has continually maintained and advised them directly on the telephone or through plaintiffs' review of a posting on Sony's support website that there are ***no product safety concerns***.  *Id.*, at ¶¶ 4, 6, 7, 9, 19.  Plaintiffs' claims fall into three categories: (1) claims based on Sony's purported advertising and marketing of the Televisions; (2) product liability; and (3) Sony's purported breach of warranty obligations.

### A.      Advertising and Marketing Claims.

Plaintiffs assert claims under the UCL (first claim), FAL (second claim), and CLRA (third claim), based on Sony's advertising and marketing of the Televisions.  FAC, ¶¶ 37-57.  Plaintiffs do not specify the "promotional efforts," "advertisements," or "misrepresentations" that form the basis for these claims.  Instead, plaintiffs generally aver that Sony marketed the Televisions as "offering superior picture quality," having "accurate color reproduction at the highest resolutions and fidelity possible," or providing "excellent video quality."  FAC, ¶¶ 14, 23.  Plaintiffs' advertising and marketing claims are also premised on Sony's purported failure to disclose that the Televisions contained an alleged defect.  *See, e.g.*, *id.*, at ¶¶ 14, 17, 19, 23, 41, 51.

### B.      Products Liability Claim.

Plaintiffs assert a claim for strict liability (fourth claim) based on their mischaracterization that the Televisions were unsafe for their normal and reasonably anticipated use.  FAC, ¶¶ 58-71.  Plaintiffs do not, however, allege any personal injury or damage to other property caused by the alleged defect.  *Id.*

### C.      Warranty Claims.

Plaintiffs assert the following claims based on Sony's purported breach of its warranty obligations: breach of the Song-Beverly Consumer Warranty Act (fifth claim); breach of the Magnuson-Moss Warranty Act (sixth claim); breach of express warranty (seventh claim); and breach of implied warranty (eighth claim).  FAC, ¶¶ 72-100.  Plaintiffs allege that the Televisions have unspecified written warranties.  *Id.*, at ¶¶ 4, 18, 21-22, 84-91.  But plaintiffs do not attach or quote from the warranties, notwithstanding their importance to plaintiffs' claims, and the repeated

references to them in the FAC. The Televisions are indeed subject to two express written warranties from SEL: (1) Limited Warranty; and (2) Limited Extended Warranty.[1]

### 1. SEL's Limited Warranty.

The Televisions have a written 1-year labor / 1-year parts Limited Warranty (the "Limited Warranty"). The Limited Warranty provides in relevant part:

> Sony Electronics Inc. ("Sony") warrants this Product (including any accessories) against defects in material or workmanship as follows:
>
> 1. LABOR: For a period of one (1) year from the date of purchase, if this Product is determined to be defective, Sony will repair or replace the Product, at its option, at no charge, or pay the labor charges to any Sony authorized service facility. After the Warranty Period, you must pay for all labor charges.
>
> 2. PARTS: In addition, Sony will supply, at no charge, new or rebuilt replacements in exchange for defective parts for a period of one (1) year . . . . After the warranty period, you must pay for all parts costs.
>
> 3. ACCESSORIES: Parts and labor for all accessories are for one (1) year.
>
> In-home diagnostic warranty service is provided during the initial one (1) year period for 19" (measured diagonally), or larger screen size through a Sony authorized service facility.

Sony RJN, Exh. A.

### 2. SEL's Limited Extended Warranty

As part of its longstanding commitment to quality and customer satisfaction, SEL issued a Limited Extended Warranty for the Televisions on April 17, 2008. Sony RJN, Exh. B. The Limited Extended Warranty provides in relevant part:

---

[1] A copy of the Limited Warranty for the two models that plaintiffs allegedly purchased is attached to Sony's Request for Judicial Notice filed concurrently herewith ("Sony's RJN") as Exhibit A. The Limited Extended Warranty is attached to Sony's RJN as Exhibit B. *See* Declaration of Tim McGowan ("McGowan Decl."), ¶¶ 2-3 (authenticating Limited Warranty and Limited Extended Warranty). The Court may consider the Limited Warranty and Limited Extended Warranty in deciding Sony's motion under the doctrine of "incorporation by reference" because plaintiffs repeatedly reference the Limited Warranty and the Limited Extended Warranty in the Complaint. *See, e.g.*, FAC, ¶¶ 4, 6-8, 18, 21-22, 84-91. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). *See also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (appeal filed August 1, 2008, Ninth Circuit Docket No. 08-16780).

**SONY'S MEMO OF PS AND AS I/S/O
MOTION TO DISMISS FAC
CASE NO. 10 CV 0795 JLS RBB**

It has come to our attention that a limited number of Grand WEGA rear projection televisions … may exhibit warping to the lamp access door. In rare cases, some additional components may also become damaged as a result.

Sony would like to assure its customers that this issue has been evaluated extensively and that there are no product safety concerns caused by this issue.

As part of our commitment to quality, Sony will reimburse owners of eligible models in the United States who paid out-of-pocket expenses on or before May 9, 2008 for an estimate or repair service related to this specific lamp door issue…

Additionally, through March 31, 2011, Sony will repair the lamp access door and any other components damaged as a result at no charge for any of the covered televisions. Customers who experience this issue should contact Sony at (888) 649-7669 to schedule a repair. Sony will only provide free repair to covered televisions that exhibit this specific condition.

All other terms of the Sony limited warranty continue to apply. Sony utilizes a network of hundreds of qualified independent third-party servicers to perform in-home television warranty service. Sony, through its Authorized Servicer Network, will repair your set within 30 days of your initial contact. For diagnosis, warranty service, or if your set is not repaired within 30 days, please contact Sony at (888) 649-7669.

Sony RJN, Exh. B.

**D.   Discontinuance of the Televisions.**

The Televisions have been discontinued, and SEL no longer manufactures, markets, or sells them in the United States.  FAC, ¶ 5; McGowan Decl., ¶ 4.  SEL has no plans to resume doing so.  McGowan Decl., ¶¶ 5-6.

**E.   Plaintiffs' Experiences with the Televisions.**

Plaintiff Laura Marchante alleges that she purchased her television (KDF-42WE655) from a Circuit City store in December 2005.  FAC, ¶ 6.  The Limited Warranty for her television therefore expired by its terms in December 2006.  RJN, Exh. A.  Over three years after the Limited Warranty had expired, plaintiff Marchante first contacted Sony regarding a potential issue with the optical block component, claiming that she "began experiencing a discoloration on the screen of her television in approximately March 2010."  FAC, ¶ 6.  Although under no obligation to do so because her Limited Warranty had expired, as part of its commitment to

customer service, Sony offered plaintiff Marchante a replacement television at a discounted price or to pay half of the cost of repairing the optical block. *Id*. Plaintiff Marchante declined. *Id*. Instead, she took to the internet, discovered the Limited Extended Warranty posted on Sony's support website, and then called Sony on March 26, 2010 requesting that Sony diagnose whether her television exhibited warping to the lamp access door. *Id*. On April 1, 2010, a Sony Authorized Technician inspected her television. *Id*. Plaintiff Marchante alleges that a supervisor of the Sony Authorized Technician advised her that the lamp access door did not present a safety issue and that she should not use the television to avoid rendering the television not repairable. *Id*. Shortly thereafter, Sony contacted plaintiff Marchante, and offered to replace her television under the Limited Warranty and Limited Extended Warranty. *Id*. She refused the warranty service offer. *Id*. Instead, she demanded a new television or full refund on her purchase price despite the fact that the television worked without issue for over four years. *Id*.

Plaintiff Ochoa alleges that he purchased his television (KDF-42WE655) from a Circuit City store in December 2006. FAC, ¶ 7. The Limited Warranty for his television therefore expired by its terms in December 2007. RJN, Exh. A. Plaintiff Ochoa alleges that, at some unspecified time, he "began experiencing a discoloration on the screen of his television." FAC, ¶ 7. He contends that he opened the lamp access door and discovered that certain interior components of his television had melted. *Id*. He alleges that he notified Sony and demanded a repair, but he fails to specify when or the manner in which he did so. *Id*. Although he alleges that Sony refused to repair the television unless he paid for the repair costs for the optical block component, which may not be covered under the Limited Warranty and Limited Express Warranty, he fails to allege whether Sony offered to replace his television. *Id*.

Plaintiff Dragan Sefo alleges that he purchased his television (KF-42WE610) in 2004. FAC, ¶ 8. The Limited Warranty for his television therefore expired by its terms in 2005. RJN, Exh. A. He alleges that on February 18, 2010, his television turned off and a light on his television indicated that the lamp had burned out and needed to be changed. FAC, ¶ 8. When he attempted to replace the lamp, he claims that he noticed "heat distortion" and that the lamp access door was warped. *Id*. He alleges that he then began researching the issue on the internet and

reviewed the Limited Extended Warranty. *Id.* Later that same day, he alleges that he called Sony and scheduled a Sony Authorized Technician to diagnose the television. *Id.* The diagnosis took place on February 26, 2010. *Id.* Subsequently, Sony offered to replace his television under the Limited Warranty and Limited Extended Warranty. *Id.* As part of its commitment to customer service, Sony alternatively offered a discounted new television. *Id.* Plaintiff Sefo does not allege whether he accepted or rejected either offer. *Id.*

III. **PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFFS LACK STANDING**

Plaintiffs seek injunctive relief under the UCL, FAL, and CLRA claims. FAC, ¶¶ 32(j), 44, 48, 57. To have standing to do so, a plaintiff must show a likelihood of *future injury* based on the alleged misconduct. Here, Sony no longer manufactures, markets, or sells the Televisions in the United States, and has no plans to do so in the future. McGowan Decl., ¶¶ 4-6. Plaintiffs concede this. FAC, ¶ 5. As such, Sony's alleged past conduct presents no threat of future harm. Plaintiffs' injunctive relief claims should be dismissed.

A. **Legal Standard for Motion to Dismiss Under Rule 12(b)(1).**

A Rule 12(b)(1) motion attacks the complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Standing pertains to a federal court's subject-matter jurisdiction under Article III, and thus, is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *In re Ditropan XL Antitrust Litig.*, No. M:06-CV-01761-JSW, 2007 WL 2978329, *1 (N.D. Cal. Oct. 11, 2007) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Although Sony is the moving party, plaintiffs bear the burden of proving jurisdiction. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Moreover, the Court presumes a lack of jurisdiction until plaintiffs prove otherwise. *Id.*

Sony is entitled to submit evidence in support of its Rule 12(b)(1) motion. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 943 (S.D. Cal. 2007) (holding Rule 12(b)(1) motion can be either facial or factual). As this motion is factual, plaintiffs must "furnish evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

**B.** **Plaintiffs Lack Standing to Seek Injunctive Relief Against Sony Because They Cannot Show a Threat of Future Harm.**

Plaintiffs must show "'a likelihood of future injury'" to survive Sony's motion. *Meinhold v. Sprint Spectrum, L.P.*, No. Civ. S-07-00456 FCD EFB, 2007 WL 1456141, at *5 (E.D. Cal. May 16, 2007) (quoting *White*, 227 F.3d at 1242). Plaintiffs cannot do so because the allegations and evidence establish that any alleged injury occurred in the past and relates to a product that Sony no longer makes, sells, or markets the Televisions. FAC, ¶ 5 ("Sony has now discontinued its manufacturing, marketing, and sales of these defective devices . . . ."); McGowan Decl., ¶¶ 4-6. Accordingly, plaintiffs' injunctive relief claims under the UCL, FAL, and CLRA should be dismissed without leave to amend. *See, e.g., Meinhold*, 2007 WL 1456141, at *5 (dismissing UCL, FAL, and CLRA claims because of insufficient evidence that defendant was likely to engage in conduct in the future).[2]

**IV.** **THE FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) AND RULE 9(b) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiffs' eight causes of action all fail to state a claim upon which relief can be granted, and they should therefore be dismissed with prejudice.

**A.** **Legal Standard for Motion to Dismiss Under Rule 12(b)(6) and Rule 9(b).**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a

---

[2] *See also*, *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (dismissing claims for injunctive relief under the UCL and CLRA for lack of standing where "any injury allegedly suffered []appears to lie solely in the past"); *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2008) (dismissing claims for injunctive relief under UCL, FAL, and CLRA where the plaintiff's injury occurred in the past).

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

On a Rule 12(b) motion to dismiss, courts assume the truth of all factual allegations, but do not accept conclusions, allegations contradicted by judicially noticed facts, or unwarranted inferences as true. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir. 1987). Under the doctrine of "incorporation by reference," courts may consider documents referenced or relied on extensively in a complaint on a Rule 12(b)(6) motion. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Rule 9(b) mandates that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b)'s requirements apply to both federal and state law claims, including state law claims for alleged violations of the UCL, FAL, and CLRA where such claims are based on fraudulent conduct. *Mat-Van, Inc. v. Sheldon Good & Co. Auctions,* No. 07-CV-912 IEG (BLM), 2007 WL 3047093, at *6 (S.D. Cal. Oct. 16, 2007) ("It is well established that Rule 9(b)'s requirement[s] . . . appl[y] to state-law causes of action before a federal court."); *In re Actimmune Mktg.*, No. C 08-02376 MHP, 2009 WL 3740648, at *6 (N.D. Cal. Nov. 6, 2009) (applying Rule 9(b) to UCL, FAL and CLRA claims); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to CLRA and UCL claims); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (applying Rule 9(b) to UCL and FAL claims). The purposes of Rule 9(b) include: (1) providing defendants with sufficient notice of the serious charge of fraud; (2) protecting the reputation of those charged with fraud; and (3) prohibiting plaintiffs from unilaterally imposing the enormous social and economic costs associated with fraud claims absent a factual basis for doing so. *Kearns,* 567 F.3d at 1125.

To satisfy Rule 9(b)'s requirements, a plaintiff must explicitly aver the "who, what, when, where, and how" of the alleged fraudulent conduct. *Vess,* 317 F.3d at 1103-04. A plaintiff must include allegations about the time, place, and content of the statement or omissions, the identities of the parties to them, as well as an explanation as to why the statement or omission complained of is false or misleading. *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2009); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *In re Actimmune Mktg.*, 2009 WL 3740648, at *6. Also, a plaintiff must allege reliance on the alleged fraudulent conduct with particularity. *See Kearns,* 567 F.3d at 1126.

Dismissal without leave to amend is appropriate if a plaintiff is unable to cure the defect by amendment. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532-33 (9th Cir. 2008) (affirming dismissal without leave to amend where "any amendment would be futile").

## B.  Plaintiffs' UCL, FAL, and CLRA Claims Should Be Dismissed.

Plaintiffs' UCL, FAL, and CLRA claims should be dismissed on several independent grounds. First, they fail because plaintiffs allege that the purported defect did not cause the Televisions to function improperly until *after* the one-year Limited Warranty expired, if at all. Further, plaintiffs have failed to allege any known risk to physical safety giving rise to a duty to disclose, much less an unreasonable risk. The claims also fail because plaintiffs' vague and general allegations regarding statements about product quality at best constitute non-actionable puffery. The FAL claim should also be dismissed because plaintiffs do not specify the alleged advertisements at issue. Plaintiffs' CLRA claim is also defective because plaintiffs failed to file the requisite affidavits. Finally, plaintiffs fail to plead their UCL, FAL, and CLRA claims with particularity as required under Rule 9(b).

### 1.  Plaintiffs cannot hold Sony liable under the UCL, FAL, and CLRA for alleged failure to disclose a "defect" in the Televisions that manifests itself after the expiration of the warranty period.

The crux of plaintiffs' UCL, FAL, and CLRA claims is that Sony allegedly knowingly misrepresented or failed to disclose the existence of a purportedly known defect that may exhibit warping to the lamp access door component. FAC, ¶¶ 4-5, 14, 23, 41, 47, 51. Plaintiffs' claims,

however, fail as a matter of law because plaintiffs admit that the purported defect does not cause malfunctions until after expiration of the warranty period, if at all. *Id.*, at ¶¶ 6-8.

It is black-letter California law that a manufacturer cannot be held liable under the UCL, FAL, or CLRA for failure to disclose a defect that manifests itself after expiration of the warranty period. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833-39 (2006) (affirming trial court's dismissal of UCL and CLRA claims based on a failure to disclose an alleged defect in an automobile engine); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969-74 (N.D. Cal. 2008), *aff'd*, No. 08-16290, 2009 U.S. App. LEXIS 7259 (9th Cir. Apr. 2, 2009) (dismissing UCL, FAL, and CLRA claims based on failure to disclose alleged defect in computers that manifested after warranty expired); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (dismissing CLRA and UCL claims based on failure to disclose a defect where computers functioned normally during one-year warranty period); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-27 (9th Cir. 2008) (affirming trial court's grant of summary judgment as to UCL claim because failure to disclose defect resulting in post-warranty failure is not actionable).

The seminal case is *Daugherty*. In that case, the plaintiffs owned Honda cars containing an allegedly defective engine. *Id.* at 827. The plaintiffs brought claims under the UCL and sections (a)(5) and (a)(7) of the CLRA[3] for Honda's "conceal[ment] and fail[ure] to disclose" that the car's engines "contain[ed] a defect," and for "continuing to market and sell defective cars notwithstanding knowledge of the defect." *Id.* at 833. The court affirmed the trial court's dismissal of the plaintiff's claims, holding that a manufacturer cannot be found liable under the UCL and CLRA as a matter of law for failing to disclose a defect in a product that does not manifest itself until after expiration of warranty expired. *Id.* at 836-40. Although the court acknowledged that a claim under the CLRA could be stated in terms of a "fraudulent omission," it determined that "to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* at 835. The

---

[3] Plaintiffs' CLRA claims are premised on purported violations of these same sections. FAC, ¶ 51.

court held that Honda's only affirmative representations at the time of sale were its express warranties, as to which no breach occurred, and that Honda had no duty to disclose defects that did not carry an unreasonable risk of physical injury or threat to safety. *Id*. at 836-37.

In *Long*, the court followed *Daugherty* and dismissed UCL and CLRA claims based on failure to disclose a defect in computers without leave to amend where the computers at issue did not malfunction until after the one-year limited warranty. *Long*, 2007 WL 2994812, at *8. Specifically, as to the UCL and CLRA claims, it held: "In this case, HP is not alleged to have made any representation as to the life of [the defective component], or even as to the useful life of its [computers]. As such, a consumer's only reasonable expectation was that the [computers] would function properly for the duration of HP's limited one-year warranty. HP fulfilled this expectation. Accordingly, HP's alleged failure to disclose the inverter defect is not actionable under either the CLRA or the UCL." *Id*.

Here, *Daugherty* and its progeny are directly on point. Plaintiffs concede that the alleged defect did not manifest or otherwise affect the performance of the Televisions until after expiration of the one-year Limited Warranty. Moreover, plaintiffs do not allege any representations by Sony about overheating, the lamp access door, or the useful life of the Televisions. *See, e.g.*, *Daugherty*, 144 Cal. App. 4th at 836-37 (finding plaintiffs "did not allege a single affirmative representation by Honda regarding the [allegedly defective] engine") (citation omitted). And plaintiffs admit that any purported defect in the lamp access door manifested itself after the Limited Warranty expired. *See* FAC, ¶¶ 6-8; RJN, Exh. A.

In a misguided effort to distinguish *Daugherty* and its progeny and establish a duty to disclose based on an unreasonable risk of physical injury or threat to safety, plaintiffs baldly mischaracterize the alleged defect as a "safety defect" and argue that Sony had a duty to disclose. Plaintiffs must do more, however, than label the defect as a "safety defect." *Hensley v. U.S. Drug Enforcement Agency*, 2007 WL 2177023, *2 (S.D. Cal. 2007) ("To survive a motion to dismiss, [a] complaint must go beyond 'labels and conclusions.'"), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *In re Jamster Marketing Litigation*, 2009 WL 1456632, *5 (S.D. Cal. 2009) ("Pleading by adjective does not comply with" Federal pleading standards). Plaintiffs must plead

facts establishing an unreasonable risk of personal injury and that they were personally injured. *Daugherty*, 144 Cal. App. 4th at 836 (holding plaintiff did not adequately plead a "safety defect" where complaint contained conclusory allegations of a "safety risk" and only alleged harm was repair costs); *Tietsworth v. Sears, Roebuck & Co.,* No. 5:09-CV-00288 JF (HRL), 2010 WL 1268093, at *7 (N.D. Cal. Mar. 31, 2010) (holding plaintiffs failed to adequately allege a safety defect). Plaintiffs have not and cannot do so.

In *Tietsworth*, the court analyzed the standard for pleading UCL and CLRA claims based on alleged fraudulent omissions relating to a purported "safety defect." In that case, plaintiffs alleged that defective electronic control boards in washing machines posed "a serious personal safety risk, as the defective boards have led to the Machines spinning out of control and literally exploding on a number of occasions … causing the heavy metal lid to detach and fly across the laundry room … causing severe property damage and threatening very severe bodily injury." *Tietsworth*, 2010 WL 1268093, at *1 n.4. Plaintiffs argued that their allegations of a "safety defect" gave rise to a duty to disclose on behalf of defendants. *Id.* at *7. The court rejected plaintiffs' argument and held that they failed to adequately plead a "safety defect" giving rise to a duty to disclose. *Id.* The court reasoned that there was no factual allegations that any named plaintiff or any identifiable member of the putative class actually experienced the alleged "safety defect," i.e., the washing machine "spinning out of control." *Id.* The court refused to credit plaintiffs' bald allegation of a "safety defect" or their argument that alleging the *potential* for "safety defect" was sufficient to trigger a duty of disclosure. *Id.* (citing *Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (concluding that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (internal citation omitted).

As in *Tietsworth*, plaintiffs here label the defect as a "safety defect" and speculate that it could pose "a fire hazard." But plaintiffs do not allege any supporting facts. Nor do they allege that they were personally injured or had damage to other property. FAC, ¶¶ 6-8. They only allege that they suffered a "loss of money or property" in the form of purported decreased value

of their Televisions. *Id.*, at ¶¶ 6-8, 24, 28. This is insufficient. *See Daugherty*, 144 Cal. App. 4th at 836 (holding plaintiffs did not adequately plead a "safety defect" where complaint contained conclusory allegations of a "safety risk" and only alleged harm was repair costs). Indeed, plaintiffs' allegations and the Limited Extended Warranty referenced in their FAC demonstrate a *lack* of safety concerns. *Id.*, at ¶¶ 4, 6, 8 (referring to Limited Extended Warranty and alleging that Sony advised plaintiff Marchante no safety concern); RJN, Exh. B ("Sony would like to assure its customers that this issue has been evaluated extensively and that there are no product safety concerns caused by this issue."). Additionally, plaintiffs concede that Sony *did disclose* the alleged defect notwithstanding the lack of product safety concerns through the posting of the Limited Extended Warranty on its website. *Id.*, at ¶ 4 (noting Sony posted notice on its website).

Because the alleged defect occurred after the Limited Warranty expired and plaintiffs have failed to properly plead any unreasonable risk of physical injury or actual physical injury or damage to other property, plaintiffs' UCL, FAL, and CLRA claims should be dismissed.

> **2.      Plaintiffs' UCL, FAL, and CLRA claims should be dismissed because the alleged statements are non-actionable puffery, were true during the warranty period, and do not relate to the alleged defect.**

Plaintiffs' vague and generalized allegations that Sony marketed the Televisions as "offering superior picture quality," having "accurate color reproduction at the highest resolutions and fidelity possible," or providing "excellent video quality" are insufficient to support plaintiffs' consumer statute claims. FAC, ¶¶ 14, 23. The phrases "superior quality," "excellent quality," and "high quality" are "non-actionable puffery" that cannot support a UCL, FAL, or CLRA. *Oestreicher*, 544 F. Supp. 2d at 973-74 (dismissing UCL and FAL claims based on "generalized and vague statements of product superiority"); *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-40 (C.D. Cal. 2005) ("Generalized, vague, and unspecified assertions constitute mere puffery upon which a reasonable consumer could not rely, and hence are not actionable.") (quotation marks and citation omitted). Plaintiffs also admit that there were no alleged issues with picture or video quality or color reproduction for several years of use and until long after the one-year Limited Warranty expired. FAC, ¶¶ 6-8. Additionally, the alleged misstatements do not even relate to the alleged defect. *Tietsworth*, 2009 U.S. Dist. LEXIS 98532,

at *27 (no misrepresentations where statements are "mere puffery" and do not relate to alleged defect). Plaintiffs' have failed to set forth any actionable statements.

### 3. The FAL claim should be dismissed for failure to identify the advertisements at issue.

Plaintiffs' FAL claim should be dismissed for failure to apprise Sony of the alleged wrongful conduct, where plaintiffs merely allege that Sony "caused" certain, unspecified "advertisements" to be placed in the public. FAC, ¶ 47; *see, e.g., Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *10 (N.D. Cal. Feb. 27, 2008) (dismissing FAL claim for failure to meet Rule 8's requirements because plaintiff did "not provide adequate notice to Defendant of the alleged wrongful conduct" where "[i]n the claim, Plaintiff refers only to unspecified 'commercial advertisements' and a 'variety of promotional materials'").

### 4. The CLRA claim should be dismissed because plaintiffs' failed to file the required affidavits.

California Civil Code section 1780(d) mandates that a plaintiff seeking relief under the CLRA file "an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code, § 1780(d). "If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id*. Here, plaintiffs have not filed the required affidavits, and therefore, their CLRA claim should be dismissed.

### 5. Plaintiffs' consumer statute claims fail to satisfy Rule 9(b)'s heightened pleading requirements.

Plaintiffs' UCL, FAL, and CLRA claims are subject to Rule 9(b)'s particularity requirements because plaintiffs allege that Sony engaged in a unified course of fraudulent conduct. *See Kearns v. Ford Motor Co.*, 567 F.3d at 1125-26. The FAC is replete with allegations of fraud by misrepresentation or omission. *See, e.g.*, FAC, ¶¶ 4-8, 14, 17, 19, 20-24, 38-39, 47, 51. Further, plaintiffs allege that Sony has purportedly engaged in a uniform course of fraudulent conduct through "misleading marketing," and "promotional efforts." *Id*. at, ¶¶ 39, 41. Plaintiffs' consumer statute claims are premised on this conduct. *See, e.g., Id*. at, ¶¶ 37-44 (UCL

claim); *id*. at ¶ 47 (FAL claim); *id*. at ¶ 51 (CLRA claim).  Accordingly, plaintiffs' UCL, FAL, and CLRA claims are subject to Rule 9(b)'s heightened pleading requirements.

Plaintiffs do not meet Rule 9(b)'s exacting requirements.  Plaintiffs merely allege that they purchased their televisions in 2005 to 2006, it allegedly exhibited a lamp access door issue *several years later* in 2010, and Sony generally marketed the television as having superior picture quality.  FAC, at ¶¶ 6-8, 19.  That is not enough.  Plaintiffs fail to allege specific facts demonstrating that Sony had knowledge of the alleged defect prior to distributing the Televisions to the plaintiffs.  Although plaintiffs conclusorily allege that "Sony has known about the Safety Defect since almost immediately after their introduction to the market and likely even earlier" (FAC, ¶ 19) and repeatedly reference Sony's purported knowledge throughout the FAC (*see, e.g.*, *Id*., at ¶¶ 4, 19), plaintiffs have not put forth any particularized factual allegations showing that Sony knew or should have known about the alleged defect several years ago at the time plaintiffs purchased the Televisions and that Sony had a duty to disclose.  *Meserole v. Sony Corp. of Am., Inc.*, No. 08 CV 8987, 2009 WL 1403933, at *4-*5, *8 (S.D.N.Y. May 19, 2009) (dismissing plaintiffs' UCL, FAL, and CLRA claims because "[p]laintiffs have not put forth any particularized allegations evincing that Sony knew about the alleged defect prior to distributing the products to [p]laintiffs."); *see Maniscalco v. Brother Int'l Corp.,* Civil Action No.: 06-CV-4907(FLW), 2008 U.S. Dist. LEXIS 50122, *35 (D.N.J. Jun. 26, 2008) (plaintiffs' conclusory allegation that defendant knew about the defect prior to purchase was insufficient to defeat motion to dismiss; "Court will not infer an essential element" of the action).

Second, plaintiffs do not specifically identify a single piece of marketing material or advertisement that they claim is deceptive or misleading.  *See Meserole*, 2009 WL 1403933, at *4.  Nor do plaintiffs identify when or where they purportedly saw these materials, explain how these materials are purportedly deceptive or misleading, or establish how they relied on them in deciding to purchase their television.  *Id*. at *4-*5.  Instead, plaintiffs make only a few vague allegations that Sony purportedly represented the Televisions as "offering superior picture quality," having "accurate color reproduction at the highest resolutions and fidelity possible," or providing "excellent video quality."  FAC, ¶¶ 14, 23.  But these purported representations do not

state anything about the alleged defect at issue here (the potential warping of the lamp access door). *See Meserole*, 2009 WL 1403933, at *4 (noting defect "bears little connectivity to alleged advertisements" regarding picture quality); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1276 (2006) (holding no affirmative misrepresentation about alleged defect). Plaintiffs simply do not allege a single affirmative representation by Sony regarding the lamp access door.

Plaintiffs' UCL, FAL, and CLRA claims should be dismissed under Rule 9(b).

**C.      Plaintiffs' Strict Liability Claim Should Be Dismissed Under the Economic Loss Doctrine.**

Plaintiffs' strict liability claim (count four) should be dismissed because plaintiffs suffered no physical injury or damage to other property. It is black-letter California law that a plaintiff cannot assert a strict liability theory against the manufacturer of a product where the only alleged losses the plaintiff sustained are purely economic. *Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979, 988-89 (2004); *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482-83 (2002). "[T]he economic loss rule allows a plaintiff to recover in strict products liability [or negligence] [only] when a product defect causes [personal injury] or damage to 'other property,' that is, property *other than the product itself.*" *Jimenez,* 29 Cal. 4th at 483 (emphasis in original). Without personal injury or damage to other property, plaintiffs are precluded from pursuing alleged defect claims in tort, and are instead limited to seeking to recover for damage to the product itself under contractual warranty theories. *Id.* Plaintiffs fail to allege they suffered personal injury or damage to other property as a result of any alleged defect.

**D.      Plaintiffs' Warranty Claims Should Each Be Dismissed Because Sony Has Not Breached Any Warranty Obligations.**

Plaintiffs' four warranty claims are also fatally flawed, and should be dismissed.

**1.      Plaintiffs cannot plead that Sony breached the Limited Warranty or Limited Extended Warranty.**

Plaintiffs assert a breach of express warranty claim (count seven) contending that Sony breached its Limited Warranty. "To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance

1  thereon; and (3) a breach of warranty that proximately caused plaintiff's injury." *Tietsworth v.*

2  *Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, at *11 (N.D. Cal. Oct.

3  13, 2009) (citation omitted). Plaintiffs' claim fails because plaintiffs have not and cannot allege

4  that Sony breached either the Limited Warranty or Limited Extended Warranty.

5  **a.  Limited Warranty**

6  Plaintiffs' allegations are insufficient to state a claim for breach of the Limited Warranty

7  because the alleged defect did not manifest itself until after the one-year warranty period expired.

8  FAC, ¶¶ 6-8. "The general rule is that an express warranty 'does not cover repairs made after the

9  applicable time . . . periods have elapsed.'" *Daugherty*, 144 Cal. App. 4th at 830 (dismissing

10  express warranty claim where the plaintiff failed to submit a claim within the warranty period)

11  (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)); *see also*

12  *Anunziato*, 402 F. Supp. 2d at 1141 (dismissing breach of express warranty claim finding that

13  warranty had expired and therefore plaintiff's "claims based on breach of the express warranty

14  fails as a matter of law"); *Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d

15  936, 941 (2d Cir. 1980) (applying California law and rejecting claim of breach of express

16  warranty because the warrantor "was never asked" to "repair or replace" defective product within

17  the warranty period). Because plaintiffs admit that their televisions did not malfunction within

18  the one year Limited Warranty period, but rather that they requested repair several years after

19  their one-year Limited Warranty expired, their breach of express warranty claim fails.

20  Apparently recognizing that Sony did not breach its Limited Warranty, plaintiffs appear to

21  seek to expand the express warranty period by alleging that the one-year time limitation is

22  unconscionable, insufficient, or inadequate. FAC, ¶ 22. Any such argument is without merit.

23  *See, e.g., Ball v. Sony Elecs., Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *6 (W.D. Wis. Sept.

24  28, 2005) (rejecting this same argument and explaining that "[Sony's] offer to repair or replace

25  the product under the circumstances enhanced rather than limited plaintiffs' contractual rights and

26  is therefore not unconscionable."); *Clemens*, 534 F.3d at 1023 (recognizing manufacturer may

27  warrant product for period of time less than a product's useful life); *Daugherty,* 144 Cal. App. 4th

28  at 830 (same); *Tietsworth v. Sears, Roebuck & Co.*, No. C 09-00288 JF (HRL), 2009 U.S. Dist.

LEXIS 40872, at *7-8 (N.D. Cal. May 14, 2009) (holding no unconscionability where no showing of lack of alternatives or surprise by warranty period).

To the extent plaintiffs contend that their failure to seek coverage during the warranty period is excused because Sony allegedly knew about the defect (FAC, ¶ 22, 90), their contention must be rejected. *Daugherty,* 144 Cal. App. 4th at 830. *Daugherty* dismissed this precise argument, noting that "[s]everal courts have expressly rejected the proposition that a latent defect, discovered outside the limits of the written warranty, may form the basis for a valid express warranty claim [even] if the warrantor knew of the defect at the time of sale." *Id*. Relying on *Daugherty*, the Ninth Circuit also held that such a contention was without merit:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted.

*Clemens*, 534 F.3d at 1023.[4]

### b.    Limited Extended Warranty.

Plaintiffs' allegations establish that Sony satisfied the terms of the Limited Extended Warranty, but plaintiffs' refused Sony's warranty service offer. Under the Limited Extended Warranty, Sony agreed to "repair the lamp access door and any other components damaged as a result at no charge for any of the covered televisions" through March 31, 2011. RJN, Exh. B. The Limited Extended Warranty also states that "[a]ll other terms of the Sony limited warranty continue to apply." The terms of the Limited Warranty provide that Sony will ***repair or replace*** the Televisions at its option. RJN, Exh. A.

---

[4] Any attempt by plaintiffs to claim that Sony's Limited Warranty guaranteed that the Televisions were defect free (*see* FAC, ¶ 85) must be rejected. *Ball*, 2005 WL 2406145, at *3 (rejecting argument that written warranty was "a representation that the [product] was free of defects," instead recognizing that "a written warranty . . . is an express acknowledgment that the product may be defective"); *Hoey*, 515 F. Supp. 2d, at 1104; *Long*, 2007 WL 2994812, at *7-8. The Limited Warranty provided for specific, time-limited remedies for defects, not that the Televisions would remain defect-free forever. Sony RJN, Exh. A.

Plaintiffs Marchante and Sefo concede that after Sony diagnosed that their televisions were eligible for lamp access door repair under the Limited Extended Warranty, Sony offered them a refurbished replacement television at no charge. FAC, ¶¶ 6, 8. They refused Sony's offer. *Id*. Instead, despite having enjoyed the use of their televisions for several years without issue, they demanded a new television or a full refund of their purchase price. *Id*. Sony is not obligated to provide either under the expired Limited Warranty or the Limited Extended Warranty. RJN, Exhs. A, B. It bears repeating that Sony offered plaintiffs Marchante and Sefo a refurbished television at no charge – which is its option under the Limited Warranty and Limited Extended Warranty. But rather than accept the warranty service offered, plaintiffs Marchante and Sefo demanded that to which they are not entitled. Then they sued Sony when Sony did not relent to their unreasonable demands. Plaintiffs Marchante and Sefo's allegations establish that Sony complied with its warranty obligations, not breached them. Accordingly, their breach of express warranty claim should be dismissed.

Plaintiff Ochoa's breach of express warranty claim should likewise be dismissed. His vague, ambiguous, and conclusory allegations are inadequate. Although he claims that he gave Sony notice of the alleged defect and demanded repair, he does not allege when or how he did so or the number of attempts. FAC, ¶ 7. He conclusorily alleges that Sony refused to repair his television, but he does not allege that Sony would not replace it, which is its option under the terms of the Limited Warranty and Limited Extended Warranty and the warranty service it offered to plaintiffs Marchante and Sefo. *Id*. Also, his television remains under warranty until March 31, 2011, and Sony therefore has the right to replace his television. RJN, Exh. B.

**2. Plaintiffs' breach of implied warranty claim should also be dismissed for lack of privity and failure to seek warranty coverage during the one-year warranty period.**

First, under California law, a plaintiff bringing an implied breach of warranty claim must stand in vertical privity with the defendant—meaning the plaintiff must have bought the product directly from the defendant. *See Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741 WQH (NLS), 2007 WL 627977, at *10 (S.D. Cal. Feb. 22, 2007) (recognizing that "California has a vertical privity requirement" for "implied warranty claims"); *Anunziato*, 402 F. Supp. 2d at 1141

(dismissing breach of implied warranty claim for lack of vertical privity with manufacturer where the plaintiff purchased the computer at issue from a retailer). None of the plaintiffs allege that he or she bought his or her television directly from Sony. FAC, ¶¶ 6-8. In fact, two plaintiffs allege that they purchased their televisions from Circuit City. *Id*. Because they do not allege that they purchased their televisions directly from Sony, plaintiffs' breach of implied warranty claim fails.

Plaintiffs' failure to allege that they sought warranty coverage during the one-year Limited Warranty period also defeats their breach of implied warranty claims. In California, "[t]he duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c); *Tietsworth*, 2009 U.S. Dist. LEXIS 40872, at *7-8 (dismissing implied warranty claim and stating that "duration of the implied warranty of merchantability is coextensive with an express warranty, but in no case is shorter than sixty days or longer than one year following sale of the goods"). Here, the Limited Warranty for the Televisions is one year (Sony RJN, Exh. A), which is also the maximum duration for an implied warranty under California law. Plaintiffs do not allege that they sought warranty service within one year of their purchases. Their claim should be dismissed.

Sony anticipates that plaintiffs will rely on *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009) in opposition to Sony's motion to dismiss. Plaintiffs' implied warranty claim should be dismissed notwithstanding *Mexia*. First, the case is contrary to established California law on the duration of the implied warranty. California courts have repeatedly confirmed that the duration of the implied warranty is one year. *See, e.g.*, *Atkinson v. Elk Corp. of Tex.*, 142 Cal. App. 4th 212, 230 (2006) ("[T]he duration of the implied warranty of merchantability under California law is limited to one year.") Indeed, a separate appellate panel affirmed this established rule two weeks after *Mexia*. *See Hovsepian v. Apple, Inc.*, Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 WL 2591445 *8, n.6, n.7 (N.D. Cal. Aug. 21, 2009). Second, because it is contrary to established California law, district courts have questioned its validity. *See, e.g.*,

*Tietsworth*, 2009 WL 3320486, at *12 n.6 (noting that "*Mexia* appears to be something of an outlier"); *Butler v. Sears, Roebuck & Co.*, Nos. 06 C 7023, 07 C 412, 08 C 1832, 2009 WL 3713687, at *3 n.4 (noting that despite *Mexia's* holding, "[t]he majority position … is that the Song-Beverly Act's implied warranty of merchantability expires after one year"). Third, *Mexia* limited its analysis to alleged defects that render a product unmerchantable from the outset. *Mexia*, 174 Cal. App. 4th at 1304-05. But here, plaintiffs admit that their televisions worked without issue for several years. FAC, ¶¶ 6-8. Fourth, even if the implied warranty is breached by the existence of a latent defect at the time of the sale, the terms of Sony's Limited Warranty would still apply. *See Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *3 n.2 (N.D. Cal. Apr. 9, 2010).[5]

### 3. Plaintiffs' Song-Beverly Act claim should be dismissed.

Plaintiffs contend that Sony violated Section 1793.2(a)(3) and (b) of the Song-Beverly Consumer Warranty Act. FAC, ¶ 76. This claim fails because the statute requires plaintiffs to deliver the product to Sony for repair or to notify it of the defect *within the express warranty period.* Cal. Civ. Code, § 1793.02(c). Plaintiffs have not and cannot allege that they satisfied their duty to deliver the product to Sony for repair or to notify it of the alleged defect *within the express warranty period* as the alleged defect did not manifest and none of the plaintiffs contacted Sony until after the Limited Warranty expired. *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 807-08 (2006) (stating duty is squarely on the consumer to deliver the product for service and repairs and that case law confirms that the purpose for the presentation element is to provide a reasonable opportunity for repairs"); *Jiagbogu v. Mercedes-Benz USA*, 118 Cal. App. 4th 1235, 1244 (2004) (same). Also, they refused warranty service in the form of a

---

[5] Even if the implied warranty was breached by the existence of a latent defect at the time of the sale of the Televisions, plaintiffs Marchante and Sefo's claims are barred by the statute of limitations, which is four years after the cause of action has accrued. *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 132 (1995) (statute of limitations for breach of implied warranty claim is four years); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 211 (1991) (same). They purchased their Televisions in 2005 and 2004, respectively, but did not bring suit until April 15, 2010. FAC, ¶¶ 6, 8. Plaintiff Ochoa fails to allege when he purchased his television.

replacement television under the Limited Extended Warranty.  By the statute's plain terms, plaintiffs' Song-Beverly Act claim should be dismissed.

### 4.    The Magnuson-Moss Act claim should be dismissed.

First, plaintiffs' Magnuson-Moss Act claim necessarily fails because it is dependant on plaintiffs' state law warranty claim.  *Daugherty*, 144 Cal. App. 4th at 832-833 (dismissing Magnuson-Moss Act claim plaintiff failed to plead a claim for breach of express warranty under California law).  As established above, plaintiffs have not stated a breach of warranty claim.

Second, the Magnuson-Moss Act states: "No claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 574 n.5 (9th Cir. 2004) (stating that "[plaintiffs'] claims do not appear viable in light of the requirement of 100 named plaintiffs to maintain a federal class action based on the [Magnuson-Moss] Act"); *see also Abraham*, 795 F.2d at 243-47 (recognizing the Magnuson-Moss Act's 100 named-plaintiff requirement).  Here, plaintiffs have three named plaintiffs, far short of 100.  FAC, ¶¶ 6-8. Accordingly, plaintiffs' Magnuson-Moss Act claim should be dismissed.

### E.    The Claims Against SCA And Sony Corporation Should Be Dismissed Because Plaintiffs Lack Any Basis To Sue Them.

Plaintiffs' claims against SCA and Sony Corporation should also be dismissed because plaintiffs admit that SCA and Sony Corporation did not participate in the alleged conduct underlying the consumer fraud and false advertising claims and that SEL warranted the Televisions, not SCA or Sony Corporation.

Plaintiffs collectively refer to SEL, SCA, and Sony Corporation as "Sony" in the FAC, and assert each of their claims against all defendants.  But plaintiffs admit that SEL was the only defendant purportedly responsible for the alleged wrongful acts and practices on which they base their claims.  FAC, ¶ 2 ("[D]efendants made or caused the Televisions . . . to be offered for sale and sold to the public . . . from the principal offices of Sony Electronics, Inc., located in San Diego California."); *id*. at ¶ 38 ("Sony's … omissions of fact, failure to disclosure and wrongful warranty practices were largely disseminated from the principle offices of Sony Electronics, Inc.

in San Diego, California."). The Limited Warranty provides that "Sony Electronics Inc. warrants" the Televisions. Sony RJN, Exh. A. Nevertheless, plaintiffs attempt to hold SCA and Sony Corporation liable based on SEL's conduct through their parent-subsidiary relationships with SEL and a conclusory agency allegation. *See* FAC, ¶¶ 9-12.

But plaintiffs' barebones parent-subsidiary and agency allegations are insufficient to overcome the presumption of corporate separateness. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116-18 (C.D. Cal. 2003) (recognizing presumption and dismissing claims against parent company on Rule 12(b)(6) motion); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (holding conclusory allegations failed to state a claim based on veil-piercing or alter-ego liability); *see also, Doe v. Unocal Corp.*, 248 F.3d 915, 926-28 (9th Cir. 2001) (finding no alter ego or agency on Rule 12(b)(2) motion). Also, their tactic of lumping together three distinct Sony entities violates Rule 9(b). *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (per curiam) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations") (quotation marks and citation omitted); *Mat-Van, Inc.*, 2007 WL 3047093, at *4 (dismissing state law claims for failure to satisfy Rule 9(b)'s requirements where "the complaint lumps the two defendants together"). Plaintiffs lack any basis to justify dragging SCA and Sony Corporation into this lawsuit.

## V. CONCLUSION

Sony respectfully requests that the Court grant its motion to dismiss.

Dated: June 23, 2010

COOLEY LLP
MICHAEL A. ATTANASIO (151529)
MICHELLE C. DOOLIN (179445)
LEO P. NORTON (216282)

/s/ Michael A. Attanasio
Michael A. Attanasio (151529)

Attorneys for Defendants
SONY CORPORATION OF AMERICA, SONY
ELECTRONICS INC., and SONY CORPORATION
E-mail: mattanasio@cooley.com

**APPENDIX I**

**SUMMARY OF CLAIMS AND GROUNDS FOR DISMISSAL**

| Cause(s) of Action | Claim | Ground(s) For Dismissal |
|---|---|---|
| First, Second, and Third | Injunctive Relief | No standing to pursue injunctive relief |
| First, Second, and Third | UCL, FAL, and CLRA | No liability for failure to disclose alleged defect manifesting itself after expiration of the warranty |
| First, Second, and Third | UCL, FAL, and CLRA | Purported "misrepresentations" regarding the Televisions are non-actionable "puffery" and not related to alleged defect |
| Second | FAL | Failure to identify the advertisements at issue |
| Third | CLRA | Failure to file affidavits |
| First, Second, and Third | UCL, FAL, and CLRA | Failure to meet Rule 9(b)'s requirements |
| Fourth | Strict Liability | Plaintiffs do not allege any personal injury or harm to other property |
| Fifth | Song-Beverly Consumer Warranty Act | Plaintiffs do not allege that they delivered Televisions to Sony for repair during Limited Warranty period and they refused a replacement Television during the Limited Extended Warranty period |
| Sixth | Magnuson-Moss Act | (1) Plaintiffs fail to state breach of warranty claims under California law; (2) FAC does not have 100 named plaintiffs per statute |
| Seventh | Breach of Express Warranty | Plaintiffs do not allege that they sought warranty coverage during the Limited Warranty period and they refused a replacement Television during the Limited Extended Warranty period |
| Eighth | Breach of Implied Warranty | Plaintiffs (1) lack vertical privity with Sony; and (2) do not allege that they sought warranty coverage during the warranty period |
| All claims against SCA and Sony Corporation (First through Eighth) | All | (1) SEL marketed, sold, and warranted the Televisions, not these entities; (2) no specific allegations against these entities in violation of Rule 9(b) |