LANGE & KONCIUS, LLP
Joseph J.M. Lange (S/B 128115)
jlange@lange-koncius.com
Jeffrey A. Koncius (S/B 189803)
jkoncius@lange-koncius.com
222 North Sepulveda Boulevard, Suite 2000
El Segundo, CA  90245
Telephone:      (310) 414-1880
Facsimile:      (310) 414-1882

LAX LLP
Robert I. Lax
rlax@lax-law.com
380 Lexington Avenue, 31st Floor
New York, NY  10168
Telephone:      (212) 818-9150
Facsimile:      (212) 818-1266

MILBERG LLP
Sanford P. Dumain
sdumain@milberg.com
Leigh Smith
lsmith@milberg.com
Jennifer S. Czeisler
jczeisler@milberg.com
One Pennsylvania Plaza
New York, NY  10119
Telephone:      (212) 594-5300
Facsimile:      (212) 868-1229

***Additional Counsel on Signature Page***

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MARCHANTE, PHRANK OCHOA, DRAGAN SEFO, and MELISSA SOLIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SONY CORPORATION OF AMERICA, INC., SONY ELECTRONICS, INC., and SONY CORP.,<br><br>Defendants. | Case No. 10-cv-0795-JLS (RBB)<br><br>**CONSOLIDATED AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**JURY DEMAND**

Plaintiffs demand a trial by jury.

**PREFATORY STATEMENT**

Laura Marchante, Phrank Ochoa, Dragan Sefo, and Melissa Solis, by their attorneys, make the following allegations and claims for their complaint against Sony Corporation of America, Inc., Sony Electronics, Inc., and Sony Corporation (collectively referred to as "Sony" or "defendants"). The following allegations are made upon information and belief, except as to allegations specifically pertaining to plaintiffs, which are made upon knowledge.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and defendants; and over supplemental state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this District under 28 U.S.C. §1391(a)(1) and (2).  As set out below, defendants made or caused the Televisions, defined below, to be offered for sale and sold to the public, in this District in California, specifically, from the principal offices of Sony Electronics, Inc., located in San Diego, California.  As such, all defendants conduct substantial business in this District, including conduct directed at members of the Class, including the promotion, sale, and marketing of their products, sufficient to render all of them within the jurisdiction of this Court. The events and conduct giving rise to the violations of law in this action constitute interstate commerce, and a significant portion thereof occurred in this District.

**PRELIMINARY STATEMENT**

3.      This class action is brought by plaintiffs seeking damages and equitable relief on behalf of themselves and on behalf of all others similarly situated in the United States who have purchased Sony Grand WEGA LCD Rear Projection televisions bearing the model designation KF-42WE610, KF-50WE610, KF-60WE610, KDF-60XBR950, KDF-70XBR950, KF-42WE620, KF-50WE620, KDF-42WE655, and KDF-50WE655 (the "Televisions"), all of which were delivered by Sony with an identical characteristic and inherent safety defect (the "Safety Defect").  The Safety Defect, which was present at delivery and which develops over time through normal use by the consumer, renders the Televisions unsafe and unsuitable for their principal and intended purpose, in

10-cv-0795-JLS-(RBB)

that the Safety Defect causes the Televisions to overheat, causing melting and/or combustion of the internal components and chassis.  The Safety Defect is especially dangerous as it occurs without any outward signs of damage visible to the consumer.  In certain instances, the Safety Defect will also cause the discoloration of the programming shown on the Television screen due to the severe overheating and melting of internal componentry.  A consumer is not put on notice, however, that the reason for the discoloration or other disturbance is the overheating that is occurring inside the Television.

4.     The Safety Defect poses a fire hazard to consumers and Sony knew or should have known of that fact prior to the Televisions sale to the public.  Further, despite Sony's awareness today of the problems in the design of the Televisions which result in the Safety Defect, Sony has failed to actively alert consumers of the existence of the Safety Defect.  Instead, Sony has posted an obscure notice on its website advising consumers of an extended warranty through March 31, 2011 relating to "Warping of the Lamp Access Door" but has otherwise taken no steps to ensure that the Televisions that are in consumers' homes are safe or that the melting Televisions are recalled.  Significantly, the extended warranty was first issued in 2008 and, in anticipation of litigation being filed against it, Defendants lengthened the extended warranty which originally was set to expire at the end of March 2010.  Thus, Sony has compounded its improper sale of the defective Televisions by acting in contravention of applicable federal and state warranty laws and by refusing to honor its obligation to remedy the Safety Defect without cost to members of the Class, if in fact the Safety Defect can be remedied short of recall.

5.     In failing to inform consumers about the Safety Defect which poses a severe safety hazard to consumers and otherwise limits the useful life of the Televisions, as well as by its affirmative steps in attempting to keep the true nature of the Safety Defect's existence from the public, Sony has sold Televisions containing the Safety Defect to tens, if not hundreds, of thousands of unsuspecting consumers within the United States who have purchased the Televisions, and who spent as much as $3,5000.00 for each of them.  Although Sony has now discontinued its manufacturing, marketing, and sales of these defective devices, it has not issued a product recall, it has failed to honor its warranty obligations, and it has failed to take other appropriate remedial

1   action to ensure that consumers are not put further at risk as a result of the continuing hazard posed

2   by the Safety Defect.

3                                          **PARTIES**

4         6.        Plaintiff Laura Marchante resides in Murrieta, California.  Mrs. Marchante purchased

5   and used in her home a Sony Grand Wega television model KDF-42WE655 which was knowingly

6   designed, manufactured, marketed, distributed and sold with the Safety Defect by Defendants.  The

7   television was purchased in December 2005, from Circuit City, for approximately $2,600.  Mrs.

8   Marchante began experiencing a discoloration on the screen of her television in approximately

9   March 2010.  At that time, she called Sony Customer Service and it offered her the option of buying

10  a replacement television for $440 plus tax or to pay 50% of the repair of the Optical Block--a repair

11  that would not, in fact, remedy the Safety Defect.  At no time did Sony tell Mrs. Marchante that her

12  television was experiencing a known issue regarding the Safety Defect or that she should check to

13  see if her television was melting.  After speaking with Sony Customer Service and researching the

14  issue on the Internet, Mrs. Marchante saw that her television had a known issue with melting and

15  warping of the lamp access door.  After discovering this information on her own, Mrs. Marchante

16  was concerned and she did her own visual inspection and found her lamp access door to be

17  scorched.  She then called Sony Customer Service again on March 26, 2010, and was informed by

18  "Peggy," a customer service supervisor, that the issue is not a concern and that it was "normal."

19  Peggy also informed Mrs. Marchante that her television could be compared to an oven, and,

20  likewise, scorching would be normal.  Mrs. Marchante informed Peggy that her oven was not made

21  of plastic, like her Television, and she insisted on a visit from a Sony Authorized Technician.

22  Peggy stated that should the Sony Authorized Technician find that her Television did not exhibit the

23  melting/warping issue, Mrs. Marchante would be personally responsible for the fee involved in the

24  diagnosis.  Only after Mrs. Marchante posted on the Internet that she was being made to pay and

25  that Sony was comparing her television to an "oven" did she receive a return call from Peggy who

26  advised her that the Sony Authorized Technician would inspect her television for free.  On April 1,

27  2010, a Sony Authorized Technician inspected the television by disassembling and reassembling it.

28  The Sony Authorized Technician took numerous pictures and then left.  Approximately 30 minutes

after the Sony Authorized Technician left her home, Mrs. Marchante was contacted by a supervisor of the Sony Authorized Technician and was told that her Television was experiencing the melting issue and had burned and frayed wires inside of it.  She was also advised that the Optical Block in her television was failing.  She was then advised to immediately stop using the Television, which she did.  When Mrs. Marchante asked whether it was a safety issue, the Sony Authorized Technician said it was not but that the burning and frayed wires in her set could get worse with use and possibly make the Television irreparable.  Mrs. Marchante was advised by the Sony Authorized Technician that she would shortly be contacted by Sony about her unsafe and defective Television, however, not until six days later did she receive such a call and was offered a refurbished different model television by the Sony representative.  After researching the model television that was being offered to her, and seeing that it too had quality control issues, Mrs. Marchante declined the offer for the refurbished television and requested a new television or a full refund, which the Sony representative refused to offer.  Mrs. Marchante has since bought a replacement television manufactured by a company other than Defendants.  As a result of the Safety Defect, Mrs. Marchante has experienced a loss of the benefit of the bargain between herself and Sony.  At no time was Mrs. Marchante told by Sony that her Television was experiencing a known defect which is inherent to the Televisions and which was a safety hazard.

7.    Plaintiff Phrank Ochoa resides in San Jose, California.  Mr. Ochoa purchased and used in his home a Sony Grand Wega television model KDF-42WE655 which was knowingly designed, manufactured, marketed, distributed and sold with the Safety Defect by Defendants.  Mr. Ochoa bought his television in December 2006 from Circuit City and paid approximately $3,000.  After experiencing a discoloration on the screen of his television, Mr. Ochoa opened the lamp access compartment on his television, a user accessible part, and was scared to find that the interior components of his television had melted.  Attached hereto as Exhibit "1" and incorporated herein by reference are photographs taken by Mr. Ochoa of his Television that show the melted components due to the Safety Defect.  Before discovering that his television was melting, he had, on several occasions, noted a burning smell in his home but after attempting to determine where it was coming from he was unable to do so—only after seeing the inside of his Television set did he understand

that the burning smell he was experiencing in his home was coming from his Television.  As a result of the Safety Defect, Mr. Ochoa has experienced a loss of the benefit of the bargain between himself and Sony.  Although Mr. Ochoa demanded a warranty repair from Sony and gave notice of the Safety Defect to Sony, Sony refused to repair his Television and honor its warranty.  Instead, Sony told Mr. Ochoa that his Television was out of warranty and he would have to pay $900 for its repair, which would entail replacing the Optical Block—a repair that would not, in fact, remedy the Safety Defect.  At no time was Mr. Ochoa told by Sony that his Television was experiencing a known defect which is inherent to the Televisions and which was a safety hazard.

8.      Plaintiff Dragan Sefo resides in San Diego, California.  Mr. Sefo purchased and used in his home a Sony Grand Wega television model KF-42WE610 which was knowingly designed, manufactured, marketed, distributed and sold with the Safety Defect by Defendants for use in his home.  Mr. Sefo bought his Television in 2004 for $2,499.  On February 18, 2010, Mr. Sefo's Television shut off and the indicator light on the front of his Television indicated that the lamp had burned out and required changing.  After opening the front panel to replace the lamp, Mr. Sefo noticed that the television chassis had significant heat distortion, the lamp door was melted, and a few other parts surrounding the lamp had melted as well.  Attached hereto as Exhibit "2" and incorporated herein by reference are photographs taken by Mr. Sefo of his Television that show the melted components due to the Safety Defect.  Mr. Sefo then researched the issue on the Internet and found the notice posted by Sony about the extended warranty provided for televisions exhibiting this melting and warping issue.  Accordingly, on February 18, 2010, Mr. Sefo called Sony Customer Service which scheduled a Sony Authorized Technician to come to Mr. Sefo's home.  On February 26, 2010, the Sony Authorized Technician examined Mr. Sefo's Television and stated that at least one part required to repair his Television was no longer available and that the Television was not worth repairing.  As a result of the Safety Defect, Mr. Sefo has experienced a loss of the benefit of the bargain between himself and Sony.  Although Mr. Sefo demanded a warranty repair from Sony and gave notice of the Safety Defect to Sony, Sony refused to repair the Safety Defect and honor its warranty.  Instead, after again being advised that no parts were available to perform a repair, Sony first told Mr. Sefo that his Television was experiencing a problem with the Optical

Block.  When Mr. Sefo insisted that the Safety Defect was unrelated to the Optical Block issue and that, in fact, his Television was not experiencing discoloration of programming on the screen, the Sony representative offered him a new replacement television from Sony at a supposedly reduced price or a refurbished different model television which, upon researching, had its own quality issues.  At no time was Mr. Sefo told by Sony that his Television was experiencing a known defect which is inherent to the Televisions and which was a safety hazard.

9.    Plaintiff Melissa Solis resides in Orlando, Florida.  Ms. Solis purchased and used in her home a Sony Grand Wega television model KF-60WE610, which was knowingly designed, manufactured, marketed, distributed and sold with the Safety Defect by Defendants.  The television was purchased in 2004 at Circuit City for approximately $4,300.  Ms. Solis initially began experiencing a discoloration on the screen of her television and contacted Sony to complain of "blue spots."  Sony was unwilling to offer any options for selling, replacing, or repairing the television.  In 2010, she again contacted Sony Customer Service and advised Sony that the side of her TV was "melting."  On April 21, 2010, Sony sent a Sony Authorized Technician to her house and he noted a melted lamp door, that the inside of her television was charred and burned, wires were melted, and the television was filled with "soot."  The Sony Authorized Technician called Sony from Ms. Solis' living room to report on what he saw and while on speaker phone, the Sony representative told the Sony Authorized Technician to unplug the television, to tell the customer not to use it as it was a "fire hazard," and advised that Sony would contact Ms. Solis within 3 days.  Ms. Solis then contacted Sony Customer Service again after the technician left and the Sony representative advised and repeated to Ms. Solis that she should immediately unplug her television as it was "dangerous and a fire hazard."  During that same conversation, Ms. Solis was offered a 50% discount on a replacement television which she advised the Sony Customer Service representative was unacceptable.  In response, she was told that Sony would contact her with another offer.  Sony has called Ms. Solis several times with the same offer--for her to pay $1,400 for a 55 inch television, as a replacement for her 60 inch television.  As of the present day, Ms. Solis has not accepted and is not interested in any such offer and her television remains at her home.  As a result of the Safety Defect, Ms. Solis has experienced a loss of the benefit of the bargain between herself and Sony.  At

no time prior to April 2010 was Ms. Solis told by Sony that her TV was experiencing a known defect which is inherit to the Televisions and which is a safety hazard.

10.     Defendant Sony Corporation of America, Inc. is a New York corporation, with its principal offices located in New York, New York.  Sony Corporation of America, Inc. is the United States holding company for Sony Corporation's U.S. based electronics and entertainment businesses, through which it designs, manufactures, and/or distributes consumer electronics products to the public through its authorized agents, including the Televisions containing the Safety Defect forming the subject matter of this action, which it caused to be placed into the stream of commerce in this District and throughout the United States.

11.     Defendant Sony Electronics, Inc. is a Delaware corporation, with its principal offices in San Diego, California.  Sony Electronics imports, manufactures, and/or distributes consumer electronics products to the public through its authorized sales agents, and also sells Sony brand consumer products directly to the public through its retail website Sonystyle.com, including the Televisions containing the Safety Defect forming the subject matter of this action, which it caused to be placed into the stream of commerce in this District and throughout the United States.

12.     Defendant Sony Corporation is a Japanese corporation with its headquarters in Tokyo, Japan and executive offices in both Tokyo and New York, New York.  Sony Corporation designed, manufactured, and marketed the Televisions containing the Safety Defect, and purposefully caused them to be placed into the stream of commerce within this District and throughout the United States.

13.     Plaintiffs are informed and believe and thereon allege that at all relevant times, each of the defendants was the agent, servant, representative, successor, successor in interest and employee of the remaining co-defendants, and in doing the things hereinafter alleged, each was acting within the course and scope of said agency and employment and with the ratification and authorization of its respective principals.

**STATEMENT OF FACTS**

14.     High Definition Television ("HDTV") refers to a method of portraying television images in high resolution, with a high degree of picture detail and accuracy.  As such, HDTV

televisions command prices several times higher than those for common standard definition television sets.  Consumers purchasing HDTV televisions therefore pay a significant premium for the ability to enjoy the high quality picture such television sets offer.

15.     Sony marketed the Televisions as high-end consumer electronic devices purportedly offering superior picture quality to that provided by a standard television and capable of taking full advantage of HDTV programming and of reproducing video programs with a clear picture and accurate color reproduction.  What Sony failed to disclose, or should have known to disclose, to the general public, however, was the fact that Sony knew, or should have known, that the Televisions contained the Safety Defect.  This omission of material fact allowed Sony to command premium prices for these Televisions, as much as $3,500.00 or more, as well as to market the Televisions successfully as suitable for the most discerning videophiles seeking accurate color reproduction at the highest resolutions and fidelity possible.

16.     Unfortunately, unbeknownst to the thousands of consumers who have bought the Televisions, the Safety Defect causes them to melt from the inside due to the high temperatures generated inside the television cabinet and represents a fire hazard.  Based upon the implied warranties that the Televisions were merchantable and safe, and the skill and judgment of plaintiffs and the members of the Class, plaintiffs and the Class members unknowingly purchased the Televisions containing the Safety Defect for personal use and have suffered damages as a result.

17.     Plaintiffs and the members of the Class had no knowledge of the cause of the Safety Defect and did not suspect, nor did they have reason to suspect, that the Safety Defect was caused by Sony's wrongdoing.  Plaintiffs and the members of the Class could not have known or reasonably discovered, nor did they have reason to know of, the Safety Defect created by Sony.  Further, they could not have known or reasonably discovered that the Televisions they purchased were defective or that the cause of the harm suffered by plaintiffs and the members of the Class was directly attributable to the wrongdoing by Sony alleged herein.

18.     Plaintiffs' and the Class members' lack of knowledge regarding the cause of their damages were due in large part to Sony's concealment of material facts regarding the Safety Defect.  Sony's acts of concealment included the intentional concealment, failure and refusal to disclose

facts known to Sony about the Safety Defect in the Televisions, facts which plaintiffs and the members of the Class could not reasonably have learned of, known, or otherwise discovered either at the time or purchase or since that time.  In fact, plaintiffs and the members of the Class did not know, nor could they have had reason to know, that Sony's overall malfeasance in designing, manufacturing, distributing, marketing and selling its Televisions was a cause of their damage.

19.   Compounding its wrongdoing, Sony has not honored its warranty obligations under either its own written warranty or applicable warranty laws.  To date, despite persistent consumer demands, Sony has been unable or unwilling to develop or offer to consumers any permanent fix for the Safety Defect.  Instead, for consumers who experience the Safety Defect while under warranty, Sony has offered only to replace the melted parts, if it has such parts on hand, but not to fix the underlying problem causing the parts to melt in the first place.  In some instances, Sony has not even offered to replace the melted parts but instead has offered consumers the opportunity to purchase different model replacement televisions instead of honoring its warranty obligations.  Even when the melted parts are replaced, this only serves as a temporary "Band-Aid" solution, as the underlying Safety Defect remains.  However, many consumers, like the plaintiffs herein, are advised by Sony personnel that they need an Optical Block repair, which in fact will not cure the Safety Defect, but will result in approximately $1,000 being paid to Sony's Authorized Service Centers and only serve to mask any outward manifestation of the problems that are occurring internally in the Televisions.

20.   Sony has known about the Safety Defect contained in the Televisions since almost immediately after their introduction to the market and likely even earlier.  Despite this fact, Sony has continued to specifically misrepresent to consumers that the Televisions are safe and pose no fire hazard – without any reasonable basis for these assertions – and has omitted to disclose to consumers the existence of the Safety Defect in connection with the marketing and sale of the Televisions or thereafter.  Instead, although Sony altered the design of subsequent models of its televisions so that they pose less risk of melting and/or combustion, they have done nothing to correct the Safety Defect in the Televisions forming the subject matter of this lawsuit.  Sony knew that its Televisions would not be effectively tested for the Safety Defect after they left Sony's

1   control, and it knew that its express representations about the Televisions would be relied on by end

2   users and Sony's distributors and retailers.  No consumers would have purchased the Televisions

3   had they known of these material facts, and pose a constant fire hazard once purchased and brought

4   into a consumers' home.

5           21.     Sony, as the designers, manufacturers, marketers, distributors and sellers, warranted,

6   either expressly or by implication, that the Televisions being sold to the general public were safe to

7   use in the home, not inherently dangerous and defective, and that they were reasonably suited for

8   their intended purpose.  Sony breached its agreement and warranty by doing so and Sony made

9   and/or allowed these misrepresentations to be made with the intent of making plaintiffs and the

10  members of the Class enter into agreements to purchase the Televisions.  If plaintiffs and the

11  members of the Class had known the true facts, they would not have purchased the Televisions or

12  paid as much as they did for the Televisions.

13          22.     In addition, Sony's express warranty did not include a conspicuous statement about

14  the Safety Defect and the internal damage caused thereby.  As such, Sony's limits on its express

15  warranty are unenforceable as it knowingly sold a dangerous and defective product without

16  conspicuously informing consumers about the Safety Defect, thereby making its express warranty

17  unconscionable.  As a result, plaintiffs and the members of the Class did not receive the goods

18  expressly warranted by Sony, namely, fully functioning televisions free from defect.

19          23.     Sony provided written limited warranties to plaintiffs and other members of the

20  Class, which it breached and failed to honor, because, despite the fact that the Safety Defect was

21  present in the Televisions at the time of delivery, well within the warranty limitations period, Sony

22  has refused to repair the Safety Defect without charge so as to remedy fully the Safety Defect and

23  its cause.  The time limitations contained in those limited warranties were also unconscionable and

24  grossly inadequate to protect plaintiffs and the other members of the Class.  Among other things,

25  plaintiffs and the members of the Class had no meaningful choice in determining those time

26  limitations; the terms of the limited warranties unreasonably favored Sony over consumers; a gross

27  disparity in bargaining power existed between Sony and plaintiffs and the members of the Class;

28  and Sony knew the Televisions were dangerous, defective and unsafe at the time of sale and would

10-cv-0795-JLS-(RBB)

fail well before their expected useful lives had ended, thereby rendering the time limitations — to the extent they are relevant — insufficient, inadequate, unconscionable and unenforceable.

24.     Despite its knowledge of the Safety Defect, Sony at all relevant times misrepresented to consumers that the Televisions were safe and able to provide excellent video quality and omitted to disclose to consumers the existence of the Safety Defect or cure the Safety Defect at the design and/or manufacturing stage.  Again, none of these consumers would have purchased the Televisions had they known of this material fact.

25.     Although the Safety Defect has been recognized internally at Sony, as of the date of this Complaint, Sony has refused to recall the Televisions and continues to deny to consumers the existence and extent of the Safety Defect.  Indeed, instead of recalling all of the tens of thousands of defective Televisions it has sold to an unsuspecting public, Sony has engaged in a "secret recall" offering differing deals to consumers who threaten to file suit or take other legal action against Sony, or those who have publicized their experiences on the Internet.  Further, while many consumers have given up in frustration over the discoloration that has occurred as a result of the Safety Defect — without knowing that the discoloration is simply a manifestation of the underlying issue that causes the Safety Defect — and have simply purchased replacement televisions, many others do not have the financial resources to fund such a purchase or the required repairs and remain stuck with their defective Televisions which unknowingly remain unsafe to operate and are sometimes covered in the color and other visual anomalies mentioned herein.

26.     The Televisions were sold to distributors and consumers with the knowledge and intent that the Televisions be used for the benefit of consumers.  Sony and its distributors sold the defective Televisions to plaintiffs and the members of the Class in the course of their business.  In addition, Sony is one of the largest Internet retailers of televisions direct to consumers in the United States through its website Sonystyle.com, wherein it states that Sonystyle.com is "published and maintained by subsidiaries, affiliates, and/ or related entities of Sony Electronics Inc.," and further that Sonystyle.com was among the ten largest Internet retailers in the United States in 2005, with well over $1 billion in annual sales directly to consumers, and estimated web sales of $1.6 billion in 2004. http://www.internetretailer.com/article.asp?id=15099.  As a result, a large percentage of the

Televisions at issue herein were sold by Sony directly to members of the Class thereby placing Sony in direct privity with a significant segment of the Class.

27.     The Televisions were not altered by plaintiffs, the members of the Class, Sony's distributors or other personnel.  The Televisions were defective when they left the exclusive control of Sony and Sony knew the Televisions would be used without additional tests for defects.  The Televisions were unsafe, dangerous, defective and unfit for their intended purpose, and plaintiffs and the members of the Class did not receive the goods as warranted.

28.     By engaging in the above-described conduct, Sony committed, and continues to commit, acts and omissions with a wanton and willful disregard of persons, including plaintiffs and members of the Class, who foreseeably might by harmed by those acts and omissions.

29.     As a direct result of Sony's actions set forth herein, plaintiffs and the consumers who comprise the class purchased the Televisions and have suffered injuries in fact, have been damaged and have suffered a loss of money or property for having paid thousands of dollars for an unsafe product that does not, cannot, and will not, work as represented and that is now worth substantially less than what a safe, non-defective Television would be worth.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action on behalf of themselves and all other members of a class consisting of all purchasers of the Televisions in the United States (the "Class").  Excluded from the Class are defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including, without limitation, persons who are directors of Sony.

31.     The Class is composed of no fewer than tens of thousands of persons nationwide and is sufficiently numerous for class treatment.  The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

32.     Plaintiffs' claims are typical of the claims of the Class and plaintiffs have no interests adverse to the interests of other members of the Class.

33.     This dispute raises questions of law and fact that are common to all Class members.  Those common questions predominate over questions that arise on an individual basis for Class

10-cv-0795-JLS-(RBB)

members.  The common questions of law and fact include, without limitation:

> (a)     Whether the Safety Defect pose a fire hazard which renders the Televisions unsafe for their intended purpose;

> (b)     Whether Sony failed to disclose the true quality, unsafe and defective nature of the Televisions;

> (c)     Whether Sony's conduct, including the failure to disclose the Safety Defect to consumers, was likely to deceive consumers into believing that the Televisions were safe and would operate properly;

> (d)     Whether Sony violated California Business & Professions Code §17200, et seq., §17500, et seq., and California Civil Code §1750, et seq., and §1792, et seq.;

> (e)     Whether Sony undertook a course of conduct which secreted the existence of the Safety Defect from the members of the Class;

> (f)     Whether the Safety Defect constitutes a manufacturing or design defect;

> (g)     Whether the Safety Defect constitutes a breach of Sony's warranties;

> (h)     Whether the members of the Class have been injured by Sony's conduct;

> (i)     Whether the members of the Class have sustained damages and are entitled to restitution as a result of Sony's wrongdoing and, if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution; and

> (j)     Whether the members of the Class are entitled to injunctive relief.

34.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in the prosecution of class action litigation.

35.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.  Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

36.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment also will

permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  If a Class or general public action is not permitted, Class members will continue to suffer losses and Sony's misconduct will continue without proper remedy.

37.     Sony has acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Unlawful and Unfair Business Acts and Practices in Violation**
**of Cal. Bus. & Prof. Code §17200, et seq.**
**(Against All Defendants)**

38.     Each of the above allegations is incorporated herein.

39.     Sony's aforementioned omissions of fact, failure to disclose and wrongful warranty practices were largely disseminated and directed from the principal offices of Sony Electronics, Inc. in San Diego, California.  Therefore, based upon the choice of law rules applied in this District, plaintiffs preliminarily identify the substantive laws of California as the most likely to apply to the errors and omissions complained of herein.

40.     The acts, practices, failures and omissions of fact by Sony described above, and Sony's incomplete and misleading marketing in connection therewith, constitute unlawful and unfair business acts and practices and untrue and misleading advertising within the meaning of California Business & Professions Code §17200, et seq.

41.     Sony engaged in "unfair" business acts or practices by selling Televisions containing a characteristic and inherent safety defect which negatively and materially impacted upon their merchantability and fitness for the specific purpose of watching video programming.

42.     Sony engaged in "unfair" business acts or practices by the promotional efforts undertaken and disseminated.  Sony knew that its Televisions contained the Safety Defect, and it determined to benefit economically by distributing these defective products to consumers—but yet it omitted to disclose its knowledge of the Safety Defect to consumers.  Sony's misconduct offends public policy and is immoral, unscrupulous, unethical and offensive, and causes substantial injury to

consumers.

43.     Sony engaged in "unfair" business acts or practices by conducting a "secret" product recall and warranty extension in connection with the Televisions which was not reasonably designed to inform as many consumers as possible, but rather was designed to inform as few consumers as possible.

44.     Sony's unlawful and unfair business acts and practices present a continuing threat to plaintiffs, Class members and the general public in that Sony has refused to publicly acknowledge the Safety Defect, correct its wrongdoing, recall the dangerous Televisions and provide compensation for the damages it has caused to consumers.

45.     Pursuant to California Business & Professions Code §17203, plaintiffs, on behalf of themselves, the other Class members, and the general public, seek an order of this Court enjoining Sony from withholding information regarding the Safety Defect its Televisions possess.  Plaintiffs, on the same basis, seek restitution of any monies wrongfully acquired or retained by Sony and disgorgement of Sony's ill-gotten gains obtained by means of its unfair practices.

**SECOND CAUSE OF ACTION**
**Untrue and Misleading Advertising in Violation**
**of Cal. Bus. & Prof. Code §17500, et seq.**
**(Against All Defendants)**

46.     Each of the above allegations is incorporated herein.

47.     California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations for the purpose of inducing, or which are likely to induce, directly or indirectly, customers to purchase consumer electronics products such as the Televisions here at issue.

48.     Sony's acts, practices, misrepresentations and omissions alleged herein were intended to, and did, induce the consuming public to purchase the Televisions, and violated and continue to violate Business & Professions Code §17500, in that Sony caused advertisements for its Televisions to be placed before the general public, but Sony's product did not conform to the advertisements.

49.     As a result of the foregoing, plaintiffs, other Class members, and the general public

are entitled to injunctive and equitable relief, restitution, and an order requiring disgorgement of Sony's ill gotten gains, as described above.

**THIRD CAUSE OF ACTION**
**Unlawful Practice in Sale of Consumer Goods in Violation of**
**CA Consumers Legal Remedies Act, Cal. Civ. Code §1750, et. seq.**
**(Against All Defendants)**

50.     Each of the above allegations is incorporated herein.

51.     The Televisions as described above were bought by plaintiffs, and other consumers similarly situated, primarily for personal, family or household purposes.

52.     Prior to plaintiffs' purchases of the above-mentioned Television, defendants violated California Civil Code §1770 in the following respects:

(a)     In violation of California Civil Code §1770(a)(5), Sony failed to disclose that the Televisions contained a safety defect which causes them to melt, smoke and combust, and which therefore poses a safety hazard;

(b)     In violation of California Civil Code §1770(a)(5), Sony failed to disclose that the Televisions were incapable of being used safely as the Safety Defect renders the Televisions unsafe and unusable;

(c)     In violation of California Civil Code §1770(a)(5), Sony failed to disclose in marketing materials and product manuals that the Televisions were unsafe and unusable;

(d)     In violation of California Civil Code §1770(a)(7), Sony failed to disclose that the Televisions were not of a particular standard, namely, that they were unsafe and that the Safety Defect resulted in the televisions posing a fire hazard;

(e)     In violation of California Civil Code §1770(a)(9), Sony advertised the Televisions as being safe and providing high quality video playback with the intent not to sell the Televisions as advertised; and

(f)     In violation of California Civil Code §1770(a)(5), Sony failed to disclose that the Televisions were unsafe due to the Safety Defect which sometimes rendered them incapable of high quality, color accurate, video display.

10-cv-0795-JLS-(RBB)

53. All of the foregoing stemmed from Sony's concealment from plaintiffs and the Class of the true characteristics, uses and qualities of the Televisions. As such, plaintiffs are informed and believe and thereon allege that the above-mentioned failures and omissions resulted in the sale of the Televisions to plaintiffs and to other consumers similarly situated—and without such concealment and misrepresentation, plaintiffs and the Class would not have purchased them or paid as much as they did.

54. On April 20, 2010, plaintiffs' counsel sent a letter to defendants by certified mail, return receipt requested, that contained notice of defendants' violation of the California Consumers Legal Remedies Act and a demand for remedy by defendants. A true and correct copy of the letter is attached to this Complaint as Exhibit "3" and true and correct copies of the return receipts are attached to this Complaint as Exhibit "4," the contents of which are incorporated herein by reference. The letter notified defendants of their above-mentioned violations of the California Civil Code that resulted in the sale of the defective Televisions to plaintiffs, and to all others similarly situated, and demanded that defendants remedy the violations.

55. More than 30 days have passed since defendants received the letter and to date they have failed to fully remedy their violations of the California Consumers Legal Remedies Act.

56. By reason of the above-mentioned violations of the California Civil Code, plaintiffs and others similarly situated, have suffered damages determined by plaintiffs to be the thousands of dollars paid for Televisions that do not work as expected based on Sony's failures to disclose their true condition, namely, that the Televisions possess the Safety Defect and are now worth substantially less than what consumers paid and what a non-defective Television would be worth.

57. The aforementioned violations of the California Civil Code by defendants were willful and oppressive. Plaintiffs are therefore entitled to an award of punitive damages.

58. Pursuant to California Civil Code section 1780, plaintiffs, on behalf of themselves, the other Class members, and the general public, seek an order of this Court enjoining the defendants from continuing the methods, acts and practices set out above regarding their misrepresentations regarding the Televisions.

10-cv-0795-JLS-(RBB)

**FOURTH CAUSE OF ACTION**
**Strict Liability**
**(Against All Defendants)**

59.     Each of the above allegations is incorporated herein.

60.     At all times relevant to this action, defendants sold the Televisions to plaintiffs and the members of the Class and defendants were in the business of selling such products to consumers.  As such defendants were suppliers of the Televisions, placing them into the stream of commerce, and the Televisions were expected to and did reach plaintiffs and members of the Class without substantial change in the condition in which they were manufactured and sold.

61.     The Televisions were unsafe for their normal and reasonably anticipated use— namely, for watching television programming--and unreasonably dangerous due to the Safety Defect.  The danger inherent in the use of the Televisions due to the Safety Defect was unreasonable as it was beyond that which would be contemplated by the ordinary consumer possessing the knowledge common to the community of such consumers, to wit, as a common household product, plaintiffs and the members of the Class would not appreciate the danger involved in the use of the Televisions.

62.     The Televisions were defective in design because, when they left the hands of the defendants, they were unreasonably dangerous and more dangerous than an ordinary consumer would expect.  The Televisions were also defective and unreasonably dangerous in that the foreseeable risk of injuries from the Televisions exceeded the benefits associated with their use.

63.     The characteristics of the Televisions that render them unreasonably dangerous existed at the time the products left the control of the defendants.

64.     The Televisions manufactured and supplied by defendants were also defective due to inadequate warnings, and/or inadequate trials, testing and study, and inadequate reporting regarding the results of the trials, testing and study.  Defendants failed to perform adequate testing before exposing plaintiffs and members of the Class to the Televisions, testing that would have shown the Televisions had the potential to cause the aforementioned risk of injuries to plaintiffs, members of the Class and their property when the Televisions were used as anticipated and intended by defendants.

10-cv-0795-JLS-(RBB)

65.   The Televisions manufactured and supplied by defendants were defective due to inadequate post-marketing warnings or instructions because, after defendants knew or should have known of the risk of injuries from the Televisions, they failed to provide adequate warnings to the consumers, to whom they were directly marketing and advertising the Televisions; and, further, they continued to affirmatively promote the Televisions as safe and fit for their anticipated and intended use.

66.   The defective Televisions were manufactured, distributed, tested, sold, marketed, advertised and promoted by defendants, which were the direct and proximate cause of plaintiffs' and members of the Class's purchase and use of the Televisions instead of other, safer models.  As a result, plaintiffs faced the aforementioned risk of injuries to plaintiffs, members of the Class and their property when the Televisions were used as anticipated and intended by defendants.

67.   Information given by defendants to consumers concerning the safety and fitness of the Televisions, especially the information contained in the advertising and promotional materials, did not accurately reflect the known risks of the Televisions.

68.   Had adequate warnings and instructions been provided, plaintiffs and members of the Class would not have purchased and used the Televisions as they did, and would not have faced the aforementioned risk of injuries to plaintiffs, members of the Class and their property when the Televisions were used as anticipated and intended by defendants.

69.   Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by the Televisions.

70.   Plaintiffs and members of the Class could not, through the exercise of reasonable care, have discovered the Televisions' Safety Defect or perceived the dangers posed by them. Further, defendants placed the Televisions on the market knowing that plaintiffs and the members of the Class would use the Televisions without inspection for defects.

71.   As a direct and proximate consequence of defendants' acts, omissions, and misrepresentations described herein, plaintiffs suffered damage.

72.   Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including

10-cv-0795-JLS-(RBB)

plaintiffs and members of the Class, thereby entitling the Class to punitive and exemplary damages so as to punish defendants and deter them from similar conduct in the future.

**FIFTH CAUSE OF ACTION**
**Violation of the Song Beverly Consumer Warranty Act**
**(Cal. Civ. Code §1792 et seq.)**
**(Against All Defendants)**

73.    Each of the above allegations is incorporated herein.

74.    Under the Song Beverly Consumer Warranty Act, defendants impliedly warranted to plaintiffs that the Televisions were "merchantable" and fit for the purpose for which they were being purchased.  Cal. Civ. Code §§ 1791.1, 1792 and 1792.1.

75.    The implied warranty was breached, however, when as set forth above, the Televisions were sold with a dangerous defect which rendered the Televisions unsafe and that was undiscoverable by the plaintiffs and the members of the Class at the time of sale.  As such, the Televisions were rendered unmerchantable by the existence of the Safety Defect itself and not when it was subsequently discovered by plaintiffs and the members of the Class; had the Safety Defect been known the Televisions would have been unusable and unsalable as high-end televisions.

76.    In addition, under the Song Beverly Consumer Warranty Act, defendants are required to make available replacement parts to effect repairs during the warranty period, and repair defects within 30 days. Cal. Civ. Code §1793.2(a)(3) and (b).

77.    Defendants violated the Song Beverly Consumer Warranty Act by failing to provide the effective repair or replacement of the defective Televisions within 30 days.

78.    As provided by the Song Beverly Consumer Warranty Act, plaintiffs, on their own behalves and on behalf of the Class, seek reimbursement of the cost of the defective Televisions as well as an award of attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Violation of Magnuson-Moss Act (15 U.S.C. §2301 et seq.)**
**(Against All Defendants)**

79.    Each of the above allegations is incorporated herein.

80.    Plaintiffs and the Class are consumers as defined in 15 U.S.C. §2301(3).

81.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §2301(4)(5).

82.     The Televisions are consumer products as defined in 15 U.S.C. §2301(6).

83.     By reason of Sony's breach of its implied warranties and express written warranties stating that the Televisions would operate safely, properly, were free from material defects, and that it would repair or replace any such defects, defendants have violated the statutory rights due the plaintiffs and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., thereby damaging plaintiffs and the Class.

**SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(Against All Defendants)**

84.     Each of the above allegations is incorporated herein.

85.     Sony as the designers, manufacturers, distributors and sellers expressly warranted that the Televisions being sold to the general public were not inherently defective.

86.     Sony's affirmations of fact and/or promises relating to the Televisions created express warranties that the products purchased by plaintiffs and the Class would operate safely, properly and without defects.  Sony breached the express warranty in that the Televisions did not conform to the promises or affirmations of fact made by Sony to the plaintiffs and members of the Class.

87.     Alternatively, Sony's descriptions of the Televisions became part of the bases of the bargains between consumers and Sony, creating express warranties that the product purchased by plaintiffs and the Class would conform to Sony's representations.

88.     Further, Sony breached its express warranty by omitting information concerning the true condition of the Televisions with the intent of making plaintiffs and the members of the Class enter into agreements to purchase the Televisions.  Sony's express warranty did not include a conspicuous statement about the Safety Defect.

89.     If plaintiffs and the members of the Class had known the true facts, they would not have purchased the Televisions or paid as much as they did for the Televisions.

90.     Despite the fact that the Safety Defect was present in the Television at the time of

- 22 -

Case 3:10-cv-00795-JLS -RBB   Document 27   Filed 10/14/10   Page 23 of 43

delivery, well within the warranty limitations periods, Sony has refused to repair the Televisions free of charge so that they function in a safe manner.

91.     Sony's limits on its express warranty are unenforceable as Sony knew or should have known that the defective design of the televisions would render the time limitations in its written warranty grossly inadequate to protect consumers from the Safety Defect, and would subject consumers to expensive repair costs which would still not render the Televisions safe.  Sony failed to include in its warranty any disclosure regarding the existence of the known Safety Defect, or the gross inadequacy of the limitations period contained in its written warranty.

92.     The time limits contained in Sony's extended written limited warranties were unconscionable and grossly inadequate to protect the plaintiffs and the members of the Class. Among other things, plaintiffs and the members of the Class had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored Sony over members of the Class; a gross disparity in bargaining power existed as between Sony and Class members; and Sony knew or should have known that the Televisions were defective at the time of sale and would not safely operate, thereby rendering the time limitations insufficient, inadequate, and unconscionable

93.     As a result of the foregoing, plaintiffs and the Class have suffered damages.

**EIGHTH CAUSE OF ACTION**
**Breach of Implied Warranty**
**(Against All Defendants)**

94.     Each of the above allegations is incorporated herein.

95.     Sony's affirmations of fact and/or promises relating to the Televisions created implied warranties that the products purchased by plaintiffs and the Class would operate safely, properly and without defects.

96.     Alternatively, Sony's descriptions of the Televisions became part of the bases of the bargains between consumers and Sony, creating implied warranties that the product purchased by plaintiffs and the Class would conform to Sony's representations.

97.     In fact, the products purchased by plaintiffs and the Class did not so conform.

10-cv-0795-JLS-(RBB)

98.     Sony also breached the warranty of merchantability implied in that the goods could not pass without objection in the trade, the goods were not of fair average quality within the description and/or were unfit for their intended and ordinary purpose in that they were defective. Sony cannot disclaim this implied warranty as they knowingly sold a defective product.

99.     Sony also breached the implied warranty of fitness for a particular purpose.  Based upon plaintiffs' and the Class's skill and judgment and implied warranties of fitness for a particular purpose, plaintiffs and Class members unknowingly purchased defective Televisions for personal use that they though would operate in a safe manner.

100.    The Televisions were defective when they left the exclusive control of Sony.  Sony knew that the Televisions would be used without additional tests for defects.  The Televisions were defective and unfit for their intended purpose in that they were inherently dangerous due to the Safety Defect and plaintiffs and the members of the Class did not receive the goods as warranted.

101.    As a result of the foregoing, plaintiffs and the Class have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying plaintiffs as Class representatives;

B.      Awarding damages to plaintiffs and the other Class members for Sony's breach of contract;

C.      Awarding restitution and disgorgement as a result of Sony's unfair business practices and untrue and misleading advertising;

D.      Awarding plaintiffs and the Class compensatory and punitive damages as a result of defendants' violation of the California Consumers Legal Remedies Act and enjoining the defendants from continuing their illegal practices set out above;

E.      Requiring Sony to inform the public of the Safety Defect possessed by its Televisions and enjoining Sony from refusing to perform its warranty obligations;

F.      Awarding pre and post judgment interest;

G.      Awarding attorney fees, expenses, and costs; and

10-cv-0795-JLS-(RBB)

H.     Providing such other and further relief as this Court may deem just and proper.

DATED:   October 14, 2010                    Respectfully Submitted,

LANGE & KONCIUS, LLP


By:  /s/ Jeffrey A. Koncius
Joseph J.M. Lange (S/B 128115)
Jeffrey A. Koncius (S/B 189803)
222 North Sepulveda Boulevard, Suite 2000
El Segundo, CA  90245
Telephone: (310) 414-1880
Facsimile:  (310) 414-1882

LAX LLP
Robert I. Lax
380 Lexington Avenue, 31st Floor
New York, NY  10168
Telephone: (212) 818-9150
Facsimile:  (212) 818-1266

MILBERG LLP
Sanford P. Dumain
Leigh Smith
Jennifer S. Czeisler
One Pennsylvania Plaza
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

BARON & HERSKOWITZ
Jon Herskowitz
9100 S. Dadeland Boulevard, Suite 1704
Miami, FL 38156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393
***Attorneys for Plaintiffs***

10-cv-0795-JLS-(RBB)

**EXHIBIT "1"**

RBB  Document 27    File

Caution ...

⚠

Attention! Consultez le mode d'emploi avant de procéder
au remplacement.

Ce cache est fermé sous le système de verrouillage
de rôtise la risque de rayonnement infrarouge aussi.
Ne cherchez pas à détourner ...







**EXHIBIT "2"**



CAUTION
HOT SURFACE
ATTENTION
SURFACE
BRÛLANTE
PRECAUCION
SUPERFICIE
CALIENTE
주의
표면 고온





**EXHIBIT "3"**

LANGE & KONCIUS, LLP

ATTORNEYS AT LAW

222 N. SEPULVEDA BOULEVARD, SUITE 2000

EL SEGUNDO, CALIFORNIA 90245

TELEPHONE (310) 414-1880

TELEFAX (310) 414-1882

JOSEPH J. M. LANGE
jlange@lange-koncius.com

JEFFREY A. KONCIUS*
jkoncius@lange-koncius.com

*ALSO ADMITTED IN NEW YORK AND NEW JERSEY

**April 20, 2010**

## VIA CERTIFIED U.S. MAIL RETURN RECEIPT REQUESTED

**Sony Corporation**
**c/o Howard Stringer, Chief Executive Officer**
550 Madison Avenue
New York, New York 10022

**Sony Corporation of America, Inc.**
**c/o Nicole Seligman, Esq., Executive Vice President and General Counsel**
550 Madison Avenue
New York, New York 10022

**Sony Electronics, Inc.**
**Ronald Wasinger, Esq., Vice President, Law**
16450 W. Bernardo Drive
San Diego, California 92127

> **Re:**   ***Marchante v. Sony Corporation of America, Inc., et al.***
> ***Case no. 3:10-cv-00795-JLS-RBB***

Dear Sir or Madame:

Please be advised that this firm as well as Lax LLP and Milberg LLP, represent Plaintiffs Laura Marchante, Phrank Ochoa and Dragan Sefo on behalf of themselves and all others similarly situated in an action against Sony Corporation, Sony Corporation of America, Inc., and Sony Electronics, Inc. (collectively referred to hereinafter as "Sony"). The action has been filed in the United States District Court, Southern District of California. This notice is being sent to you pursuant to California Civil Code section 1782(a)(2).

Our clients have filed a class action lawsuit on behalf of all consumers nationwide who purchased Sony televisions bearing the model designation KF-42WE610, KF-50WE610, KF-60WE610, KDF-60XBR950, KDF-70XBR950, KF-42WE620, KF-50WE620, KDF-42WE655, and KDF-50WE655 (hereinafter the "Televisions"). Plaintiffs are alleging through this action that the Televisions they purchased contain an inherent safety defect, to wit, that the Televisions contain a flaw which renders the Televisions unsafe and unsuitable for their principal and intended purpose, in that the defect causes the Televisions to overheat, causing melting and/or combustion of the internal components and chassis (the "Safety Defect"). The Safety Defect is especially dangerous as it occurs without any outward signs of damage visible to the consumer.

**April 20, 2010**
**Page 2 of 4**

In certain instances, the Safety Defect will also cause discoloration of the programming shown on the Television screen due to the severe overheating and melting of internal componentry, however, a consumer is not put on notice that the reason for the discoloration or other disturbance is the overheating that is occurring inside the Television. It is further alleged that the Safety Defect poses a fire hazard to consumers and Sony knew or should have known of that fact prior to the Televisions sale to the public. Additionally, despite Sony's awareness today of the problems in the design of the Televisions which results in the Safety Defect, Sony has failed to actively alert consumers to the existence of the Safety Defect.

Although Sony has now discontinued its manufacturing, marketing, and sales of the Television, despite the above-mentioned Safety Defect, Sony has not issued a product recall, failed to honor its warranty obligations, and failed to take other appropriate remedial action to ensure that consumers are not put further at risk as a result of the continuing hazard posed by the Safety Defect.

As a result, the above practices constitute violations of California Civil Code section 1770 in the following respects:

1.    In violation of California Civil Code §1770(a)(5), Sony failed to disclose that the Televisions contained a safety defect which causes them to melt, smoke, and combust and which therefore poses a safety hazard;

2.    In violation of California Civil Code §1770(a)(5), Sony failed to disclose that the Televisions were incapable of being used safely as the Safety Defect renders those Televisions unsafe and unusable;

3.    In violation of California Civil Code §1770(a)(5), Sony failed to disclose in marketing materials and product manuals that the Televisions were unsafe and unusable;

4.    In violation of California Civil Code §1770(a)(7), Sony failed to disclose that the Televisions were not of a particular standard, namely, that they were unsafe and that the Safety Defect also sometimes resulted in the televisions posing a fire hazard;

5.    In violation of California Civil Code §1770(a)(9), Sony advertised the Televisions as being safe and providing high quality video playback with the intent not to sell the Televisions as advertised; and

6.    In violation of California Civil Code §1770(a)(5), Sony failed to disclose that the Televisions were unsafe due to the Safety Defect which sometimes rendered them incapable of high quality, color accurate, video display.

**April 20, 2010**
**Page 3 of 4**

In light of the foregoing, and pursuant to California Civil Code section 1782(a)(2), it is hereby demanded on behalf of our clients and all others similarly situated nationwide that Sony immediately correct, repair, replace, or otherwise rectify the violations of Section 1770, through the following actions: that Sony immediately conduct a product recall of the Televisions and inform the appropriate governmental entities of the existence of the Safety Defect; cease and desist in making representations regarding the safety of the Televisions that are not in fact true, that Sony engage in an advertising campaign which will alert the public to its misconceptions about the Televisions at issue and the existence and extent of the Safety Defect, that Sony offer to refund the purchase price paid for the defective Televisions, and that Sony develop a resolution and offer to correct the Safety Defect in its Televisions with reimbursement to the consumer for the diminished value, interest, costs and fees, as is detailed at length in the operative Complaint, assuming that the Safety Defect can in fact be remedied short of recall.

Should the above actions not be taken by Sony, and after 30 days from the date of this letter, Plaintiffs will amend their Complaint to include claims for actual damages, punitive damages and all other damages permitted under the California Consumers Legal Remedies Act unless appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time pursuant to California Civil Code section 1782(b). Therefore, in order to avoid further litigation and the potential harm to consumers due to the Safety Defect, it is in the best interest of all involved that Sony rectify the situation immediately.

Note that in order for Sony to avoid an action for damages, it must do all of the following pursuant to California Civil Code section 1782(c):

1.  Identify, or make a reasonable effort to identify, all present and former consumer purchasers of the Televisions in question;

2.  Notify all such consumers that, upon their request, Sony will refund their purchase price and/or make the correct repairs or replace the Televisions in question or that it will provide any other remedy for its improper actions which include, but are not limited to, the cost of and repairing any associated damage, plus any diminution in value associated with the Safety Defect, plus interests, costs and fees;

3.  Perform the correction, repair, replacement, or other remedy as set forth above in a reasonable amount of time; and

4.  Cease to engage in the methods, acts or practices outlined at length above.

To the extent required by and allowed by law, this letter also requests that all necessary repairs and associated damages be made and paid to members of the class for Sony's breach of its express and implied warranties as a result of the Safety Defect outlined above.

**April 20, 2010**
**Page 4 of 4**

Finally, a more detailed explanation of the problems with the Televisions are set forth in the class action Complaint that has been filed in the United States District Court, Southern District of California, bearing the above-noted case number. Should you not already have a copy of that Complaint, kindly contact my office so that it may be provided to you forthwith.

Thank you for your consideration of this matter. We look forward to hearing from you.

Very truly yours,

Jeffrey A. Koncius

:JAK

Cert no. 7009 0960 0000 4472 4118 (Sony Corporation)
Cert no. 7009 0960 0000 4472 4125 (Sony Corporation of America, Inc.)
Cert no. 7009 0960 0000 4472 4132 (Sony Electronics, Inc.)

**EXHIBIT "4"**

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sony Corporation
c/o Mr. Howard Stringer, CEO
550 Madison Avenue
New York, New York 10022

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Vasile* ☐ Agent ☐ Addressee

B. Received by (Printed Name) *Vasile*  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☑ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)    7009 0960 0000 4472 4118

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sony Corporation of America, Inc.
c/o Nicole Seligman, Esq.
550 Madison Avenue
New York, New York 10022

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Vasile* ☐ Agent ☐ Addressee

B. Received by (Printed Name) *Vasile*  C. Date of Delivery

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☑ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)    7009 0960 0000 4472 4125

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sony Electronics, Inc.
Ronald Wasinger, Esq., VP Law
16450 W. Bernardo Drive
San Diego, California 92127

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☑ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)    7009 0960 0000 4472 4132

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**PROOF OF SERVICE**

I, Joseph J. M. Lange, declare as follows:

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is 222 North Sepulveda Boulevard, Suite 2000, El Segundo, California 90245.

On October 14, 2010, I served the foregoing documents entitled **FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

Michael A. Attanasio (mattanasio@cooley.com)
Michelle C. Doolin (mdoolin@cooley.com)
Leo P. Norton (lnorton@cooley.com)
Cooley Godward Kronish LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Attorneys for Defendants Sony Corporation of America, Sony Electronics Inc., and Sony Corporation

☒ BY ELECTRONIC CASE FILING:  On the date set forth above, I filed electronically the document(s) listed above, using the United States District Court, Southern District of California's electronic case filing service.  I am registered to file electronically with this Court and receive copies of the document(s) via e-mail from the Court to confirm filing.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct

Executed on October 14, 2010, at Manhattan Beach, California.

/s/ Joseph J. M. Lange
Joseph J. M. Lange