1   LANGE & KONCIUS, LLP
    Joseph J.M. Lange (S/B 128115)
2   jlange@lange-koncius.com
    Jeffrey A. Koncius (S/B 189803)
3   jkoncius@lange-koncius.com
    222 North Sepulveda Boulevard, Suite 2000
4   El Segundo, CA  90245
    Telephone:     (310) 414-1880
5   Facsimile:     (310) 414-1882

6   LAX LLP
    Robert I. Lax
7   rlax@lax-law.com
    380 Lexington Avenue, 31st Floor
8   New York, NY  10168
    Telephone:     (212) 818-9150
9   Facsimile:     (212) 818-1266

10  MILBERG LLP
    Sanford P. Dumain (admitted *pro hac vice*)
11  sdumain@milberg.com
    Leigh Smith (admitted *pro hac vice*)
12  lsmith@milberg.com
    Jennifer S. Czeisler (admitted *pro hac vice*)
13  jczeisler@milberg.com
    One Pennsylvania Plaza
14  New York, NY  10119
    Telephone:     (212) 594-5300
15  Facsimile:     (212) 868-1229

16  ***Additional Counsel on Signature Page***

17  *Attorneys for Plaintiffs*

18                  UNITED STATES DISTRICT COURT

19              SOUTHERN DISTRICT OF CALIFORNIA

20  LAURA MARCHANTE, PHRANK OCHOA,      Lead Case No. 10 CV 00795 JLS (RBB)
    DRAGAN SEFO, and MELISSA SOLIS, on
21  behalf of themselves and all others similarly   [Consolidated with Case No. 10 CV 01023]
    situated,
22                                       **PLAINTIFFS' MEMORANDUM OF
                      Plaintiffs,        LAW IN OPPOSITION TO
23                                       DEFENDANTS' MOTION TO DISMISS
          v.                             CONSOLIDATED AMENDED
24                                       COMPLAINT PURSUANT TO
    SONY CORPORATION OF AMERICA, INC.,   FEDERAL RULES OF CIVIL
25  SONY ELECTRONICS, INC., and SONY     PROCEDURE 12(b)(1), 12(b)(6), AND 9(b)**
    CORP.,
26                                       Date:       January 28, 2011
                      Defendants.        Time:       3:00 p.m.
27                                       Judge:      Hon. Janis L. Sammartino
                                         Courtroom:  6
28

                                                                        10-cv-0795

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  COUNTERSTATEMENT OF FACTS ....................................................................1

    1.  The Televisions and the Safety Defect ....................................................2

    2.  Sony's Knowledge of the Safety Defect ..................................................3

    3.  Sony's Unwillingness and Inability to Correct the Safety Defect .................3

    4.  Sony's "Secret Recall".............................................................................3

    5.  Sony's Extended Warranty and the Plaintiffs' Experiences ..........................4

III.  ARGUMENT .........................................................................................................5

  A.  Plaintiffs Have Standing to Seek Injunctive Relief under Rule 12(b)(1) ..................5

  B.  Rule 12(b)(6) Imposes a Substantial Burden on the Moving Party .........................6

  C.  Defendants Have Violated the UCL, FAL, and CLRA ............................................6

    1.  Rule 8 Applies to Plaintiffs' Consumer Protection Claims ..........................6

    2.  Defendants Can Be Held Liable under the UCL, FAL, and CLRA for Failure to Disclose a Safety Defect that Manifests after the Expiration of the Warranty Period ................................................................12

      a.  Sony Has Failed To Disclose Material Facts ....................................13

    3.  Defendants' Misleading Statements Were More than Mere Puffery ...........16

  D.  The "Economic Loss" Doctrine Does Not Bar Plaintiffs' Strict Liability Claim .................................................................................................................17

  E.  Plaintiffs Allege Viable Warranty Claims ...........................................................18

    1.  Claims Relating to Sony's Breaches of Its Limited Warranty, Extended Warranty, and Implied Warranty Are Timely ..............................18

    2.  Sony's Reliance on the Time Limitations of its Written Warranty is Misplaced, as its Knowledge of the Safety Defect Rendered These Limitations Unconscionable ....................................................................21

    3.  Privity Is Not a Bar to Plaintiffs' Warranty Claim ...................................23

    4.  Sony Violated the Song-Beverly Act (Cal. Civil Code § 1792, *et seq.*)..........................................................................................................24

5.      This Court Has Jurisdiction Over Plaintiffs' Magnuson-Moss
Claim by Virtue of the Expansion of Federal Diversity Jurisdiction
by the Class Action Fairness Act of 2005.....................................................24

F.      Sony Corporation of America, Inc. and Sony Corp. Are Proper Defendants...........25

IV.   CONCLUSION..........................................................................................................26

10-cv-0795

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A & M Produce Co. v. FMC Corp.*,
135 Cal. App. 3d 473 (1982) ............................................................23

*Anthony v. Gen. Motors Corp.*,
33 Cal. App. 3d 699 (1973) ............................................................19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ............................................................6

*Bank of the West v. Superior Court*,
2 Cal. 4th 1254 (1992) ............................................................8

*Berry v. Indianapolis Life Ins. Co.*,
No. 08-248, 2009 U.S. Dist. LEXIS 19171 (N.D. Tex. Mar. 11, 2009)................................10

*Bristow v. Lycoming Engines*,
No. 06-1947, 2007 U.S. Dist. LEXIS 31350 (E.D. Cal. Apr. 9, 2007) ................................14

*Carlson v. Gen. Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) ............................................................22, 23

*Chamberlan v. Ford Motor Co.*,
369 F. Supp. 2d 1138 (N.D. Cal. 2005) ............................................................20

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) ............................................................10, 12

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ............................................................12, 13, 15

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ............................................................9

*Gusse v. Damon Corp.*,
470 F. Supp. 2d 1110 (C.D. Cal. 2007) ............................................................24

*Hewlett v. Squaw Valley Ski Corp.*,
54 Cal. App. 4th 499 (1997) ............................................................9

*Hewlett-Packard Co. v. Superior Court*,
167 Cal. App. 4th 87 (2008) ............................................................19, 21

*Hicks v. Kaufman and Broad Home Corp.*,
89 Cal. App. 4th 908 (2001) ............................................................19

10-cv-0795

*Hogya v. Superior Court*,
   75 Cal. App. 3d 122 (1977) .................................................................................................8

*In re NVIDIA GPU Litig.*,
   No. 08-04312, 2009 U.S. Dist. LEXIS 108500 (N.D. Cal. Nov. 19, 2009) ............9, 15, 18, 25

*In re Toyota Motor Corp. Unintended Acceleration Mktg. and Products Liability Litig.*,
   No. 8:10-02151, 2010 U.S. Dist. LEXIS 131330
   (C.D. Cal. Nov. 30, 2010) (*Toyota I*)....................................................................13, 15, 24

*In re Toyota Motor Corp. Unintended Acceleration Mktg. and Products Liability Litig.*,
   No. 8:10-02151, 2010 WL 5058562 (C.D. Cal. Dec. 9, 2010) (*Toyota II*) ..........................13

*Janda v. T-Mobile, USA, Inc.*,
   No. 05-03729, 2008 U.S. Dist. LEXIS 93399 (N.D. Cal. Nov. 7, 2008) .................................6

*Jimenez v. JP Morgan Chase & Co.*,
   No. 08-0152, 2008 U.S. Dist. LEXIS 37788 (S.D. Cal. May 8, 2008)....................................6

*Kaiser Steel Corp. v. Westinghouse Elec. Corp.*,
   55 Cal.App.3d 737 (1976) ...................................................................................................17

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (Cal. 2002)................................................................................................12

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174 (2010) ..............................................................................................8

*Meinhold v. Sprint Spectrum, L.P.*,
   No. 07-00456, 2007 U.S. Dist. LEXIS 35806 (E.D. Cal. May 16, 2007) ...............................6

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) .........................................................................18, 19, 20, 24

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) .................................................................................................10

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) .............................................................................7, 8

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................12

*Paduano v. Am. Honda Motor Co.*,
   169 Cal. App. 4th 1453 (2009) ............................................................................................7

*Payne v. Fujifilm U.S.A., Inc.*,
   No. 07-385, 2007 U.S. Dist. LEXIS 94765 (D.N.J. Dec. 28, 2007)................................22, 25

*Podolsky v. First Healthcare Corp.*,
   50 Cal. App. 4th 632 (1996) .................................................................................9

*Rubio v. Capital One Bank*,
   2010 U.S. App. LEXIS 14968 (9th Cir. Jul. 21, 2010)..........................................10

*Scandinavian Airline Sys. v. United Aircraft Corp.*,
   601 F.2d 425 (9th Cir. 1979) ................................................................................17

*Shadoan v. World Sav. & Loan Ass'n.*,
   219 Cal. App. 3d 97 (1990) ...................................................................................23

*State Farm Fire & Cas. v. Superior Court*,
   45 Cal. App. 4th 1093 (1996) ...........................................................................9, 10

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ....................................................................6

*Threshold Enters. Ltd. v. Functional Brands, LLC*,
   No. 07-1400, 2007 U.S. Dist. LEXIS 45885 (N.D. Cal. June 18, 2007)...............10

*Wang v. Massey Chevrolet*,
   97 Cal. App. 4th 856 (2002) ...................................................................................8

*Ward v. IPEX, Inc.*,
   No. 08-6370, 2009 U.S. Dist. LEXIS 11040 (C.D. Cal. Feb. 4, 2009) .................14

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 989 (9th Cir. 2009) ..................................................................................6

**STATUTES**

15 U.S.C. § 2308(a), (c).............................................................................................24

Cal. Bus. & Prof. Code §§ 17200, 17500 ..............................................................8, 9

Cal. Civ. Code § 1670.5(b) ........................................................................................22

Cal. Civ. Code § 1760 .................................................................................................8

Cal. Civ. Code § 1770 .................................................................................................7

Cal. Civ. Code § 1792, 1792.1 ..................................................................................24

**RULES**

Fed. R. Civ. P. 8 ....................................................................................................7, 10

Fed. R. Civ. P. 9(b)'s ........................................................................................ passim

Fed. R. Civ. P. 12(b)(6)........................................................................................6, 22

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Motion" or "MTD") the Consolidated Amended Complaint ("CAC").

## I.   INTRODUCTION

Defendants[1] make a number of specious arguments in support of their Motion.  Defendants all but ignore the alleged harm—the marketing and sale of certain Sony Grand WEGA rear projection televisions (the "Televisions"[2]) containing an inherent safety defect that causes the melting and/or combustion of internal components (the "Safety Defect"), thereby causing a safety hazard, with an insufficient and unconscionable express warranty, compounded by Sony's unjustified representations to consumers that the Televisions pose no hazard.  Defendants deny the existence of the Safety Defect and argue they are not liable to damaged consumers because the Safety Defect manifests itself after the end of the one year express warranty period.  In doing so, Sony fails to recognize that its own "Limited Extended Warranty" is still in effect and that it eviscerates Sony's argument.  Sony fails to address Plaintiffs' allegations that each and every one of the Televisions contained the Safety Defect at the time of delivery—well within the one year warranty period.  Sony also ignores Plaintiffs' allegations that Sony sold these Televisions while knowing they contained the Safety Defect and would require expensive repairs after the first year of use, rendering the one year express warranty unconscionable.  Finally, Sony ignores that it has breached the terms of its Extended Warranty by refusing to perform repairs as warranted.  The Motion, like the Televisions at issue, is flawed and must be denied.

## II.   COUNTERSTATEMENT OF FACTS

Plaintiffs allege that each and every one of the Televisions designed, manufactured, and marketed by Defendants and sold in the United States, possesses an inherent, identical and characteristic Safety Defect, rendering these very expensive televisions potentially dangerous and useless.  (CAC ¶¶ 3, 27.)  Plaintiffs allege Sony has been unwilling to acknowledge or repair this problem under warranty and is in any case unable to fix it permanently.  (CAC ¶¶ 19-20, 23.)  The

---

[1] Sony Corporation of America, Inc., Sony Electronics, Inc., and Sony Corp. are collectively referred to herein as "Defendants" or "Sony."

[2] The Televisions bear model designations KF-42WE610, KF-50WE610, KF-60WE610, KDF-60XBR950, KDF-70XBR950, KF-42WE620, KF-50WE620, KDF-42WE655, and KDF-50WE655.

CAC asserts claims, on behalf of a nationwide class of consumers, for breach of warranty and the federal Magnuson-Moss Consumer Warranty Act, as well as violations of California Business and Professions Code §§17200 *et seq.* and 17500 *et seq.*, California Civil Code §1750 *et seq.*, and California's strict liability law.   (CAC ¶¶ 38-101.)   Plaintiffs seek damages, restitution, disgorgement, interest, injunctive and other equitable relief, plus attorneys' fees and costs.

### 1.   The Televisions and the Safety Defect

The Televisions at issue are "High Definition Televisions" ("HDTV"), which are supposed to portray television images in high resolution with a high degree of picture detail and accuracy. (CAC ¶ 14.)   Sony marketed the Televisions as high-end consumer electronics devices offering superior picture quality and capable of taking full advantage of HDTV signals and reproducing video programs with a clear picture and accurate color.   As such, Sony was able to command prices several times higher for the Televisions than for standard television sets, marketing them with a suggested average retail price of $3,500.00 or more.   (CAC ¶ 15.)   Sony is one of the largest Internet retailers of televisions in the United States through its website sonystyle.com, and a large portion of the Televisions at issue were sold directly to members of the Class by Sony.   (CAC ¶ 26.) The CAC alleges that, although the Televisions initially perform as expected, consumers begin to experience significant problems as the inherent Safety Defect manifests itself through the warping and melting of the Televisions, sometimes resulting in the projection of color anomalies on the screen due to the burning and melting of internal optical componentry.   (CAC ¶ 3.)   The Safety Defect renders the Televisions unsafe for their intended purpose (CAC ¶¶ 3, 27), and it is alleged that all four class representatives have personally experienced the Safety Defect (CAC ¶¶ 6-9).

It is also alleged that, despite its full knowledge of the problem since almost immediately after the introduction of the Televisions, and likely even earlier, Sony did nothing to acknowledge the Safety Defect publicly, much less to disclose its existence to customers who purchased the Televisions.   (CAC ¶ 20.)   Instead, Sony posted an obscure notice on its website, available to consumers who happen upon it, relating to the Safety Defect to "assure" consumers about Sony's position on the Safety Defect complained of herein.   Unfortunately, and as set forth at length in the CAC and summarized below, even consumers who discover the existence of the Extended Warranty

still cannot convince Sony to comply with it.  Sony continues to publicly deny the existence and danger posed by the Safety Defect, despite acknowledging the Safety Defect to certain customers. (CAC ¶ 25.)  The CAC therefore alleges that Sony's marketing, sale, and after market service of the Televisions, while failing to disclose the material fact of the inherent condition causing the Safety Defect, served to violate—and continues to violate—the consumer fraud statutes and other laws of California, and Sony's delivery of the Televisions containing the Safety Defect served to breach its express and implied warranties and violate the federal Magnuson-Moss Consumer Warranty Act.

### 2.    Sony's Knowledge of the Safety Defect

The CAC alleges Sony was completely aware that the Televisions possessed a Safety Defect that is substantially certain to manifest well within the expected useful lives of the Televisions.  The CAC bases such allegations on the statements of Plaintiffs who have personally experienced the Safety Defect.  (CAC ¶¶ 6-9.)  The CAC alleges that, if consumers had known the true facts, they would not have purchased the Televisions or paid as much for them as they did.  (CAC ¶¶ 20-21.)

### 3.    Sony's Unwillingness and Inability to Correct the Safety Defect

The CAC alleges Sony's improper acts extended beyond its marketing and sale of the Televisions, as Sony's response to the Safety Defect utterly fails to comply with the undertakings in its warranties, state warranty law and the Magnuson-Moss Act.  The CAC alleges that, despite knowing of the problem, Sony has resisted a product recall by continuing to represent falsely that the Televisions are not defective, pose no potential danger, and any problems are isolated.  (CAC ¶¶ 6, 20, 24-25.)  As a result, although Sony knows the Televisions have contained the Safety Defect since their manufacture and delivery, it has not provided permanent repairs.  (CAC ¶ 19.)

### 4.    Sony's "Secret Recall"

Plaintiffs allege Sony was under a duty to recall the faulty Televisions once it became aware of the inherent condition causing the Safety Defect.  Sony, however, refused to expend the resources necessary to do so.  Instead, it engaged in what is referred to as a "Secret Recall"—an illegal warranty practice wherein the recall remedy (e.g., refund, replacement, etc.) is provided only to consumers who threaten to file or join pending litigation or complain to state consumer authorities.  (CAC ¶ 25.)  The practice of Secret Recalls, which provides satisfaction only to those

who scream the loudest, violates California's Song-Bervely Consumer Warranty Act.

### 5.   Sony's Extended Warranty and the Plaintiffs' Experiences

Sony's Extended Warranty states that "through March 31, 2011, Sony will repair the lamp access door and any other components damaged as a result at no charge for any of the covered televisions." (Ex. B to Sony's Request for Judicial Notice)  Unfortunately, as alleged in the CAC the Plaintiffs' experiences demonstrate that Sony has failed to honor its Extended Warranty.

Laura Marchante paid approximately $2,600 for her Television. (CAC ¶ 6.)  Ms. Marchante independently researched her Television on the Internet and discovered the model had a known issue with melting and warping of the lamp access door.  Rightfully concerned, she examined her Television and found the lamp access door to be "scorched."  After being told by a Sony representative that such scorching was "normal" and her television could be compared to an oven, Ms. Marchante insisted that a Sony technician examine her Television.  The technician came to her home and told her that her Television was experiencing the melting issue and had burned and frayed wires inside it.  She was told to stop using the television *immediately*.  Days later, she received a phone call from Sony and, rather than agreeing to "repair the lamp access door and any other components damaged as a result at no charge" pursuant to its own Extended Warranty, Sony offered her a different model refurbished television.  Ms. Marchante declined the offer when she discovered that that model itself was having quality issues.

Ms. Marchante's experience was, unfortunately, not unique.  Mr. Ochoa only discovered the damage to his $3,000 Television after examining the lamp access door where he was "scared to find that the interior components of his television had melted."[3]  (CAC ¶ 7.)  Before the discovery, Mr. Ochoa had noticed a burning smell in his home but had been unable to place the source of it.  After the discovery, he understood it to be emanating from his Television.  Mr. Ochoa contacted Sony but, rather than agreeing to "repair the lamp access door and any other components damaged as a result at no charge" pursuant to its own Extended Warranty, Sony told him he would have to pay $900 to replace the optical block—a repair that would not in fact remedy the Safety Defect.

Mr. Sefo too discovered the effects of the Safety Defect on his own as alleged in the CAC.

---

[3] Photographs of the melting inside of Mr. Ochoa' Television are attached to the CAC as Ex. "1."

(CAC ¶ 8.)  After attempting to change the lamp in his $2,499 television, he noticed that the chassis had significant heat distortion, the lamp door was melted and a few parts surrounding the lamp had melted as well.[4]  Mr. Sefo, like others who stumbled upon this issue, discovered the Extended Warranty on the Internet.  After the damage to his Television was confirmed by a Sony technician, Sony at first attempted to characterize the problem as one with the optical block—similar to the experience of Mr. Ochoa—and therefore not covered by the Extended Warranty.  Only after Mr. Sefo insisted the problem was as described in Sony's Extended Warranty did Sony do something— but not in accordance with the terms of its Extended Warranty.  As with Ms. Marchante and Mr. Ochoa, Sony did not agree to "repair the lamp access door and any other components damaged as a result at no charge" but instead offered Mr. Sefo a different television (albeit at a reduced price) or the replacement of his Television with a refurbished model which had its own quality issues.

Finally, Ms. Solis fared no better.  (CAC ¶ 9.)  The side of her $4,300 Television appeared to be "melting" and, after contacting Sony, a technician came to her home.  The Sony technician "noted a melted lamp door, that the inside of her television was charred and burned, wires were melted, and the television was filled with 'soot.'"  The technician called Sony and, while on speakerphone, the telephone representative told the technician to unplug the television and to tell Ms. Solis not to use the Television as it was a "fire hazard."  Rightfully concerned, after the technician left her home, Ms. Solis called Sony and was again told that she should unplug her Television as it was "'dangerous and a fire hazard.'"  Despite this advice, Sony did not agree to "repair the lamp access door and any other components damaged as a result at no charge" pursuant to its own Extended Warranty but instead sought to sell Ms. Solis a replacement television.

## III.   ARGUMENT

### A.   Plaintiffs Have Standing to Seek Injunctive Relief under Rule 12(b)(1)

Sony incorrectly argues Plaintiffs lack standing to seek injunctive relief.  Sony's unlawful conduct continues to harm Plaintiffs and members of the class because the Televisions contain an inherent Safety Defect that could manifest at any time.  (CAC ¶ 15.)  The CAC alleges each Plaintiff contacted Sony upon learning about the Safety Defect, but Sony refused to repair the

---

[4] Photographs of Mr. Sefo's Television are attached to the CAC as Ex. "2."

defective Televisions or replace them free of charge (CAC ¶¶ 6-9) and "[a]t no time was [any Plaintiff] told by Sony that [his or her] Television was experiencing a known defect which is inherent to the Televisions and which was a safety hazard." (CAC ¶¶ 6-9.)   Moreover, Sony continues to refuse to acknowledge the Safety Defect.  (CAC ¶ 44.)

Plaintiffs seek an order enjoining "Sony from withholding information regarding the Safety Defect its Televisions possess."   (CAC ¶ 45.)   Plaintiffs agree they must demonstrate they are "realistically threatened by a *repetition* of [the violation]."  *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)) (emphasis and alteration in original).  Plaintiffs have pleaded such circumstances here: members of the Class who have yet to discover the Safety Defect are undeniably harmed by Sony's refusal to acknowledge that the Televisions are dangerous.  Sony's argument must therefore be rejected.[5]

**B.      Rule 12(b)(6) Imposes a Substantial Burden on the Moving Party**

On a motion to dismiss, the Court is to "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs."  *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) (internal quotation and citation omitted).  Granting a motion to dismiss without leave to amend, "is improper unless it is clear that the complaint could not be saved by any amendment."  *Id.*  As this Court has observed, "[d]ismissal of a claim according to this rule is proper only in 'extraordinary' cases."  *Jimenez v. JP Morgan Chase & Co.*, No. 08-0152, 2008 U.S. Dist. LEXIS 37788, at *4-5 (S.D. Cal. May 8, 2008) (citing *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)).  Sony has not made out such an "extraordinary" case for dismissal of Plaintiffs' claims under these stringent standards, and its Motion should be denied.

**C.      Defendants Have Violated the UCL, FAL, and CLRA**

**1.      Rule 8 Applies to Plaintiffs' Consumer Protection Claims**

Plaintiffs have asserted three causes of action pursuant to California's consumer protection

---

[5] The cases Defendants cite are inapposite.  The plaintiff in *Meinhold v. Sprint Spectrum, L.P.*, No. 07-00456, 2007 U.S. Dist. LEXIS 35806 (E.D. Cal. May 16, 2007), was no longer being assessed the disputed roaming charges.  Likewise, in *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007), and *Janda v. T-Mobile, USA, Inc.*, No. 05-03729, 2008 U.S. Dist. LEXIS 93399, at *11 (N.D. Cal. Nov. 7, 2008), the harm was in the past, unlike in this case where Plaintiffs and members of the Class continue to face the possibility of harm arising from the Safety Defect while Sony continues to deny that the Safety Defect poses a risk of harm.

statutes, none of which require Plaintiffs to plead with particularity because none are fraud statutes. To impose a heightened pleading standard would undermine the goals of the statutes and contravene established precedent.  As settled California law makes clear, as a liberal interpretation must be given California's consumer protection statutes to effectuate their broad protection purposes, Fed. R. Civ. P. 8 applies to the claims in the CAC.  Even if Rule 9(b) did apply, because Plaintiffs allege they were harmed by Sony's failure to disclose the Safety Defect, the allegations would not be subject to the same pleading requirements as allegations of misrepresentations.

California law is clear that claims brought pursuant to the CLRA do not have the same elements as common law fraud claims and, as a result, are not held to Fed. R. Civ. P. 9(b)'s heightened pleading standard.  *See, e.g., Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006) ("Rule 9(b) is not strictly applicable to the current action as the CLRA is not a fraud statute.").  The CLRA was enacted to provide a remedy for unfair and deceptive business practices in addition to other legal remedies, including lawsuits alleging common law fraud. *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1468 (2009) ("The underlying purpose of the CLRA is 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'") (quoting Cal. Civ. Code, § 1760).

The pleading of a CLRA claim must simply put a defendant on notice of the claims. *Nordberg*, 445 F. Supp. 2d at 1097.  The *Nordberg* court explicitly stated that "Rule 9(b) [was] not applicable to heighten the pleading standard" after noting that "plaintiffs allege misrepresentations pursuant to different subsections of CLRA's section 1770 and thus are not required to plead fraud with particularity but must merely demonstrate that the misrepresentations resulted in harm." *Id.*; *see also Falk v. GMC*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) (denying defendant's motion to dismiss plaintiffs consumer protection claims without applying Rule 9(b)).  The plain terms of the CLRA require that "for a misrepresentation to be actionable under section 1770 it need only 'result' in damage to the consumer." *Nordberg*, 445 F. Supp. 2d at 1097; Cal. Civ. Code § 1770 (defining as unlawful a list of "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer").  The Legislature made clear that it enacted the CLRA to

1  enhance consumer protection, and requiring consumer protection claims to surmount a heightened

2  pleading standard would run contrary to the CLRA's purpose.  *See* Cal. Civ. Code § 1760 (the

3  CLRA "shall be liberally construed and applied to promote its underlying purposes . . . .").  If

4  required to satisfy the pleading requirements of Rule 9(b), plaintiffs would be required to prove

5  more than the CLRA itself demands, which "would undercut the intent of the legislature in creating

6  a remedy separate and apart from common-law fraud."  *Nordberg*, 445 F. Supp. 2d at 1097.

7      The CLRA's remedies supplement those available under other statutory and case law, and

8  actions brought pursuant to the CLRA are to be governed exclusively by its own provisions.  *Hogya*

9  *v. Super. Ct.*, 75 Cal. App. 3d 122, 135 (1977) ("Section 1752 provides: 'that its provisions are not

10  exclusive, that the remedies provided therein shall be in addition to any other procedures or

11  remedies provided for in any other law, and that nothing in the act shall limit any other statutory or

12  any common law rights to bring class actions.'") (citing *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 818

13  (1971)); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002) ("The [CLRA] is

14  supplemental to remedies available under other statutory and case law; moreover, actions brought

15  under the act are governed exclusively by its own provisions.") (citation omitted); *see also*

16  *McAdams v. Monier, Inc*., 182 Cal. App. 4th 174, 180-81 (2010).  Accordingly, Plaintiffs should not

17  be required to plead common law fraud elements (such as knowledge of falsity, intent to induce

18  reliance, or actual and reasonable reliance) to withstand dismissal of their CLRA claim.[6]

19      The California Supreme Court has confirmed that, like the CLRA, the fraudulent business

20  prong of the UCL provides a tool for consumer protection that is distinct from and supplemental to

21  traditional claims of common law fraud: "The fraudulent business practice prong of the UCL has

22  been understood to be distinct from common law fraud."  *In re Tobacco II Cases*,  46 Cal. 4th 298,

23  312 (2009); *see also Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1266-67 (1992) ("[T]he

24  Legislature deliberately traded the attributes of tort law for speed and administrative simplicity.  As

25  a result, to state a claim under the act one need not plead and prove the elements of a tort.").

26      UCL § 17200 provides that "unfair competition shall mean and include any unlawful, unfair

27

28  ───────────────
[6] The cases cited by Sony are not controlling, as they were not decided by California courts.
Moreover, they require more than the CLRA itself and therefore should not apply.

- 8 -

or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent. 'In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'" *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996). "California courts have consistently interpreted the language of section 17200 broadly." *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499, 519 (1997).

The fraud prohibition of the UCL "encompass[es] not only those advertisements which have deceived or misled *because* they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998) (emphasis in original). Moreover, *concealment is actionable* under the UCL as "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." *Id.* at 332-33. "Likely to deceive" means that, under the circumstances, "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ferrington v. McAffe, Inc.*, No. 10-1455, 2010 U.S. Dist. LEXIS 106600, at *26 (N.D. Cal. Oct. 5, 2010). When a defendant is alleged to have violated a duty to disclose, "the public would very likely be deceived." *Falk*, 496 F. Supp. 2d at 1098. Finally, the UCL "imposes strict liability. It is not necessary to show that the defendant intended to injure anyone." *Hewlett*, 54 Cal. App. 4th at 520.

Injurious business acts or practices may be "unfair" under the UCL. "The 'unfair' standard, the second prong of section 17200, also provides an independent basis for relief. This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *State Farm v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (1996). Accordingly, "a practice may be deemed unfair even if not specifically proscribed by some other law." *In re NVIDIA GPU Litig.*, No. 08-04312, 2009 U.S. Dist. LEXIS 108500, at *35 (N.D. Cal. Nov. 19, 2009) (internal quotations and citations omitted). "[A]n 'unfair' business practice occurs when that practice

- 9 -

'offends an established public policy or when the practice is immoral, unethical, oppressive, or unscrupulous or substantially injurious to consumers.'"   *State Farm*, 45 Cal. App. 4th at 1104 (citing *People v. Casa Blanca Convalescent Homes*, 159 Cal. App. 3d 509, 530 (1984)).   Plaintiffs need not plead or prove an intent to deceive or other elements typically associated with common law fraud.  The pleading requirements of Rule 8 therefore govern.  *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 803 (N.D. Tex. 2009); *Threshold Enters. Ltd. v. Functional Brands, LLC*, No. 07-1400, 2007 U.S. Dist. LEXIS 45885, at *2-3 (N.D. Cal. June 18, 2007).

          A "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (internal quotations and citation omitted); *Ferrington*, 2010 U.S. Dist. LEXIS 106600, at *15 (Rule 9(b) satisfied when allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud") (internal quotations and citation omitted).   The CAC's allegations satisfy that standard.   Moreover, Defendants' Motion should be denied because "whether a practice is deceptive or fraudulent . . . is a question of fact, requiring consideration and weighing of evidence from both sides before it can be resolved."  *Ferrington*, 2010 U.S. Dist. LEXIS 106600, at *30-31 (denying motion to dismiss UCL claim, finding allegations "plausible").   Plaintiffs allege Sony's conduct offends an established public policy in that it violated numerous laws and its misrepresentations and concealments were immoral, unethical, oppressive, or unscrupulous or injurious to Plaintiffs and consumers.   Plaintiffs also allege Sony failed to disclose and concealed material information about the Safety Defect. Moreover, Plaintiffs allege actionable statements under the UCL and the FAL.  In *Tobacco II*, the court reiterated that, "[t]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that "members of the public are likely to be deceived.'"  *Tobacco II*, 46 Cal. 4th at 312 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (Cal. 2002)); *see also Rubio v. Capital One Bank*, No. 08-56544, 2010 U.S. App. LEXIS 14968, at *21 (9th Cir. Jul. 21, 2010) (same); *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 212 n.11 (1983) (specificity requirement for fraud claims does not apply to UCL §§ 17200 and 17500).

The *Tobacco II* court upheld a complaint "alleg[ing] that the tobacco industry defendants violated the UCL by conducting a decades-long campaign of deceptive advertising and misleading statements." *Tobacco II*, 46 Cal. 4th at 306.  The court held that, "where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id.* at 328.  The court did *not* require the plaintiffs to plead their misleading advertising claims with specificity.  The holding in *Tobacco II* applies here: Plaintiffs allege they were generally exposed to a deceptive advertising campaign for many months.  They are "not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct."  *Id.*

Plaintiffs have adequately pleaded their false advertising claim and their reliance on Sony's misleading advertisements.  (CAC ¶ 21 ("If plaintiffs and the members of the Class had known the true facts, they would not have purchased the Televisions or paid as much as they did for the Televisions.").)   Sony's argument that Plaintiffs need to identify the advertisements at issue mischaracterizes Plaintiffs' allegations.   Plaintiffs allege Sony omitted and concealed material information about the Televisions—specifically, the fact that the Safety Defect rendered the Televisions dangerous and unfit for their intended use—and failed to disclose that the Televisions would malfunction as a result of the Safety Defect.  (CAC ¶¶ 15-18, 20, 24.)   Plaintiffs did not know, and could not have known, about the Safety Defect because of Sony's concealment of it. (CAC ¶¶ 16-18.)  It defies logic to suggest Plaintiffs must point to a single advertisement in support of their claims that Sony hid material information when Defendants have categorically failed to disclose the Safety Defect.  The fact that Sony's statements and advertisements made no mention of the Safety Defect inherent in the Televisions is not in dispute and in fact proves Plaintiffs' point that Sony omitted this material fact.  Sony is therefore liable to Plaintiffs and the proposed Class for knowingly omitting material facts in connection with the sale of the Televisions.   Indeed, allegations analogous to the ones Plaintiffs make in this case have survived motions to dismiss on all three of the UCL's prongs. *See, e.g., Falk*, 496 F. Supp. 2d at 1098.

UCL section 17500 prohibits "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue and misleading."

The California Supreme Court "recognized that '[a]ny violation of the false advertising law . . . necessarily violates' the UCL." *Kasky*, 27 Cal. 4th at 950 (citing *Comm. on Children's Television*, 35 Cal. 3d at 210). Sony affirmatively represented that the Televisions would operate properly and concealed the fact that the Televisions contained the Safety Defect that would render the sets dangerous, and ultimately useless. (CAC ¶¶ 15, 18, 24.) Clearly, this was material information to consumers who bought the Televisions. It is alleged that Sony knew its representations were untrue in that the Televisions contained the characteristic and inherent Safety Defect and were substantially certain to fail within their useful lives. (CAC ¶ 20.)

### 2. Defendants Can Be Held Liable under the UCL, FAL, and CLRA for Failure to Disclose a Safety Defect that Manifests after the Expiration of the Warranty Period

Defendants, relying primarily on *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833-39 (2006), assert they "cannot be held liable under the UCL, FAL, or CLRA for failure to disclose a defect that manifests itself after expiration of the warranty period." (MTD at 13:1-3.) Putting aside the fact that the Extended Warranty is still in effect, Sony is incorrect in its analysis. The *Daugherty* court held plaintiffs had not stated a claim under the CLRA because they did not identify "any representation by Honda that its automobiles had any characteristic they do not have, or are of a standard or quality they are not," noting the cars purchased by the plaintiffs "functioned as represented" throughout their warranty periods. *Daugherty*, 144 Cal. App. 4th at 834. While *Daugherty* holds generally that a manufacturer cannot be held liable for a defect that manifests after the end of a warranty period, it recognized an exception when there is an obligation to disclose hidden information, for example when there is a known safety risk. *Daugherty*, 144 Cal. App. 4th at 835 n.5; s*ee also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008), *aff'd*, No. 08-16290, 2009 U.S. App. LEXIS 2759 (9th Cir. Apr. 2, 2009) ("The *Daugherty* court, however, created exceptions if . . . the omission pertains to 'a fact the defendant was obligated to disclose,' e.g., facts relating to product safety.") (citing *Daugherty*, 144 Ca. App. 4th at 835).[7]

*Falk* is instructive. *Falk* applied the exception created by *Daugherty* and made clear that

---

[7] Unlike the Plaintiffs here, the plaintiffs in the cases cited by Defendants did not allege an unreasonable risk of physical injury or threat to safety. The holdings are therefore irrelevant.

CLRA and UCL claims may be maintained, regardless of any applicable warranty periods, when the facts alleged establish a duty to disclose. *See Falk*, 496 F. Supp. 2d at 1094-97. Plaintiffs allege an unreasonable safety risk that necessarily attends Television ownership, i.e., the introduction of a fire hazard into their homes. (CAC ¶ 6-9.) Because Sony failed to disclose the existence of the Safety Defect, it may not rely on its warranties to escape liability for its consumer protection violations.

### a.     Sony Has Failed To Disclose Material Facts

#### (1)     The Safety Defect is Material

Plaintiffs allege that, if the Safety Defect had been disclosed to them, they either would not have purchased the Televisions or would have paid substantially less for them. (CAC ¶ 21.) Plaintiffs also allege the Safety Defect constitutes an unreasonable hazard with the potential for injury or property damage, which therefore leads to a duty to disclose under California law. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and Products Liability Litig.*, No. 8:10-02151, 2010 WL 5058562, at *13 (C.D. Cal. Dec. 9, 2010) (*Toyota II*); *Daugherty*, 144 Cal. App. 4th at 836. This is particularly so, as Plaintiffs allege that they themselves have put Sony on notice of the Safety Defect, and Sony's actions demonstrate its clear awareness of it. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and Products Liability Litig.*, No. 8:10-02151, 2010 U.S. Dist. LEXIS 131330, at *195-196 (C.D. Cal. Nov. 30, 2010) (*Toyota I*). Common experience supports Plaintiffs' claim that a potential buyer would view the fact that a defective Television that might pose a fire hazard is material. *See Toyota I*, 2010 U.S. Dist. LEXIS 131330, at *141-143 ("Nondisclosures about safety considerations of consumer products are material.") (citing *Falk*, 496 F. Supp. 2d at 1096). Plaintiffs here allege material "risks [that] are far more unreasonable than [mere] monetary consequences" that required Sony to disclose their existence. *Falk*, 496 F. Supp. 2d at 1096. Moreover, the law imposes an affirmative duty to disclose defects, like the one here, that pose unreasonable safety hazards. *Id.* at 1094 ("*Daugherty* emphasized that an 'unreasonable' safety risk would lead to a duty to disclose."). Because Plaintiffs allege Class members were harmed through the purchase of Televisions containing an inherent but undisclosed Safety Defect, Plaintiffs have met their burden with respect to pleading misconduct based on omissions and concealment. *See Falk*, 496 F. Supp. 2d at 1097-98 (denying motion to

- 13 -

1 dismiss CLRA and UCL claims without discussing Fed. R. Civ. P. 9(b)).

2   Sony argues Plaintiffs' CLRA claims should be dismissed because the Safety Defect

3 manifests after the expiration of the express warranty (which again ignores the fact that the

4 Extended Warranty is still in force).  This argument misses the point.  Plaintiffs' CLRA claims are

5 similar to those in *Falk*.  In *Falk*, plaintiffs claimed their GMC truck and sport utility vehicle

6 speedometers failed after the expiration of the vehicles' warranties.  *Falk*, 496 F. Supp. 2d at 1092.

7 The court denied GMC's motion to dismiss.  The *Falk* plaintiffs demonstrated the omission was

8 material by alleging they would not have purchased GMC's vehicles, or would have negotiated a

9 lower price, had they known of the vehicles' safety defect.  *Id*. at 1096.  Plaintiffs here likewise

10 allege they would not have purchased the Televisions or would not have paid as much as they did

11 for them had they been informed of the Safety Defect.  In other words, the Safety Defect is material.

12     **(2) Sony Violated its Duty to Disclose**

13   Plaintiffs complain of Sony's failure to disclose information known exclusively to it with

14 respect to the Televisions' defective and unsafe condition and to disclose the existence of the Safety

15 Defect to complaining Television owners such as Plaintiffs herein.  (CAC ¶¶ 6-9.)  Plaintiffs need

16 not plead or prove reliance because it is not an element of a CLRA cause of action: "Under the UCL

17 and CLRA, the legally relevant question is framed not in terms of 'reliance,' which is required in

18 common law fraud, but of materiality."  *Bristow v. Lycoming Engines*, No. 06-1947, 2007 U.S. Dist.

19 LEXIS 31350, *21-22 (E.D. Cal. Apr. 9, 2007) (citing *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97

20 Cal. App. 4th 1282, 1288 (2002); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45

21 (N.D. Cal. 2005)).  The *Bristow* court upheld a complaint alleging the defendants had failed to

22 disclose material information when the plaintiff had alleged that the "omission concerned 'facts that

23 a reasonable consumer would have considered important in deciding whether or not to purchase or

24 lease the aircraft.'"  *Bristow*, 2007 U.S. Dist. LEXIS 31350, at *21-22.; *see also Ward v. IPEX, Inc.*,

25 No. 08-6370, 2009 U.S. Dist. LEXIS 11040, at *7 (C.D. Cal. Feb. 4, 2009) (upholding complaint's

26 allegations that, "if Defendants had disclosed the true facts about the Product, those facts would

27 have been material to the consumer"); *Outboard Marine*, 52 Cal. App. 3d at 37 (the CLRA

28 "includes ***a proscription against a concealment*** of the characteristics, use, benefit, or quality of the

goods contrary to that represented") (emphasis added).

A defendant commits fraud actionable under the CLRA and UCL when material omissions attend a duty to disclose. *Falk*, 496 F. Supp. 2d at 1094-95. A plaintiff alleging material omissions will be unable to specify the time, place, and specific content of the alleged omissions and is therefore not required to do so. *See id*. at 1098-99 (noting the difference in pleading standard between a claim of fraud by omission and one of a fraudulent misrepresentation). Thus, California law makes clear that CLRA claims "may be based on a fraudulent omission if . . . (2) the omission was of a fact the defendant was obliged to disclose." *NVIDIA*, 2009 U.S. Dist. LEXIS 108500, at * 10 (citing *Daugherty*, 144 Cal. App. 4th 824 at 835). A defendant's "failure to disclose or concealment can constitute actionable fraud . . . (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk*, 496 F. Supp. 2d at 1095 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)); *see also Toyota I*, 2010 U.S. Dist. LEXIS 131330, at *140.

A duty to disclose exists when the "defendant had exclusive knowledge of material facts not known to the plaintiff." *Falk*, 496 F. Supp. 2d at 1096 (quoting *Judkins*, 52 Cal. App. 4th at 337). Like the plaintiffs in *Falk*, Plaintiffs allege Sony had exclusive knowledge of the Safety Defect but failed to disclose its existence or acknowledge its risks. (CAC ¶¶ 17, 24-25.) Sony never informed Plaintiffs or other class members of the risks associated with the Televisions, and Sony has specifically denied the existence of the Safety Defect even though the existence of the Safety Defect has been confirmed by complaints from Television owners such as Plaintiffs herein. (CAC ¶¶ 6-9.) "Since, as plaintiffs argue, GM was in a superior position to know that its speedometers might fail, plaintiffs successfully state a CLRA claim for omission of a material fact which lay within GM's exclusive knowledge." *Falk*, 496 F. Supp. 2d at 1096-97. Sony had a duty to disclose the existence of the Safety Defect because its presence in the Televisions is a material fact Sony concealed from Plaintiffs. *See Judkins*, 52 Cal. App. 4th at 337.

To state a claim for concealment, Plaintiffs must demonstrate that:

(1) the defendant must have concealed or suppressed a material fact;

- 15 -

(2) the defendant must have been under a duty to disclose the fact to the plaintiff;

(3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;

(4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and

(5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Falk*, 496 F. Supp. 2d at 1097 (quoting *Lovejoy v. AT & T Corp.,* 119 Cal. App. 4th 151, 157 (2004)).  The *Falk* court found GMC concealed a material fact because it failed to notify consumers of a defect or to effect a recall.  Furthermore, in those instances when GMC did provide a replacement part, consumers received an equally defective replacement, thus failing to address the very safety issue known to GMC.  Plaintiffs here make similar allegations.  Sony concealed the Safety Defect by failing to institute a recall or notify consumers of the risks associated with the Televisions.  (CAC ¶ 25.)  Additionally, any part replacement merely serves as a temporary "Band-Aid" that does not correct the underlying problem that results in the burning, charring, and melting of the Televisions.  (CAC ¶ 19.)  These allegations suggest that Sony, like GMC "tried to gloss over the problems" with its Televisions instead of remedying the Safety Defect and disclosing its existence.  *See Falk*, 496 F. Supp. 2d at 1097.  Because Plaintiffs allege the risks associated with the Safety Defect "are far more unreasonable than [mere] monetary consequences." *id*. at 1096, and the Televisions were defective, Plaintiffs adequately allege that Sony violated its duty to disclose.  *Id*. at 1097 (denying motion to dismiss under Rule 12(b)(6) without consideration of Rule 9(b)).[8]

### 3.   Defendants' Misleading Statements Were More than Mere Puffery

Plaintiffs allege Sony's misrepresentations and concealment of material facts in connection with its efforts to market and sell the Televisions were "likely to deceive" the average consumer.  The CAC alleges Sony knew, from the introduction of the Televisions into the U.S. market, that the

---

[8] Sony cites *Tietsworth v. Sears, Roebuck & Co.,* No. 5:09-00288, 2010 U.S. Dist. LEXIS 44053 (N.D. Cal. Mar. 31, 2010), and asserts that *Tietsworth* requires an allegation of actual personal injury.  (MTD 15:25.)  No such requirement exists.  All *Tietsworth* requires is personal experience with an unreasonable *risk* of personal injury.  *Tietsworth*, 2010 U.S. Dist. LEXIS 44053, at *20 (plaintiffs lacked standing because "there [were] no factual allegations that any named Plaintiff or any identifiable member of the putative class actually *experienced* a malfunction involving the machine 'spinning out of control' *risking* personal injury.") (emphasis added).

Televisions were unsuitable for their intended purpose.  (CAC ¶¶ 27, 29.)  Nevertheless, Sony represented that the Televisions offered superior picture quality while concealing the existence of the Safety Defect.  Sony's representations in its marketing and sale of the Televisions are not mere "puffery," and any argument to this effect is baseless and misses the point.  Sony's representations about the quality of the Televisions serve to underscore the fraud it perpetrated on the public.  While extolling the virtues of the Televisions, Sony intentionally failed to disclose the Safety Defect.  The CAC alleges Sony failed to disclose material information about its Televisions, making its advertisements untrue, not that Sony's advertisements contained claims that themselves are actionable without the existence of the Safety Defect alleged herein.  (CAC ¶¶ 15, 18, 24.)  Defendants baldly state that "the alleged misstatements do not even relate to the alleged defect" (MTD 18:17-18), but this is wrong.  Sony made representations about the quality of the Televisions that were untrue because they omitted any disclosure of the existence of the Safety Defect.

### D.   The "Economic Loss" Doctrine Does Not Bar Plaintiffs' Strict Liability Claim

Defendants argue "Plaintiffs' strict liability claim (count four) should be dismissed because plaintiffs suffered no physical injury or damage to other property."  (MTD at 19:5-6.)  This argument ignores the Ninth Circuit's decision in *Scandinavian Airline Sys. v. United Aircraft Corp.*, 601 F.2d 425, 429 (9th Cir. 1979), which adopted the reasoning of the California Court of Appeal in *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal. App. 3d 737, 748, (1976):

> (T)he doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it.  (Citation omitted.)

These factors do not apply here.  Although Defendants and members of the Class dealt in a commercial setting, they did not do so from "positions of relatively equal economic strength."  Sony is an enormous company that clearly possesses superior economic strength and knowledge about the products it sells.  In addition, the parties did not "bargain the specifications of the product"— Plaintiffs could either accept the Televisions as offered by Sony, including the undisclosed Safety Defect, or not.  Further, it cannot seriously be suggested that the parties negotiated concerning the risk of the Televisions that resulted from the Safety Defect.  Sony had superior knowledge about the

Safety Defect as compared to those consumers who purchased the Televisions.  The photographs attached to the CAC demonstrate that, although the Plaintiffs have been lucky enough not to experience harm beyond their Televisions, a very real possibility of such harm exists.

Moreover, the harm alleged is not limited to the warping of the lamp access door, as Sony implies.  Plaintiffs allege the overheating causes damage to other property, specifically other parts of the Televisions, rendering them not only unsafe but also unusable.  (CAC ¶¶ 3, 6, 24-25.)  In fact, Sony's Extended Warranty acknowledges this possibility: "In rare cases, some additional components may also become damaged as a result."  (Defs' Req. for Jud. Not. Ex. B.)  Plaintiffs' allegations thus state a strict liability claim.  *See NVIDIA*, 2009 U.S. Dist. LEXIS 108500, at *40 (allegations that computers' GPUs damaged other components stated claim for strict liability).

### E.   Plaintiffs Allege Viable Warranty Claims

#### 1.   Claims Relating to Sony's Breaches of Its Limited Warranty, Extended Warranty, and Implied Warranty Are Timely

Sony repeatedly argues that the one year Limited Warranty under which Plaintiffs have sued has expired and that, because the Safety Defect often manifests itself after the one year express warranty period, Sony has no warranty liability.  In making this argument, Sony confuses the issue of the *accrual* of claims during the warranty period with the separate issue of the later *manifestation* of a defect that allows consumers to take notice of their nonconforming goods.  As the California Court of Appeal has observed, California law is clear that a warranty claim accrues at the time of the *tender* of the allegedly non-conforming merchandise, which occurred within the warranty period, and proof of breach does not require proof the product has malfunctioned—only that it contains an inherent defect that is substantially certain to result in malfunction during the useful life of the product.  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-05 (2009).  "The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale.  Indeed, '[u]ndisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy.'"  (Citations omitted).  "In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery."  *Id.* at 1305; *Hicks v. Kaufman and*

- 18 -

1  *Broad Home Corp.*, 89 Cal. App. 4th 908, 917-18 (2001).[9]

2      Sony relies on *Hovsepian v. Apple, Inc.*, Nos. 08-5788, 09-1064, 2009 U.S. Dist. LEXIS

3  80868 (N.D. Cal. Aug. 21, 2009), in a misguided attempt to explain the law with respect to the

4  duration of the implied warranty of merchantability in California.  Sony conveniently ignores that

5  the *Hovsepian* court's reference to *Mexia* is mere *dicta*, included after the court dismissed plaintiff's

6  implied warranty claim holding that conclusory and indefinite allegations were insufficient to

7  overcome a presumption of the warranties' validity.  *Hovsepian*, 2009 U.S. Dist LEXIS 80868, at

8  *24.  In fact, *Hovsepian's* holding does not help Sony because it endorses *Mexia*, stating "that a

9  claim for breach of implied warranty of merchantability must be brought no later than four years

10  after the date of sale" when a latent defect forms the basis for the breach.[10]  *Id.*, 2009 U.S. Dist.

11  LEXIS 80868 at *25 n.6.  "Thus, although a defect may not be discovered for months or years after

12  a sale, merchantability is evaluated as if the defect were known."  *Mexia*, 174 Cal. App. 4th at 1305.

13  Sony breached its warranty by tendering the defective Televisions to consumers, in that it delivered

14  the Televisions with knowledge that they were dangerous and would fail within their expected

15  useful lives, and if in fact the Safety Defect had been known at the time of sale, the Televisions

16  would obviously not have been considered "merchantable."  Further, as the Plaintiffs are alleged to

17  have suffered economic loss and a threat to safety when the defective Televisions were delivered—

18  well within the warranty period—Sony breached its warranties at the time of delivery.  *Hicks*, 89

19  Cal. App. 4th at 917-18; *see also Hewlett-Packard Co. v. Super. Ct.*, 167 Cal. App. 4th 87, 95

20  (2008) (court "not persuaded" by *Daugherty*-based argument that "a product malfunction is

21  required in order for the product to be considered defective"); *Anthony v. Gen. Motors Corp.*, 33

22  Cal. App. 3d 699, 702 (1973).  In other words, Plaintiffs have a right to take delivery of "a product

23  free from defect."  *Hicks*, 89 Cal. App. 4th at 921.  This right was violated by Sony's tender of non-

24  conforming Televisions that contained the inherent Safety Defect.

25  ---

26  [9] In fact, California law makes clear that the question of whether and for how long an inherently defective product is functioning—the focus of Sony's arguments—goes only to the remedy for the breach, not the proof of the breach itself.  *Mexia*, 174 Cal. App. 4th at 1304, *Hicks*, 89 Cal. App. 4th

27  at 918; *see also Hewlett-Packard*, 167 Cal. App. 4th at 95; *Anthony*, 33 Cal. App. 3d at 702.

28  [10] Notwithstanding the applicability of the four year statute of limitations to their warranty claims, Plaintiffs note that Plaintiff Ochoa bought his television within four years of filing suit.  (CAC ¶ 7.)

In *Hicks*, homeowners brought a putative class action against a developer and general contractor for the cost of repairing or replacing defective concrete foundations under their homes. The California Court of Appeal rejected the argument that a breach of warranty claim requires a product to have already malfunctioned and held that it only must contain an inherent defect:

> We conclude, therefore, if plaintiffs prove their foundations contain an inherent defect which is substantially certain to result in malfunction during the useful life of the product they have established a breach of Kaufman's express and implied warranties.  It is not necessary for each individual homeowner to prove his foundation has already cracked or split or that he has suffered property damage as a result of the cracking or splitting.  We see no reason why a homeowner should have to wait for the inevitable injuries to occur before recovering damages to repair the defect and prevent the injuries from occurring.

*Id.* at 923; *see also Chamberlan*, 369 F. Supp. 2d at 1147 ("the reasoning of Hicks . . . applies equally well in situations where the overall product, here a car, has a limited but long useful life and a component has a defect that is substantially certain to manifest itself before the end of that useful life").[11]   Thus, Sony breached its warranty at the time of delivery by tendering the defective Televisions to consumers with knowledge that they would fail within their expected useful lives— as each of the Plaintiffs' Televisions actually has done.  Sony's Motion should be denied.

Additionally, Sony is incorrect in arguing Plaintiffs' implied warranty claims fail because they did not seek warranty service within one year of purchasing the Televisions.   In rejecting Sony's exact argument, the *Mexia* court noted that this provision simply limited the duration of the implied warranty of merchantability—but "there is nothing that suggests a requirement that the purchaser discover and report to the seller a latent defect within that time period" or that a cause of action had to be commenced within that period.  *Mexia*, 174 Cal. App. 4th at 1310.  It is black letter law that "[t]o say that a warranty exists is to say that a cause of action can arise for its breach" (*id.* at 1309) which means, of course, the statute of limitations begins to run from the date of the breach. Plaintiffs allege that Mr. Ochoa "demanded a warranty repair from Sony and gave notice of the Safety Defect to Sony" within the Extended Warranty period.  (CAC ¶ 7.)  Sony refused to repair his television and instead told him he would have to pay $900 for a repair that would not remedy the Safety Defect.   (*Id.*)   Similarly, when Mr. Sefo called to inform Sony of his malfunctioning

---

[11] To the extent that the holdings of *Daugherty* and *Hicks* conflict, they have been harmonized by *Long v. Hewlett-Packard Co.*, 316 Fed. Appx. 585, 586 (9th Cir. March 3, 2009).

Television, Sony refused to repair it, claiming no parts were available.  (CAC ¶ 8.)  Sony instead offered him a replacement Television at a supposedly reduced price or a different model refurbished television.  (*Id.*)  Sony's Extended Warranty does not inform consumers that the replacement of the Televisions will require a new purchase or the acceptance of a refurbished television.

The cases Sony relies on, primarily *Daugherty* and its progeny (MTD at 19-21), are inapposite as they involve situations in which the plaintiff sued for consequential damages from the breach, which could not be occasioned until after a malfunction of the defect.  *Hewlett-Packard*, 167 Cal. App. 4th at 94 ("[T]he principles of *Daugherty* address the law of express warranty as applied to claims of economic loss due to a product's defect.").  Here, by contrast, Plaintiffs seek damages for the diminished value of the non-conforming goods themselves, occasioned by the fact that these Televisions were delivered with a Safety Defect that will cause the Televisions to malfunction within the useful lives of these products.  *Id.* at 96 (distinguishing *Daugherty* argument that product malfunction required for it to be considered defective and noting that "an actual malfunction of the notebook screens would not be necessary to establish defect, if it could be established that the notebook screens were substantially certain to fail prematurely").

The reasoning behind *Hewlett-Packard* is that purchasers of goods containing characteristic defects suffer damages by virtue of being tendered goods that fail to meet warranted standards of quality, both express and implied, and therefore receive less than what they bargained for.  Sony expressly warranted the Televisions "against defects" and impliedly warranted that they were suitable for their principal purpose.  Neither warranty made by Sony was true at the time of tender regardless of whether consumers ever turn on their Televisions or experience the Safety Defect. The dates of the ultimate manifestations of this characteristic Safety Defect, or when the consumers eventually learned of it, are of no moment, as the breach occurred at the time of tender, well within the warranty period.  Sony's arguments must be rejected and the warranty claims upheld.

### 2. Sony's Reliance on the Time Limitations of its Written Warranty is Misplaced, as its Knowledge of the Safety Defect Rendered These Limitations Unconscionable

In summary fashion, Sony argues its express limitation of implied warranties was effective and appropriate.  Plaintiffs specifically allege, however, that Sony's knowledge of and failure to

disclose the Televisions' inherent and characteristic Safety Defect that is likely to manifest only after the expiration of these time limitations renders the limitations unconscionable.  Plaintiffs' allegations are sufficient to establish the unconscionability of Sony's warranty.  It is well-recognized that a defendant's knowledge of an inherent defect and failure to disclose it can render durational limitations in a warranty unconscionable.  *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292 (4th Cir. 1989) (denying motion to dismiss breach of warranty claim for defect outside of warranty duration based on allegations of unconscionability); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 U.S. Dist. LEXIS 94765, at *12 (D.N.J. Dec. 28, 2007) (denying motion to dismiss in consumer class action alleging manifestation of an inherent defect after the warranty period; finding plaintiff had "alleged sufficiently that the limitation of the implied warranties is unconscionable").

Although it might be correct that, at some point in the litigation, the record could be complete enough for the Court to determine the issue as a matter of law, "unconscionability claims should but rarely be determined on the bare-bones pleadings."  *Carlson*, 883 F.2d at 292; *see also Payne*, 2007 U.S. Dist. LEXIS 94765, at *16 ("Plaintiff should be allowed a reasonable opportunity to present evidence as to commercial setting, purpose and effect to aid the court in making the determination [as to whether the time limitations of the warranties are unconscionable,] . . . which can only occur after an opportunity for discovery.") (internal quotation and citation omitted; alteration in original).  Indeed, the California Civil Code makes explicit that, "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."  Cal. Civ. Code § 1670.5(b).

Plaintiffs have adequately alleged the unconscionability of Sony's limitation of the implied warranties.  As summarized by the *Carlson* court, "[t]he claim is, of course, that [Defendant] imposed its durational limitations on the operation of implied warranties in the course of bargaining tainted by the 'concealment of relevant facts'; that, *ipso facto*, plaintiffs had no 'meaningful choice' when they accepted the limitations; and that the disclaimers themselves were therefore

unconscionable as a matter of law."[12]   *Carlson*, 883 F.2d at 294; *see also A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982) ("[A] contract is largely an allocation of risks between the parties, and therefore . . .  a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner" and "the greater the unfair surprise or inequality of bargaining power, the less unreasonable the risk reallocation which will be tolerated.").  Here, the CAC is replete with allegations demonstrating unconscionability: Sony knew about the Safety Defect but concealed it from consumers (CAC ¶¶ 15, 18, 20-21, 24), there was unequal bargaining power between Sony and the purchasers of the Televisions due to Plaintiffs' and the Class members' lack of technical skill, of which Sony was aware, there was a lack of any meaningful choice relating to the limitations on the warranties (CAC ¶¶ 16-18, 23), and the Televisions were  purchased for a particular purpose which could not be met as a result of the Safety Defect.  (CAC ¶¶ 27, 29.)  Accordingly, the unconscionability of Sony's practices has been adequately alleged and the Motion should be denied.  *Carlson*, 883 F.2d at 296 ("When a manufacturer is aware that its product is inherently defective, but the buyer has 'no notice of [or] ability to detect' the problem, there is perforce a substantial disparity in the parties' relative bargaining power.  In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies—including of course any warranty disclaimers—was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective.") (citations omitted); *Shadoan v. World Sav. & Loan Ass'n.*, 219 Cal. App. 3d 97, 106 (1990) ("The type of risk allocation generally found to be unconscionable is that where the stronger party shifts the risk of its own *negligence* or the *defectiveness of its product* onto the weaker party.") (emphasis in original).

### 3.    Privity Is Not a Bar to Plaintiffs' Warranty Claim

Sony argues California law requires privity of contract to maintain an action for breach of implied warranty.  (MTD at 22.)  Sony, failing to acknowledge that it is one of the largest Internet

---

[12] The *Carlson* court found *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238 (2d. Cir. 1986), a case on which Sony relies, "clearly distinguishable" regarding the unconscionability of GM's limitations on the duration of the implied warranties.  The *Carlson* court noted that *Abraham* dealt with "the 'reasonableness' of durational limitations on *express* limited warranties" and the allegations held that, "even if GM's limitations on express warranties were of 'reasonable' duration, its knowledge of certain 'inherent defects' in the diesel engines rendered all parallel limitations on *implied* warranties 'unconscionable.'"  *Carlson*, 883 F.2d at 295.

retailers of televisions direct to consumers in the United States, is wrong to presume it lacks privity with class members,[13] and, to the extent privity will become an issue in this litigation, it is premature to determine for whom it exists.  Class members who did not purchase directly from Sony can still avail themselves of implied warranties between Sony and its distributors and retailers because they are third-party beneficiaries of those arrangements.  *See Toyota I*, 2010 U.S. Dist. LEXIS 131330, at *176.  Moreover, the Magnuson-Moss Consumer Warranty Act abolished the privity requirement in written warranties falling under its purview,[14] and California abolished the requirement in the Song-Beverly Act.  *See Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1116 n.9 (C.D. Cal. 2007) (vertical privity argument "ignores the plain language of the Song-Beverly Act, which defines implied warranties for purposes of a federal Magnuson-Moss Act cause of action"); Cal. Civ. Code § 1792.1 ("[E]very sale of consumer goods that are sold at retail in this state by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such manufacturer's implied warranty of fitness."). As such, Plaintiffs can pursue their claims for breach of implied warranty.

### 4. Sony Violated the Song-Beverly Act (Cal. Civil Code § 1792, *et seq.*)

Sony's argument that Plaintiffs' Sony-Beverly Act claim should be dismissed lacks merit. Under the Song-Beverly Act, an action for breach of the implied warranty of merchantability must be brought within four years.  *Mexia*, 174 Cal. App. 4th at 1305-06.

### 5. This Court Has Jurisdiction Over Plaintiffs' Magnuson-Moss Claim by Virtue of the Expansion of Federal Diversity Jurisdiction by the Class Action Fairness Act of 2005

Sony makes the jurisdictional argument that Plaintiffs' Magnuson-Moss claim should be

---

[13] Indeed, Sony's sonystyle.com website was among the ten largest Internet retailers in the United States in 2005, with well over $1 billion in annual sales directly to its consumers, thereby placing itself in direct privity with a significant segment of the Class.  *See*, *e.g.*, http://www.internetretailer.com/article.asp?id=15099.

[14] The Magnuson-Moss Act abrogates the right of suppliers of goods to consumers to "disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product. . . ." 15 U.S.C. § 2308(a).  Furthermore, "[a] disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this title and State law." 15 U.S.C. § 2308(c).

dismissed because there are only four named plaintiffs, which is "far short" of the 100 required by 15 U.S.C. § 2310(d)(3)(C).  (MTD at 24:27.)  Contrary to Sony's argument, Courts in the Ninth Circuit have held to the contrary and recognized that CAFA provides jurisdiction for federal courts to hear Magnusson-Moss claims even when there are fewer than 100 named plaintiffs.  *See NVIDIA*, 2009 U.S. Dist. LEXIS 108500, at *25 n.13 ("Magnuson-Moss Act claims may be heard in federal court without meeting the Act's jurisdictional requirement of at least 100 named plaintiffs where federal jurisdiction over the action is based on CAFA . . . ."); *Wolph v. Acer Am. Corp.*, No. 09-01314, 2009 U.S. Dist. LEXIS 83681, at *11-12 (N.D. Cal. Sept. 14, 2009) ("because Plaintiffs allege an alternative basis for jurisdiction under CAFA, the Court has jurisdiction to adjudicate Plaintiffs' Magnuson-Moss Act claim"); *Brothers v. Hewlett-Packard Co.*, No. 06-02254, 2007 U.S. Dist. LEXIS 13155, at *28 (N.D. Cal. Feb. 12, 2007) ("although plaintiffs cannot satisfy the Magnuson-Moss jurisdictional requirements because they do not have 100 named plaintiffs, the court has jurisdiction based on plaintiffs' allegations of federal jurisdiction under CAFA"); *Stella v. LVMH Perfumes and Cosmetics USA, Inc.,* 564 F. Supp. 2d 833, 837-38 (N.D. Ill. 2008); *Payne*, 2007 U.S. Dist. LEXIS 94765, at *22.  Accordingly, Plaintiffs' Magnuson-Moss claims are properly before this Court, and Sony's Motion should be denied.

### F.    Sony Corporation of America, Inc. and Sony Corp. Are Proper Defendants

Contending Defendants Sony Corporation of America, Inc. and Sony Corp. should be dismissed at this early stage of the litigation, Sony asserts Plaintiffs "admit" that neither defendant participated in any of the alleged wrongful conduct.  Plaintiffs have nowhere made such an "admission."  To the contrary, the CAC alleges Sony Corporation of America, Inc., is the U.S. holding company for Sony Corp.'s U.S.-based electronics and entertainment businesses and that it and Sony Corp. design, manufacture, and/or distribute consumer electronics products, including the Televisions containing the Safety Defect, which they caused to be placed into the stream of commerce in this District and throughout the United States.  (CAC ¶¶ 10, 12.)  Accordingly, the claims against Sony Corporation of America and Sony Corp. should not be dismissed.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

DATED:   December 31, 2010                    Respectfully Submitted,

LANGE & KONCIUS, LLP


By:  /s/ Jeffrey A. Koncius
Joseph J.M. Lange (S/B 128115)
Jeffrey A. Koncius (S/B 189803)
222 North Sepulveda Boulevard, Suite 1560
El Segundo, CA  90245
Telephone: (310) 414-1880
Facsimile:  (310) 414-1882

MILBERG LLP
Sanford P. Dumain
Leigh Smith
Jennifer S. Czeisler
One Pennsylvania Plaza
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

LAX LLP
Robert I. Lax
380 Lexington Avenue, 31st Floor
New York, NY  10168
Telephone:      (212) 818-9150
Facsimile:       (212) 818-1266

BARON & HERSKOWITZ
Jon Herskowitz
9100 S. Dadeland Boulevard, Suite 1704
Miami, FL 38156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393

***Attorneys for Plaintiffs***

**PROOF OF SERVICE**

I, Jeffrey A. Koncius, declare as follows:

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is 222 North Sepulveda Boulevard, Suite 2000, El Segundo, California 90245.

On December 31, 2010, I served the foregoing documents entitled **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(6), AND 9(b)** on the interested parties in this action as follows:

> Michael A. Attanasio (mattanasio@cooley.com)
> Michelle C. Doolin (mdoolin@cooley.com)
> Leo P. Norton (lnorton@cooley.com)
> Cooley Godward Kronish LLP
> 4401 Eastgate Mall
> San Diego, CA 92121-1909
> Attorneys for Defendants Sony Corporation of America, Sony Electronics Inc., and Sony Corporation

☒ BY ELECTRONIC CASE FILING:  On the date set forth above, I filed electronically the document(s) listed above, using the United States District Court, Southern District of California's electronic case filing service.  I am registered to file electronically with this Court and receive copies of the document(s) via e-mail from the Court to confirm filing.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct

Executed on December 31, 2010, at Rancho Palos Verdes, California.


/s/ Jeffrey A. Koncius
Jeffrey A. Koncius