# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MARCHANTE, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SONY CORPORATION OF AMERICA, INC., SONY ELECTRONICS, INC., and SONY CORP.,<br><br>Defendant. | CASE NO. 10CV795 JLS (RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF. No. 28.) |

Presently before the Court is Defendants Sony Corporation of America, Sony Electronics Inc., and Sony Corporations' (Defendants or Sony) motion to dismiss Plaintiffs' consolidated amended complaint. (Mot. to Dismiss, ECF No. 17.) Also before the Court are Plaintiffs' opposition, (Opp'n, ECF No. 30), and Defendants' reply, (Reply, ECF No. 31). After consideration, the Court **GRANTS** Defendants' motion to dismiss.

## BACKGROUND

Laura Marchante, Phrank Ochoa, Dragan Sefo, and Melissa Solis (Plaintiffs) filed a putative class action suit against Defendants. (CAC, ECF No. 27.) The suit seeks damages and equitable relief for those who purchased Sony televisions with model designations KF-42WE610, KF-50WE610, KF60WE610, KDF-60XBR950, KDF-70XBR950, KF-42WE620, KF-50WE620, KDF-42WE655, and KDF-50WE655. (*Id.* ¶ 3.)

Plaintiff Laura Marchante presents a representative example of the alleged problem. In December 2005, Marchante purchased one of the model televisions. More than four years later, she "began experiencing a discoloration on the screen of her television." (*Id.* ¶ 6.) Marchante contacted Sony, and Sony offered to replace her television or repair the television's optical block. After some research, Marchante discovered "that her television had a known issue with melting and warping of the lamp access door." (*Id.*) Concerned, she performed "her own visual inspection and found her lamp access door to be scorched." (*Id.*) And again she contacted Sony. After some wrangling, Sony inspected her television for free. At inspection's close, Sony advised Marchante to stop using the television: further use could render the television irreparable. Six days later, Sony offered Marchante a refurbished different-model television. Marchante researched the model and discovered that "it too had quality control issues." She declined Sony's offer and requested a new television or a full refund. Sony refused. Marchante bought a replacement, non-Sony television.

Plaintiffs allege that certain Sony television models were delivered by Sony with "an identical characteristic and inherent safety defect." (*Id.* ¶ 3.) Plaintiffs allege that the defect renders the televisions "unsafe and unsuitable for their principal and intended purpose" because it "causes the Televisions to overheat, causing melting and/or combustion of the internal components and chassis." (*Id.*) In some cases, the defect discolors the screen. (*Id.*)

Plaintiffs also allege that Sony was aware of the defect but it failed to "actively alert consumers to the existence of the safety defect." (*Id.* ¶ 4) Instead, Plaintiffs allege, Sony responded to the problem by providing an extended warranty. (*Id.*)

Plaintiffs' consolidated amended complaint asserts eight causes of action: (1) Violation of California Business and Professional Code § 17200, et seq. (Unfair Competition Law); (2) Violation of California Business and Professional Code § 17500, et seq. (False Advertising Law); (3) Violation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; (4) Strict Liability; (5) Violation of the Song Beverly Consumer Warranty Act, Cal. Civ. Code. § 1792, et seq.; (6) Violation of Magnuson-Moss Act, 15 U.S.C. § 2301, et seq.; (7) Breach of Express Warranty; and (8) Breach of Implied Warranty.

///

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally known as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim" showing that the pleader is entitled to relief. Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — U.S.— , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.*

1     When a motion to dismiss is granted, "leave to amend should be granted 'unless the court
2 determines that the allegation of other facts consistent with the challenged pleading could not
3 possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.
4 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
5 1986)).  In other words, the Court may deny leave to amend if amendment would be futile.  *See*
6 *id.*; *Schreiber Distrib.*, 806 F.2d at 1401.

## ANALYSIS

**1.     California Business and Professional Code § 17200**

9     Plaintiffs allege that Sony violated § 17200 (the UCL) by selling, promoting, and recalling
10 the television models at issue.  (CAC ¶ 38–45.)  Plaintiffs argue that Sony engaged in unfair
11 business acts by selling televisions containing a safety defect which negatively and materially
12 impacted the televisions' merchantability and fitness for the purposes of watching video
13 programming.  (*Id.* ¶ 41.)  Sony also engaged in allegedly unfair business acts by promoting
14 televisions to customers without disclosing its knowledge of the safety defect.  (*Id.* ¶ 42.)  And
15 finally, Sony engaged in allegedly unfair business acts by conducting a "secret" product recall and
16 warranty extension which was designed to inform as few customers of the safety defect as
17 possible.  (*Id.* ¶ 43.)

18     "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any
19 countervailing benefits to consumers or to competition, and is not an injury the consumers
20 themselves could reasonably have avoided."  *Daugherty v. American Honda Motor Co., Inc.*, 144
21 Cal. App. 4th 824, 839 (Cal. Ct. App. 2007).  Here, the Court finds that the consumer injury, if
22 any, is not substantial.  In *Daugherty*, "[t]he failure to disclose a defect that might, or might not,
23 shorten the effective life span an automobile part that functions precisely as warranted throughout
24 the term of its express warranty cannot be characterized as causing substantial injury to
25 consumers."  *Id.*  Plaintiffs here do not allege that the televisions exhibited any problems during
26 the one-year limited warranty period; every alleged problem surfaced several years after purchase.
27 Any failure to disclose relates to a defect that arose years after the express warranty expired.  And
28 any failure to disclose therefore does not constitute substantial injury.  Thus, the Court finds that

any UCL unfairness claim arising from the alleged defect necessarily fails. This claim is **DISMISSED WITHOUT PREJUDICE**.

**2.   California Consumers Legal Remedies Act, California Civil Code § 1750**

The Consumers Legal Remedies Act (CLRA) proscribes "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods to consumers. Cal. Civ. Code § 1770. The unlawful acts include: 1) "Representing that goods . . . have . . . characteristic . . . which they do not have," Cal. Civ. Code § 1770(a)(5); 2) "Representing that goods . . . are of a particular standard, quality, or grade . . . if they are of another," Cal. Civ. Code § 1770(a)(7); and 3) "Advertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9).

Plaintiffs allege violations of the CLRA center around one affirmative representation—that Sony advertised the televisions as being safe—and five failures to disclose related to the alleged safety defect. (CAC ¶ 51(a)–(f).) Sony allegedly advertised the televisions "as being safe and providing high quality video playback with the intent not to sell the [them] as advertised." (CAC ¶ 52(e).) Moreover, Plaintiffs allege, Sony failed to disclose that the televisions would not only fail to display high-quality, color-accurate video, but would also pose a fire hazard. (CAC ¶ 52(d), (f).)

As a general rule, manufactures cannot be liable under the CLRA for failures to disclose a defect that manifests itself after the warranty period has passed. *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835–36 (Cal. Ct. App. 2007). An exception exists, however, if the manufacture fails to disclose information and the omission is "contrary to a representation actually made by the defendant" or the omission pertains to "a fact the defendant was obligated to disclose." *Id.* at 835.

Plaintiffs here do not allege the presence of defects manifesting during the warranty period. Instead, Plaintiffs pursue their CLRA claim based on the *Daugherty* exception, arguing that the televisions contained a safety defect that Sony was obligated to disclose. (Opp'n at 12.) The question therefore is whether Sony carried such an obligation.

Sony's obligation depends on nature of the facts to be disclosed. Plaintiffs assert that Sony

1 had an obligation to disclose any facts regarding the alleged safety defects because defects
2 constituted a known safety risk. (Opp'n at at 12.) But merely stating that a safety risk existed is
3 insufficient. Plaintiffs fail to provide "factual allegations showing any instance of physical injury
4 or any safety concerns posted by the defect." *Daugherty*, 144 Cal. App. 4th at 836. There are no
5 allegations that anyone or any property—other than the television itself—was damaged by the
6 allegedly defective televisions. Thus, whatever defects contained in Sony's televisions are not
7 defects that Sony was obligated to disclose.

8 Because Sony had no obligation to disclose, Plaintiff's CLRA claim fails. This claim is
9 **DISMISSED WITHOUT PREJUDICE**.

### 3.     California Business and Professional Code § 17500

11 Plaintiffs argue that Sony violated California's False Advertising Law (FAL), California
12 Business and Professional Code § 17500, by selling televisions that did not conform to its
13 advertisements. (*Id.* ¶ 46–49.) The FAL prohibits "not only advertising which is false, but also
14 advertising which, although true, is either actually misleading or which as a capacity, likelihood or
15 tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)
16 (internal formatting and quotations omitted).

17 Plaintiffs FAL claim fails because Plaintiffs do not identify any specific statements made
18 by Defendants. And "because Plaintiff does not identify any specific statements, this claim does
19 not provide adequate notice to Defendant of the alleged wrongful conduct." *Inter-Mark USA, Inc.*
20 *v. Intuit, Inc.*, 2008 WL 552482, at *10. On this basis, the claim should be dismissed.

21 Plaintiffs argue, however, that *In re Tobacco II Cases* establishes that plaintiffs need not
22 plead their FAL claims with specificity. (Opp'n at 11.) Indeed, *In re Tobacco II Cases* states that
23 "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not
24 required to plead with an unrealistic degree of specificity that the plaintiff relied on particular
25 advertisements or statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). But the case
26 is readily distinguishable. *In re Tobacco II Cases* and its progenitors dealt with the tobacco
27 industry, an industry in which there was a "decades-long campaign . . . to conceal the health risks
28 of its product while minimizing the growing consensus regarding the link between cigarette

1  smoking and lung cancer." *Id.* at 327.  Here, "Plaintiffs allege they were generally exposed to a
2  deceptive advertising campaign for many months."  (Opp'n at 11.)  Plaintiffs allege a minute
3  fraction of what was alleged in the tobacco cases; the attempted parallel is unconvincing.  This
4  claim is **DISMISSED WITHOUT PREJUDICE**.

**5.     Strict Liability**

Plaintiffs fourth cause of action is for strict liability.  The claim fails because Plaintiffs fail to allege physical injury or damage to other property.  *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482–83 (2002).  To the extent Plaintiffs allege that other parts of the television are damaged, (CAC ¶¶ 3, 6, 24–25), the allegations are insufficient to establish a strict liability claim.  Plaintiffs cannot assert strict liability based on the television and argue that the "other property" that was damaged was other parts of the television.  This claim is **DISMISSED WITHOUT PREJUDICE**.

**6.     Warranty Claims**

Plaintiffs raise four warranty claims: 1)  Breach of Express Warranty; 2)Violations of the Song Beverly Consumer Warranty Act; 3) Breach of Implied Warranty; and 4) Violation of the Magnuson-Moss Act.  The Court first discusses each claim and any claim-specific arguments.  Then the Court turns to the two arguments that Plaintiffs apply broadly to all four warranty claims: *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (Cal. Ct. App. 2009)*,* and unconscionability.

**A.     The Claims**

*1.     Breach of Express Warranty*

Plaintiffs' seventh cause of action is for the breach of express warranties.  (CAC ¶¶ 84–93.)  There are two express warranties at issue in this case: the Limited Warranty and the Limited Extended Warranty.  The Court discusses each in turn.

The Limited Warranty has a one year time limit, taking affect from the date of purchase.  (Limited Warranty, ECF No. 28-3.)  During the one-year period, if the television is defective, "Sony will repair or replace the [television], at its option, at no charge."  (*Id.*)

The general rule is that an express warranty has no affect after the applicable time period has elapsed.  *See Daugherty*, 144 Cal. App. 4th at 830.  The applicable time period for the Limited

1   Warranty ended one year after the time of purchase.  Plaintiffs allege defects that do not manifest
2   until at least four years after purchase.  (CAC ¶¶ 6:7–9, 8:12.)  Thus, Plaintiffs fail to allege breach
3   of the Limited Warranty.
4        Plaintiffs argue that "Sony breached its warranties at the time of delivery" by tendering a
5   product that "contains an inherent defect that is substantially certain to result in malfunction
6   during the useful life of the product." (Opp'n at 18, 19.)  To accept this argument would be to
7   obviate express warranties.  In providing the Limited Warranty, Sony warranted that the
8   televisions would function during the applicable one-year period.  And they did.  Even assuming a
9   latent defect manifested after the one-year period, the Court "can hardly say that the warranty is
10  implicated when the item fails after the warranty period expires.  The product has performed as
11  expressly warranted." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 (9th Cir.
12  2008).
13       Plaintiffs also allege violation of the Extended Warranty.  The Extended Warranty states
14  that "through March 31, 2011, Sony will repair the lamp access door and any other components
15  damaged as a result at no charge for any of the covered televisions." (Extended Warranty, ECF
16  No. 28-3.)  It also states that "all other terms of the Sony limited warranty continue to apply."
17  (Extended Warranty.)  Sony interprets this to mean that in addition to their right to repair, they
18  also retain the ability to replace any televisions suffering from such defect.  (Mot. to Dismiss at
19  21:17–19.)  Defendants do not contest this construction of Sony's warranty rights.
20       Plaintiffs here have failed to allege a breach of the Extended Warranty.  None of the four
21  named plaintiffs alleged that Sony either refused to repair any covered defects or refused to
22  replace any televisions suffering from covered defects.  Plaintiffs Marchante and Sefo both
23  declined Sony's offer of a refurbished television.  (CAC ¶¶ 6, 8.)  Plaintiff Ochoa alleges that Sony
24  refused to repair the television, but does not allege that Sony refused to replace the television.
25  And because Sony retains this Course of action until March 31, 2011, Ochoa has failed to allege
26  breach of the warranty.  (*Id.* ¶ 7.)  Plaintiff Solis fails to allege breach for the same reason.
27       Plaintiffs fail to allege breach of the Limited Warranty or the Extended Warranty.  The
28  Limited Warranty cannot be breached by virtue of a known latent defect manifesting after the

1  warranty period.  And Plaintiffs fail to allege that Sony refused to honor the Extended Warranty by
2  either replacing defective parts or providing replacement televisions.  This claim is **DISMISSED**
3  **WITHOUT PREJUDICE**.
4  ///
5  2.  *Song Beverly Consumer Warranty Act and Implied Warranty Claims*
6      Plaintiffs fifth and seventh causes of action are for violations of the Song Beverly
7  Consumer Warranty Act and the breach of implied warranty.  The Song Beverly Act cause of
8  action concerns breach of implied warranty under §§ 1791.1, 1792, and 1792.1 and failure to
9  repair or replace defective products during the warranty period under §§ 1793.2(a)(3) and (b).  The
10 breach of implied warranty claim in the seventh cause of action states only that Sony breached the
11 implied warranty of merchantability and the implied warranty of fitness for a particular purpose.
12     Plaintiffs claims here fail because they are not timely.  Subject to a sixty-day minimum and
13 one-year maximum, implied warranties exist for as long as express warranties.  *See* Cal. Civ. Code
14 § 1791.1(c); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010).  The implied
15 warranty here had a one year duration to match that of the express warranty.  And having
16 purchased the televisions between 2004 and 2005, the implied warranties would have expired by
17 2006 at the latest.  But Plaintiffs here do not report any issues arising during the one year period.
18 They did not bring suit until 2010, long after the implied warranties had expired.  (CAC ¶¶ 6–9,
19 Doc. No. 1.)  This failure to seek warranty coverage during the one-year period also proves fatal to
20 Plaintiffs' §§ 1793.2(a)(3) and (b) claims.  This claim is **DISMISSED WITHOUT PREJUDICE**.
21 3.  *Magnuson-Moss Act, 15 U.S.C. § 2301*
22     "The Magnuson-Moss Act provides a federal cause of action for state law express and
23 implied warranty claims."  *In re Sony Grand Wega*, 2010 WL 4892114, *17 (S.D. Cal.  Nov. 30,
24 2010).  Because Plaintiffs fail to state any valid state warranty claims, their Magnuson-Moss claim
25 necessarily fails.  This claim is **DISMISSED WITHOUT PREJUDICE**.
26 **B.  Plaintiffs' Two Broad Arguments**
27 *1.  Mexia v. Rinker Boat Company*
28     Plaintiffs rely heavily on *Mexia v. Rinker Boat Company, Inc.* to avoid timing issues

1  inherent to warranty claims. There are two timing issues when it comes to warranties: the duration
2  of the warranty and the statute of limitations. To properly assert a breach of warranty claim, a
3  Plaintiff must allege a breach of warranty—occurring while the warranty is valid—and bring suit
4  within the limitations period.

5  The first timing issue—breach of warranty—is relevant here. With respect to the implied
6  warranty of merchantability, *Mexia* held that a latent defect breachess the implied warranty even if
7  the latent defect was not discovered and reported to the seller within the implied warranty's time
8  period. *Mexia*, 174 Cal. App. 4th at 1310–11. The *Mexia* court found relevant the existence of the
9  breach during the warranty period, not its discovery. According to the *Mexia* court, a latent defect
10 breaches an implied warranty if the defect exists during the implied warranty period.

11 Significant to the analysis is the character of the latent defect. *Mexia* concerns latent
12 defects that render the product unmerchantable from the outset. This distinction can be drawn
13 from *Mexia*'s reliance on *Moore v. Hubbard & Johnson Lumber Co.*, 149 Cal. App. 2d 236
14 (1957). In *Moore* a defendant sold lumber to a contractor for construction purposes. The lumber
15 was infested with beetles that would eat their way out of the wood, leaving holes in the wood.
16 And in such a situation, the latent defect, whether or not it was discovered, rendered the lumber
17 unmerchantable from the outset.

18 It is this distinction that renders *Mexia* inapplicable. Plaintiffs here do not allege that the
19 televisions failed to work properly from the outset. They instead allege issues arising after several
20 years of use. In relying on *Mexia*, Plaintiffs request this Court accept that televisions that may
21 manifest issues after several years of use are comparably unmerchantable-from-the-outset as
22 building lumber infested with beetles. The comparison is unconvincing.

23 Moreover, even if *Mexia* were not limited to defects rendering the product unmerchantable
24 from the outset, the holding renders meaningless any durational limits on implied warranties.
25 Every defect that arises could conceivably be tied to an imperfection existing during the implied
26 warranty period. And in that vein, *Mexia* enjoys the limelight as a case "contrary to established
27 California case law with respect to the duration of the implied warranty of merchantability."
28 *Hovsepian v. Apple, Inc.*, 2009 WL 2591445, at *8 n.7 (N.D. Cal. Aug. 21, 2009). And at least

one California Court of Appeal case entered after *Mexia* seemed to reaffirm the established rule. *See Larsen v. Nissan N. Am.*, 2009 WL 1766797 (Cal. Ct. App. June 23, 2009) (unpublished).

The Court finds Plaintiffs' reliance on *Mexia* unconvincing. The type of defect described by *Mexia* is not alleged in this case, and the rule that *Mexia* proposes is contrary to existing law.

2.     *Unconscionability*

Plaintiffs attempt to circumvent the time limitations by arguing that Sony was aware of the alleged inherent defect and that such knowledge rendered the time limitations in the warranties unconscionable. (Opp'n at 21–22.) Plaintiffs recite several allegations supporting this contention. They include: Sony's knowledge and concealment of the defect; the unequal bargaining power between Sony and the purchasers of the televisions due to the buyer's lack of technical skill; the lack of meaningful choice relating to the limitations on the warranties; and the failure of the televisions to function for their particular purpose. (*Id.* at 23.) The Court finds these allegations do not establish the unconscionability of the Limited Warranty.

"The law of contractual unconscionability . . . requires both procedural and substantive unconscionability." *In re Toyota Motor Corp.*, 2010 WL 4867562, *26 (C.D. Cal. Nov. 30, 2010). Importantly, the two types of unconscionability need not be present to the same degree. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The standard operates on a sliding scale where an increase of one decreases the need for the other. *Id.*

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Aron v. U-Haul Co. of Ca.*, 143 Cal. App. 4th 796, 808 (Cal. Ct. App. 2006) (internal formatting omitted).

Here, Plaintiffs make broad allegations of procedural unconscionability, stating simply that there was unequal bargaining power and there was lack of meaningful choice relating to the limitations on the warranties. What is more telling, however, is what Plaintiffs do not allege. Plaintiffs do not allege that they lacked other options for purchasing high-definition televisions. And the existence "of meaningful alternatives available to such contracting party in the form of other sources of supply tends to defeat any claim of unconscionability." *Dean Witter Reynolds,*

*Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 771 (Cal. Ct. App. 1989).

The substantive prong focuses on the actual terms of the agreement and whether the agreement creates overly harsh or one-sided results that shock the conscience. *Aron*, 143 Cal. App. 4th at 808. The Court finds that the time limitations do not create results that shock the conscience. The warranty here protected the consumer for a one-year period. This one year period corresponds to the maximum limit permitted under California law. Cal. Civ Code § 1791.1(c). To characterize the terms at hand to be unconscionable would be shocking.

The Court finds that the time limits in the warranties are not unconscionable. Plaintiffs do not establish either prong of the unconscionability analysis. Moreover, the terms of the warranty are so clearly within the realm of reason, that whatever procedural unconscionability existed would not tip the scales towards finding the terms unconscionable.

**C.    Conclusion**

Plaintiff's two broad arguments do not save their four warranty claims. The Court finds *Mexia* inapplicable to the current situation and the warranties not unconscionable. The four warranty claims are therefore appropriately dismissed.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES ALL CLAIMS WITHOUT PREJUDICE**. Plaintiff, if it wishes, **SHALL** file any amended complaint within 28 days of this order being electronically docketed.

**IT IS SO ORDERED.**

DATED: July 8, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge