1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

LAURA MARCHANTE, et al., on behalf of
themselves and all others similarly situated,

                                          Plaintiff,

        vs.

SONY CORPORATION OF AMERICA,
INC., SONY ELECTRONICS, INC., and
SONY CORP.,

                                       Defendants.

CASE NO. 10CV795 JLS (RBB)

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS**

(ECF No. 35)

    Presently before the Court is Defendants Sony Corporation of America, Sony Electronics, Inc., and Sony Corporations's (collectively, "Defendants" or "Sony") motion to dismiss Plaintiffs' consolidated second amended complaint ("CSAC").  (Mot. to Dismiss, ECF No. 35)  Also before the Court are Plaintiffs' opposition, (Resp. in Opp'n, ECF No. 37), and Defendants' reply in support, (Reply in Supp., ECF No. 38).  The hearing set for the motion on December 1, 2011, was vacated, and the matter taken under submission on the papers.  Having considered the parties' arguments and the law, the court **GRANTS** Defendants' motion to dismiss.

    This Order incorporates by reference the background facts as set forth in this Court's July 8, 2011 Order.  (Order 1–2, ECF No. 33)  In short, Plaintiffs claim that Sony violated several consumer protection statutes and breached express and implied warranties by selling them defective televisions.  Plaintiffs' CSAC asserts seven claims: (1) Violation of California Business and Professional Code § 17200, *et seq.* ("Unfair Competition Law" or "UCL"); (2) Violation of California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (3) Strict

1  Liability[1]; (4) Breach of Express Warranty; (5) Breach of Implied Warranty; (6) Violation of the

2  Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.*; and (7) Violation of

3  Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*

4  **LEGAL STANDARD**

5  Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion the defense that

6  the complaint "fail[s] to state a claim upon which relief can be granted," generally known as a

7  motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and

8  sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain

9  statement of the claim" showing that the pleader is entitled to relief.  Although Rule 8 "does not

10  require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-

11  defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — U.S.— , 129 S. Ct. 1937,

12  1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a

13  plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than

14  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

15  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a

16  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,

17  129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

18  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

19  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,

20  550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts

21  pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the

22  misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  That is not to

23  say that the claim must be probable, but there must be "more than a sheer possibility that a

24  defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall

25  short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the

26  Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review

27

28  _____

[1] Plaintiffs withdraw their strict liability claim in their opposition brief.  (Resp. in Opp'n 2 n.2, ECF No. 37)

1    requires context-specific analysis involving the Court's "judicial experience and common sense."

2    *Id.* at 1950.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

3    possibility of misconduct, the complaint has alleged— but it has not 'show[n]'— 'that the pleader

4    is entitled to relief.'"  *Id.*

5            When a motion to dismiss is granted, "leave to amend should be granted 'unless the court

6    determines that the allegation of other facts consistent with the challenged pleading could not

7    possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

8    1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

9    1986)).  In other words, the Court may deny leave to amend if amendment would be futile.  *See*

10   *id.*; *Schreiber Distrib.*, 806 F.2d at 1401.

11                                          **ANALYSIS**

12           Plaintiffs' CSAC again raises claims of alleged violations California's consumer protection

13   statutes and breach of implied and express warranties, (CSAC, ECF No. 34), claims which this

14   Court previously dismissed for failure to state a claim in its July 8, 2011 Order, (Order, ECF No.

15   33).

16   **1.  Violation of California's Consumer Protection Statutes**

17           The CSAC drops the False Advertising Law claim from the prior complaint, but reasserts

18   the Unfair Competition Law and CLRA claims.

19   ***A.  California Business and Professional Code § 17200***

20           California's UCL prohibits acts of unfair competition, which includes "any unlawful,

21   unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; *see also In re*

22   *Pomona Valley Medical Grp. Inc.*, 476 F.3d 665, 674 (9th Cir. 2007).  "Because [the UCL] is

23   written in the disjunctive, it establishes three varieties of unfair competition—acts or practices

24   which are unlawful, or unfair, or fraudulent."  *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d

25   89, 98 (Cal. Ct. App. 1996).  Here, Plaintiffs again allege that Sony "engaged in 'unfair' business

26   acts or practices" by selling, promoting, and recalling the television models at issue.  (CSAC

27   ¶¶ 45–47, ECF No. 34)

28   //

1    "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any

2    countervailing benefits to consumers or to competition, and is not an injury the consumers

3    themselves could reasonably have avoided."  *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal.

4    Rptr. 3d 118, 129 (Cal. Ct. App. 2006).  The Court previously dismissed Plaintiffs' unfair business

5    act claim because Plaintiffs failed to allege a substantial consumer injury:

6           Plaintiffs here do not allege that the televisions exhibited any problems during the
            one-year limited warranty period; every alleged problem surfaced several years
7           after purchase.  Any failure to disclose relates to a defect that arose years after the
            express warranty expired.  And any failure to disclose therefore does not
8           constitute substantial injury.

9    (Order 4, ECF No. 33)  Plaintiffs have amended their complaint to include allegations that the

10   televisions "fail[ed] to operate properly from the outset," (CASC ¶ 3, ECF No. 34), given their

11   tendency to "overheat[] . . . since the Television was first used by the consumer," (*id.*).

12          Plaintiffs' amendments do not cure the deficiencies of the prior complaint.  Though

13   Plaintiffs contend that the CSAC now alleges "that the defects manifested themselves within the

14   warranty periods," (CASC, ECF No. 34), the fact remains that the defects did not become apparent

15   to the Plaintiff-consumers until after the warranty expired.  Thus, the complaint still falls short of

16   alleging that the defects caused the televisions to malfunction within the warranty period, as is

17   required to allege a substantial consumer injury under *Daugherty*.[2]  *See In re Sony Grand WEGA*

18   *KDF-E A10/A20 Series Rear Projection HDTV TV Litig.* (*In re Sony*), 758 F. Supp. 2d 1077, 1091

19   (S.D. Cal. 2010) ("Plaintiffs have not alleged that the televisions failed to function as warranted

20   throughout the term of the [warranty].  As a result, Plaintiffs' claim under the UCL's unfair prong

21   fails because they have not alleged a substantial injury.").

22   //

23

24          [2] Although it may be contended that the televisions did not "function[] precisely as warranted
     throughout the term of [the] express warranty," *Daugherty*, 51 Cal. Rptr. 3d at 130, given that they
25   allegedly overheated upon first use, Plaintiffs nevertheless concede that they did not discover the
     defect until after the warranty period had expired, (*see* CSAC ¶¶ 6–9, ECF No. 34).  Thus, it strains
26   credulity to argue that the consumer injury that occurred as a result of the overheating within the
     warranty period—the only period relevant for purposes of the UCL claim—was "substantial," given
27   that none of the named Plaintiffs even noticed it.  Though Plaintiff Phrank Ochoa allegedly "noted a
     burning smell in his home," the complaint neither alleges that Mr. Ochoa linked the burning smell to
28   the television within the warranty period, nor that the burning smell occurred within the warranty
     period.  (*See id.* ¶ 7)

1    Accordingly, Plaintiffs' UCL unfairness claim arising from the alleged defect fails.

2    Because it appears that Plaintiffs are unable to amend their complaint to sufficiently state a UCL

3    claim, this claim is **DISMISSED WITH PREJUDICE**.

4    ***B. California Consumers Legal Remedies Act, California Civil Code § 1750***

5    The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or

6    practices" in transactions for the sale or lease of goods to consumers.  Cal. Civ. Code § 1770.  The

7    unlawful acts include: (1) "Representing that goods . . . have . . . characteristics . . . which they do

8    not have," *id.* § 1770(a)(5); and (2) "Representing that goods . . . are of a particular standard,

9    quality, or grade . . . if they are of another," *id.* § 1770(a)(7).[3]

10    As a general rule, manufacturers cannot be liable under the CLRA for failures to disclose a

11    defect that manifests itself after the warranty period has expired.  *Daugherty*, 51 Cal. Rptr. 3d at

12    126–28.  An exception exists, however, if the manufacturer fails to disclose information and the

13    omission is "contrary to a representation actually made by the defendant" or the omission pertains

14    to "a fact the defendant was obligated to disclose."  *Id.* at 126.  Here, all of Plaintiffs alleged

15    CLRA violations pertain to Sony's alleged failures to disclose, (CASC ¶ 52, ECF No. 34); the

16    question therefore is whether Sony carried any obligation to disclose the alleged defect.

17    "[U]nder the CLRA, a manufacturer's duty to disclose information related to [a] defect that

18    manifests itself after the expiration of an Express Warranty is limited to issues related to product

19    safety."  *In re Sony*, 758 F. Supp. 2d at 1095 (citing *Oestreicher v. Alienware Corp.*, 544 F. Supp.

20    2d 964, 969 (N.D. Cal. 2008)).  Moreover, in order to have a duty to disclose, the manufacturer

21    must be "aware of the defect at the time that Plaintiffs purchased," as a manufacturer has "no duty

22    to disclose facts of which it was unaware."  *Id.*

23    In dismissing the prior complaint, the Court held that Plaintiffs failed to invoke the safety

24    exception because the complaint was devoid of "allegations that anyone or any property—other

25    than the television itself—was damaged by the allegedly defective televisions."  (Order 6, ECF

26    No. 33)  Even assuming Plaintiffs' allegations that the televisions pose a safety risk are sufficient

27

28    [3] The CSAC drops Plaintiffs' claim under section 1770(a)(9) which prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

to invoke the safety exception in that the televisions allegedly "pos[e] a fire hazard due to . . . the internal componentry beginning to melt and degrade as soon as the Television is plugged in and used," (CSAC ¶ 52, ECF No. 34), Plaintiffs have failed to allege that Sony was aware of this safety hazard at the time Plaintiffs purchased the televisions.

First, Plaintiffs allege that "Sony has known about the Safety Defect contained in the Televisions since at least 2008 and possibly even earlier." (*Id.* ¶ 20)  But the Plaintiffs bought their televisions in 2004, 2005, and 2006. (*Id.* ¶¶ 6–9)  So under Plaintiffs' own allegations, Sony may not have been aware of the defect at the time Plaintiffs made their purchases, or even within the respective one-year post-purchase warranty periods.

Second, all of Plaintiffs allegations regarding Sony's knowledge of the alleged defect pertain to Sony's knowledge that the defect causes excess heat that results in the deterioration of the television display, not that the defect poses any safety hazard. (*See id.* ¶¶ 21–23)  Specifically, Plaintiffs point to the "disadvantages" listed in Sony's patent filings as far back as 1996 as evidence of Sony's awareness of the alleged defect; but none of those disadvantages acknowledge any risk of fire or other safety hazards.  Thus, Plaintiffs have not alleged facts demonstrating that Sony was aware of the alleged safety defect at the time Plaintiffs purchased their televisions in 2004, 2005, and 2006.  And without awareness of the alleged safety defect, Sony had no duty to disclose.  Accordingly, Sony's motion to dismiss Plaintiffs' CLRA claim is **GRANTED**; the CLRA claim is **DISMISSED WITHOUT PREJUDICE**.

**2.  Breach of Warranties**

Once again, Plaintiffs raise four warranty claims: (1) Breach of Express Warranty; (2) Breach of Implied Warranty; (3) Violations of the Song Beverly Consumer Warranty Act; and (4) Violation of the Magnuson-Moss Act.  (CASC, ECF No. 34)

*A.  Breach of Express Warranty*

Plaintiffs allege breach of the Limited Warranty and the Limited Extended Warranty. (CSAC ¶¶ 72–82, ECF No. 34)  The Limited Warranty provides, in relevant part:

> Sony Electronics Inc. ("Sony") warrants this Product (including any accessories) against defects in material or workmanship as follows:
>
> 1.  LABOR: For a period of one (1) year from the date of purchase, if this Product

1          is determined to be defective, Sony will repair or replace the Product, at its
        option, at no charge, or pay the labor charges to any Sony authorized service
2          facility.  After the Warranty Period, you must pay for all labor charges.

3          2.  PARTS: In addition, Sony will supply, at no charge, new or rebuilt
        replacements in exchange for defective parts for a period of one (1) year . . . .
4          After the warranty period, you must pay for all parts costs.

5  (Req. for Judicial Notice ("RJN"), Ex. A, ECF No. 35-4)[4]  The Court previously dismissed

6  Plaintiffs' claim for breach of the Limited Warranty because the alleged defects did not manifest

7  until after the one-year warranty period expired.  (Order 8, ECF No. 33)  The CSAC is insufficient

8  for the same reason.

9        The general rule is that an express warranty does not cover repairs made after the

10  applicable warranty period—here, one year after purchase—has elapsed.  *See Daugherty*, 51 Cal.

11  Rptr. 3d at 122 (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)).

12  None of the plaintiffs here sought repair or replacement of their televisions within the warranty

13  period.[5]  Thus, Plaintiffs must rely on the Limited Extended Warranty for their breach of express

14  warranty claims.

15        The Limited Extended Warranty provides:

16          It has come to our attention that a limited number of Grand WEGA rear projection
        televisions . . . may exhibit warping to the lamp access door.  In rare cases, some
17          additional components may also become damaged as a result.

18          Sony would like to assure its customers that this issue has been evaluated
        extensively and that there are no product safety concerns caused by this issue.
19

20          Additionally, through March 31, 2012, Sony will repair the lamp access door and
        any other components damaged as a result at no charge for any of the covered
        televisions.  Customers who experience this issue should contact Sony . . . to
21          schedule a repair.  Sony will only provide free repair to covered televisions that
        exhibit this specific condition.
22

23      [4] Defendants request the Court take judicial notice of various documents, including the Limited
24  Warranty and Limited Extended Warranty, pursuant to the "incorporation by reference" doctrine.
(RJN 2, ECF No. 35-4 (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.
2002)))  Plaintiffs' CSAC references both warranties extensively, and Plaintiffs have not opposed
25  Defendants' request.  Thus, the Court **GRANTS** Defendants' request.

26      [5] Plaintiffs again attempt to persuade the Court that Sony breached the express and implied
27  warranties at the time of delivery by tendering a product that "contains an inherent defect that is
substantially certain to result in malfunction during the useful life of the product."  (Resp. in Opp'n
19, ECF No. 37 (citing *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 290–91 (Cal. Ct. App. 2009)))
28  The Court has already considered and rejected this argument, however: "The Court finds Plaintiff's
reliance on *Mexia* unconvincing.  The type of defect described by *Mexia* is not alleged in this case,
and the rule that *Mexia* proposes is contrary to existing law."  (Order 8, 9–11, ECF No. 33)

> All other terms of the Sony limited warranty continue to apply.  Sony utilizes a network of hundreds of qualified independent third-party servicers to perform in-home television warranty service.  Sony, through its Authorized Servicer Network, will repair your set within 30 days of your initial contact.

(RJN, Ex. B, ECF No. 35-4).  The parties interpret the Limited Extended Warranty to mean that in addition to their right to repair, Sony also retains the ability to replace any televisions suffering from such defect.  (*See* Mot. to Dismiss 21, ECF No. 35; Resp. in Opp'n 18, ECF No. 37)

Again, Plaintiffs have failed to allege any violation of the Limited Extended Warranty.  None of the four named plaintiffs alleged that Sony either refused to repair any covered defects or refused to replace any televisions suffering from covered defects.  Plaintiffs Marchante and Sefo both declined Sony's offer of a refurbished television.  (CSAC ¶¶ 6, 8, ECF No. 34)  Though Plaintiff Ochoa alleges that Sony refused to repair the television, he still fails to allege that Sony *refused* to replace the television, alleging only that "Sony did not offer a replacement television." (*Id.* ¶ 7)  The distinction is critical, given that Sony retains this course of action until March 31, 2012.  Similarly, Plaintiff Solis has not alleged that Sony has refused to repair or replace her television, alleging only that, to date, "Sony has never offered Ms. Solis a replacement television of equal quality and value at no cost to her."  (*Id.* ¶ 9)

Thus, because Plaintiffs have again failed to allege breach of either the Limited Warranty or the Limited Extended Warranty, Plaintiffs fourth claim for breach of express warranty is **DISMISSED WITH PREJUDICE**.[6]

**B.  *Breach of Implied Warranty and Violations of the Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1792,* et seq.**

Plaintiffs' fifth claim is for breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, and the sixth claim is for violations of the Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.*  (CASC, ECF No. 34)  The Song Beverly Act claim concerns breach of implied warranty under sections 1791.1, 1792, and 1792.1, and failure to repair or replace defective products during the warranty period under

---

[6] Plaintiffs note in a footnote in their opposition that "Plaintiffs also contend the limitations of Sony's Warranty are void as an unconscionable contract term due to the unequal knowledge and bargaining power of the parties.  The Court previously rejected this argument; Plaintiffs raise it here only to preserve their appellate rights on the issue."  (Resp. in Opp'n 23 n.14, ECF No. 37); (*see also* Order 11–12, ECF No. 33 (considering and rejecting Plaintiffs's unconscionability argument))

1 | sections 1793.2(a)(3) and 1793.2(b).

2 |      Plaintiffs' implied warranty and Song Beverly Act claims again fail because they are

3 | untimely.  Subject to a sixty-day minimum and one-year maximum, implied warranties are equal

4 | in duration to express warranties.  *See* Cal. Civ. Code § 1791.1(c); *Tietsworth v. Sears*, 720 F.

5 | Supp. 2d 1123, 1142 (N.D. Cal. 2010).  The implied warranty here had a one-year duration to

6 | match that of the express warranty.  And because Plaintiffs purchased the televisions in 2004,

7 | 2005, and 2006, the implied warranties would have expired by 2007, at the latest.  But the CSAC

8 | does not contain allegations that the televisions failed to function as warranted or that Plaintiffs

9 | sought warranty coverage during the one-year period following their respective purchases.  Thus,

10 | Plaintiffs fifth and seventh claims are **DISMISSED WITH PREJUDICE**.

11 | ***C.  Violations of the Magnuson-Moss Act, 15 U.S.C. § 2301***

12 |      "The Magnuson-Moss Act provides a federal cause of action for state law express and

13 | implied warranty claims."  *In re Sony*, 758 F. Supp. 2d at 1101.  Because Plaintiffs fail to state any

14 | valid state warranty claims, their Magnuson-Moss Act claim necessarily fails.  This claim is

15 | **DISMISSED WITH PREJUDICE**.

16 | **CONCLUSION**

17 |      For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss

18 | Plaintiffs' CSAC.  Plaintiffs' CLRA claim is **DISMISSED WITHOUT PREJUDICE**; all other

19 | claims are **DISMISSED WITH PREJUDICE**.  Plaintiffs, if they wish, **SHALL FILE** any

20 | amended complaint within 28 days of this Order being electronically docketed.

21 |      **IT IS SO ORDERED**.

22 | DATED:  December 5, 2011

23 | *Janis L. Sammartino*
    Honorable Janis L. Sammartino

24 | United States District Judge

25 |

26 |

27 |

28 |